UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY WHITELEY,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>USAA CASUALTY INSURANCE COMPANY,<br><br>　　　　　Defendant. | Case No. 2:24-cv-00138-FLA (MAAx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS [DKT. 29]** |

# RULING

Before the court is Plaintiff Jeremy Whiteley's ("Plaintiff" or "Whiteley") Motion for Partial Judgment on the Pleadings ("Motion"). Dkts. 29 (Notice of Motion), 29-1 ("Mot."). Defendant USAA Casualty Insurance Company ("USAA") opposes the Motion. Dkt. 33 ("Opp'n"). On July 15, 2024, the court took the Motion under submission, finding it appropriate for decision without oral argument. Dkt. 37; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15. For the reasons set forth below, the court DENIES the Motion.

# BACKGROUND

Plaintiff brings the instant action to obtain coverage allegedly owed to him under an insurance policy issued by USAA. Dkt. 1 ("Compl.") ¶ 1.

## A. Umbrella Policy

USAA issued Plaintiff an "Umbrella Policy," offering coverage from May 13, 2021, to May 13, 2022. *Id.* ¶ 14. In relevant part, the Umbrella Policy obligated USAA to "pay for damages that an insured becomes legally obligated to pay because of personal injury," and stated, "[i]f a claim is made or suit is brought against any insured … for personal injury to which [the Umbrella Policy] applies, [USAA] will provide a defense at [its] expense … even if the suit is groundless, false, or fraudulent." *Id.* ¶ 15; *see also* Compl., Ex. B at 4. The Umbrella Policy excluded from coverage "personal injury result[ing] from a false statement if done by or at the direction of any insured with the knowledge that the statement was false, or made with reckless disregard for the truth." Compl., Ex. B at 6.

## B. Underlying Action

On or about March 28, 2022, Whiteley and Katherine McNamara ("McNamara") were named as defendants in a separate action, styled *Breaking Code Silence v. Katherine McNamara, et al.*, Case No. 2:22-cv-02052-MAA (C.D. Cal.) ("BCS Action"). Compl. ¶ 17. The complaint in the BCS Action ("BCS Complaint") asserts two causes of action for violations of the Computer Fraud and Abuse Act (18

U.S.C. § 1030, *et seq.*) and the California Computer Data Access and Fraud Act (Cal. Pen. Code § 502, *et seq.*).[1] *See* Case No. 2:22-cv-02052-MAA, Dkt. 2 ("BCS Compl.").

Plaintiff alleges that, on April 21, 2022, he "timely tendered the defense of the BCS [Action] to USAA via its website and informed USAA that the suit was frivolous." Compl. ¶ 21. However, Plaintiff claims, "USAA has wrongfully failed and refused to defend [Plaintiff] in the" BCS Action. *Id.* ¶ 22.

### C. Procedural History

Plaintiff filed the Complaint in the instant action on January 5, 2024, bringing claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief. *See generally* Compl. On March 7, 2024, USAA filed an Answer to the Complaint, which asserted twelve "affirmative defenses."[2] Dkt. 15 ("Answer"). USAA's first and fourth defenses allege, respectively, the "Complaint fails to state facts sufficient to constitute a cause of action" and "the insurance policies at issue … afforded no coverage or benefits … by the terms, conditions, limitations, and exclusions" in the Umbrella Policy. *Id.* at 7. Plaintiff argues USAA's first and fourth defenses fail as a matter of law, and moves for partial judgment on the pleadings pursuant to Fed. R. Civ. P. ("Rule") 12(c), seeking a ruling that USAA has a

---

[1] Breaking Code Silence is a non-profit organization that represents previously incarcerated adults and youth. Compl. ¶ 17; BCS Compl. ¶ 1. The facts giving rise to the BCS Action are discussed in further detail below.

[2] Many of USAA's "affirmative" defenses, including its first and fourth defenses, cannot be characterized as affirmative defenses. *See Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) (citation omitted) ("A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense."). The court, thus, refers to them as "defenses."

duty to defend Plaintiff in the BCS Action.[3]  *See generally* Mot.

## DISCUSSION

### I.     Legal Standard

Rule 12(c) provides, "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law."  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (cleaned up).  "Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks omitted).  In ruling on a Rule 12(c) motion, the court must construe all allegations in the complaint in the light most favorable to the non-moving party.  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

### II.    Analysis

Plaintiff argues USAA has a duty to defend him in the BCS Action because the Umbrella Policy offered Plaintiff coverage in suits "for personal injury to which this policy applies," and defined personal injury to include, "[o]ral, written or electronic publication of a false statement that defames a person's or organization's character or

---

[3] Because USAA's defenses are not proper affirmative defenses, it is Plaintiff's burden to state facts sufficient to constitute a cause of action and to establish the insurance policy at issue afforded the coverage he seeks.  *See Rosen v. Masterpiece Marketing Group, LLC*, 222 F. Supp. 3d 793, 800 (C.D. Cal. 2016) (defendant bears the burden of proof on affirmative defenses).  Accordingly, the court understands the Motion to be a request for a finding that Plaintiff has met his burden, as a matter of law, to establish that USAA had a duty to defend Plaintiff under the Umbrella Policy.

reputation." Mot. at 11–12; Compl., Ex. B at 3.[4]  Based on the facts alleged in the BCS Complaint, Plaintiff contends USAA "cannot legitimately dispute that the BCS [Complaint] includes allegations of '[o]ral, written or electronic publication of a false statement that defames a[n] organization's character or reputation.'"  Mot. at 12.  USAA argues Plaintiff fails to demonstrate "any possibility that [USAA's] duty to defend was triggered based upon the terms of the Umbrella Policy and the allegations within the BCS Complaint[.]"  Opp'n at 10.

An insurer's "duty to defend should be fixed by the facts which the insurer learns from the complaint, the insured, or other sources."  *Horace Mann Insurance Co. v. Barbara B.*, 4 Cal. 4th 1079, 1091 (1993) (citing *Gray v. Zurich Insurance Co.*, 65 Cal. 2d 663, 276 (1966)).  "An insurer, therefore, bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy."  *Gray*, 65 Cal. 2d at 276–77.  Plaintiff contends USAA's duty to defend is triggered by the "bare" potential for coverage, which exists if there is a "factual dispute affecting the existence of coverage[.]"  *See* Mot. at 13; *State Farm General Insurance Co. v. Mintarsih*, 175 Cal. App. 4th 274, 284 n. 6 (2009).

The issue, therefore, turns on whether the facts USAA learned from the BCS Complaint implicated the potential for coverage under the Umbrella Policy as a matter of law.  Put differently, to prevail on the instant Motion, Plaintiff must establish USAA could not have believed reasonably it would not be required to defend Plaintiff

---

[4] The Umbrella Policy broadly offered coverage if "a suit is brought against any insured for bodily injury or property damage arising from an occurrence to which the policy applies, or for personal injury to which this policy applies[.]"  Compl., Ex. B at 4.  Plaintiff does not argue he is entitled to coverage under the "bodily injury or property damage" provision of the Umbrella Policy, and seeks coverage only under the personal injury provision.  Thus, the court does not consider whether USAA's duty to defend is triggered under the bodily injury or property damage provisions of the Umbrella Policy.

5

1  in the BCS Action based on the allegations set forth in the BCS Complaint. Plaintiff
2  has not satisfied his burden.
3      The BCS Complaint alleges Whiteley was a "former BCS board member" who,
4  in partnership with McNamara, "originally set-up the website infrastructure for BCS
5  to use with its domains. [Whiteley] also set up the hosting account for the BCS
6  website … which he returned to the organization after resigning per the agreement
7  established with all board members." BCS Compl. ¶ 11. The BCS Complaint states
8  additionally Whiteley and McNamara "exercised an extreme act and maliciously
9  accessed BCS's account … without permission or authorization from BCS and caused
10 the website to be deindexed on Google. The effect of being deindexed is that no one
11 could find BCS's Website on the largest search engine." *Id.* ¶ 36. Further, "[i]n
12 addition to [Whiteley and McNamara] causing the BCS website to be deindexed, they
13 [] attempted or succeeded at changing the content of the website." *Id.* ¶ 43.
14      These allegations are insufficient to establish, as a matter of law, that USAA
15 should have known of the potential for coverage under the Umbrella Policy, or that
16 the BCS Action alleged personal injury of the type the Umbrella Policy covered. As
17 an initial matter, though not dispositive, the BCS Complaint does not bring causes of
18 action for defamation, libel, or slander. Rather, the BCS Complaint alleges Whiteley
19 violated the Computer Fraud and Abuse Act (18 U.S.C. 1030, *et seq.*) and California's
20 Computer Data Access and Fraud Act (Cal. Pen. Code § 502, *et seq.*) by "intentionally
21 accessing a computer used for interstate commerce or communication without
22 authorization" (BCS Compl. ¶ 56), knowingly accessing, altering, and interfering with
23 data belonging to BCS (*id.* ¶ 65), and accessing BCS's website without permission
24 and causing it to be deindexed (*id.* ¶ 69). *See CNA Casualty of California. v.*
25 *Seaboard Surety Co.*, 176 Cal. App. 3d 598, 609 (1986) ("[I]t is not the form or title
26 of a cause of action that determines the carrier's duty to defend, but the potential
27 liability suggested by the facts alleged or otherwise available to the insurer.").
28

More importantly, the substantive allegations in the BCS Complaint do not establish conclusively that the BCS Action sought recovery for "'personal injury' as defined in the Umbrella Policy." *See* Mot. at 12.  The only allegation which makes reference to a defamatory statement asserts "McNamara and her colleagues at UnSilenced made defamatory statements to valued partners, resulting in strained and, in some cases, terminated valued relationships."[5]  BCS Compl. ¶ 45.  However, the BCS Complaint makes clear that, "[s]ometime after December 2021, Defendant McNamara and former BCS volunteers [] formed UnSilenced" (*id.* ¶ 33), and is devoid of any reference to Whiteley's employment, involvement, or connection with UnSilenced.  Without more, the court cannot conclude Whiteley qualified as a "colleague at UnSilenced" who allegedly made defamatory statements about BCS.[6] Though the BCS Complaint "seeks recovery for lost goodwill as a result of Defendant's dissemination of false information by impersonating BCS" (BCS Compl. ¶ 48), this singular allegation, without more, does not alone demonstrate such dissemination was defamatory as to BCS's "character or reputation" or that Whiteley was involved in the conduct.[7]  *See* Compl., Ex. B at 3.

---

[5] The BCS Complaint describes UnSilenced as "a nonprofit corporation that purports to serve the same survivor community as BCS[.]"  BCS Compl. ¶ 33.

[6] Plaintiff contends wrongly the BCS Complaint alleges Whiteley and McNamara formed UnSilenced (Dkt. 34 at 10), because the relevant header in the BCS Complaint states "Defendants Form UnSilenced and Begin Withholding Access to BCS Accounts."  BCS Compl. at 9.  As noted, the substantive allegations within this section expressly state "McNamara and former BCS volunteers [] formed UnSilenced[.]"  *Id.* ¶ 33.  The header alone is not sufficient to establish conclusively that Whiteley formed UnSilenced with McNamara.

[7] Moreover, it is unclear whether the use of the singular form of the term "Defendant's" was a typographical error which intended to capture both McNamara and Whiteley, or if the BCS Complaint intended for this allegation to pertain only to a single defendant.

Even if the BCS Complaint fell within the scope of the Umbrella Policy's coverage, Plaintiff does not establish whether various exclusions in the Umbrella Policy foreclosed the possibility of coverage.  For example, the Umbrella Policy precluded coverage for "personal injury which results from a false statement if done by or at the direction of any insured with knowledge that the statement was false, or made with reckless disregard for the truth."  Compl., Ex. B at 6.  Plaintiff's claim that "there is no evidence … that [he] made any defamatory statements with" the requisite intent is unpersuasive.  *See* Mot. at 13.  The allegations in the BCS Complaint may have reasonably given rise to the inference that any actionable defamatory statement was made with knowledge of its falsity of reckless disregard for its truth.  *See, e.g.*, BCS Compl. ¶ 36 ("[Whiteley and McNamara] … maliciously accessed BCS's account …."); ¶ 39 ("[Whiteley and McNamara] repeatedly, relentlessly, and maliciously attempted to remove and/or gain control of the BCS Website …."); ¶ 45 (BCS "seeks … to recover damages … resulting from Defendants' intentional … conduct …."); ¶ 46 ("Defendants have acted intentionally, and with wanton and reckless disregard for the members of the public that their conduct has and continues to harm ….").

       Accordingly, there remains a material issue of fact to be resolved as to whether the facts alleged in the BCS Complaint triggered USAA's duty to defend.  *See Doleman v. Meiji Mutual Life Insurance Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984) ("Generally, district courts have been unwilling to grant a Rule 12(c) dismissal unless the movant clearly establishes that no material issue of fact remains to be resolved[.]") (internal quotations omitted).

/ / /

/ / /

/ / /

**CONCLUSION**

For the foregoing reasons, the court DENIES the Motion.

IT IS SO ORDERED.

Dated: September 4, 2024

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge