JOSHUA N. KASTAN (SBN 284767)
JNK@dkmlawgroup.com
JESSICA J. ROSS (SBN 313988)
JJR@dkmlawgroup.com
**DKM Law Group, LLP**
50 California St., Suite 1500
San Francisco, CA 94111
Tel.:        (415) 421-1100
Fax.:        (415) 842-0095

Attorneys for Defendant,
USAA CASUALTY INSURANCE COMPANY

# IN UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY R. WHITELEY,<br><br>Plaintiff,<br><br>vs.<br><br>USAA CASUALTY INSURANCE COMPANY,<br><br>Defendant. | CASE NO.: 2:24-cv-00138-FLA-MAA<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT USAA CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT** |

| | |
|---|---|
| **Hearing Date:** | March 14, 2025 |
| **Hearing Time:** | TBD |
| **Crtrm.:** | 6B |
| **Judge:** | Hon.Aenlle-Rocha |
| **Cmplt. Filed:** | Jan. 5, 2024 |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II. UNDISPUTED MATERIAL FACTS ................................................................. 4

   A.   THE HOMEOWNERS POLICY LANGUAGE ................................................. 5
   B.   THE UMBRELLA POLICY LANGUAGE ...................................................... 7
   C. THE BCS COMPLAINT ............................................................................. 9
   D. USAA CIC'S INVESTIGATION AND COVERAGE DETERMINATION ......................... 10
   E. USAA CIC DETERMINES THE DUTY TO DEFEND OR INDEMNIFY WAS NOT
   TRIGGERED ................................................................................................. 12

III. LEGAL STANDARD ............................................................................................. 15

IV. USAA CIC'S DUTY TO DEFEND OR INDEMNIFY WAS NOT TRIGGERED
............................................................................................................................... 16

   A.   THERE IS NO "BODILY INJURY" OR "PROPERTY DAMAGE" ALLEGED IN THE BCS
   COMPLAINT, AND THE DUTY TO DEFEND WAS NOT TRIGGERED ............................. 17
   B.   THERE IS NO "PERSONAL INJURY" ALLEGED IN THE BCS COMPLAINT, AND THE
   DUTY TO DEFEND WAS NOT TRIGGERED ................................................................ 18
      1.   The BCS Complaint Does Not Allege "Personal Injury" ........................... 19
      2.   Even Assuming "Personal Injury", Multiple Exclusions Apply to Foreclose
      Coverage ........................................................................................................ 21
      3.   Even Assuming "Personal Injury" Is Alleged and No Exclusions Apply,
      there is No Duty to Defend an Action Alleging Purely Economic Damages ...... 23

V. THE BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR
DEALING CLAIM FAILS ....................................................................................... 24

VI. THE CLAIM FOR DECLARATORY RELIEF FAILS ....................................... 28

VII. THE CLAIM FOR PUNITIVE DAMAGES FAILS .......................................... 29

VIII. CONCLUSION ................................................................................................... 31

# TABLE OF AUTHORITIES

<span style="text-align:center">C<span style="font-variant:small-caps">ASES</span></span>

*Anderson*, 477 U.S. at 250 (citation omitted)----------------------------------------- 15, 16

*Austero v. Nat. Gas Co.* (1978) 84 Cal.App.3d 1 ------------------------------------26

*Beck v. State Farm Mut. Auto. Ins. Co.* (1976) 54 Cal. App. 3d 347 ------------------29

*Benavides v. State Farm Gen. Ins. Co.*, 136 Cal. App. 4th 1241, 1250 (2006) -------24

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.,* (1990) 222 Cal. App. 3d 1371, 1395 --25

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986)------------------------------15

*Chateau Chamberay Homeowners Ass 'n v. Associated Int'l Ins. Co.* (2001) 90 Cal. App. 4th 335 -----------------------------------------------------------------------------4, 25

*Congleton v. National Union Fire Ins. Co.* (1987) 189 Cal. App. 3d 51 --------------25

*Delgado v. Interinsurance Exch. Of Auto. Club of S. Cal.*, 47 Cal.4th 302, 308 (2009) ----------------------------------------------------------------------------------------17

*Ittelia Foods, Inc. v. Zurich Ins. Co.* (9th Cir. 2004) 98 Fed. Appx. 689 --------------30

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) -------15

*Montrose Chemical Corp. v. Superior Court* 6 Cal.4th 287, 295 (1993) --------------16

*Morris v. Paul Revere Life Ins. Co.* (2003) 109 Cal.App.4th 966, 977 ----------------25

*Scottsdale, Ins. Co. v. Darke*, 424 F.Supp.3d 638, 644 (N.D. Cal. 2019)--------------23

*State Farm Mut. Auto. Ins. Co. v. Superior Ct.* (1991) 228 Cal. App. 3d 721, 725, *modified* (Mar. 21, 1991 ---------------------------------------------------------- 3

*State Farm Mut. Auto. Ins. Co. v. Superior Ct.* (1991) 228 Cal. App. 3d 721, 725, *modified* (Mar. 21, 1991) ------------------------------------------------------3, 25

*Street Surfing, LLC v. Great American E&S Ins. Co.*, 776 F.3d 603, 607 (9th Cir. 2014)--------------------------------------------------------------------------------------16

*Swain v. Cal. Cas. Ins. Co.* (2002) 99 Cal. App. 4th 1 ------------------------------------17

*Tibbs v. Great American Ins. Co.* (9th Cir. 1985) 755 F.2d 1370----------------------30

*Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal. App. 4th 1269--------------------30

*Travelers Property Casualty Company of America v. Allwire, Inc.*, 508 F.Supp.3d 736, 745-746--------------------------------------------------------------------------------23

*Turner v. State Farm Fire and Cas. Co.* (2001) 92 Cal.App.4th 681, 690 -----------17

*Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 19 (1995)--------------------------2, 16, 17, 23

*White v. Ultramar, Inc.* (1999) 21 Cal. 4th 563 --------------------------------------------31

*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713 -----------------------------------25

### STATUTES

Cal. Civ. Code § 3294(a) ------------------------------------------------------------------29

Cal. Civ. Code § 3294(b)------------------------------------------------------------ 29, 31

Cal. Civ. Code. §1668 ------------------------------------------------------------------17

Fed. R. Civ. P. 56------------------------------------------------------------------------15

### OTHER AUTHORITIES

CACI 2331-2332 ------------------------------------------------------------------------24

**DEFENDANT USAA CIC'S MOTION FOR SUMMARY JUDGMENT**
**CASE NO. 2:24-cv-00138-FLA-MAA**

# I.    <u>INTRODUCTION</u>

The undisputed material facts demonstrate as a matter of law, Defendant USAA Casualty Insurance Company ("USAA CIC") had no duty to defend Plaintiff Jeremy Whiteley ("Whiteley") in an underlying lawsuit filed against him. The undisputed facts further show USAA CIC's investigation and coverage determination was reasonable and timely, especially where USAA CIC relied upon the advice of coverage counsel. Further, there is no evidence whatsoever of malicious or oppressive conduct by USAA CIC ratified by an officer of director which could possibly give rise to a claim for punitive damages.

The underlying complaint was filed against Whiteley by non-profit organization Breaking Code Silence ("BCS"), of which he was a former board member, and alleged two causes of action for violations of federal anti-hacking statutes and California's Penal Code ("BCS Complaint").

Whiteley maintained Homeowners and Umbrella policies with USAA CIC, each of which carried personal liability coverage subject to certain unambiguous (and slightly different) terms, conditions, limitations and exclusions.

Under the Homeowners Policy, USAA CIC's duty to defend was only triggered if the BCS Complaint sought damages caused by bodily injury, property damage, or personal injury caused by an occurrence. For coverage for a lawsuit based on

personal injury (i.e. libel, slander, defamation, invasion of privacy) to apply, the conduct could not be malicious or criminal in nature and could not be expected or intended by Whiteley.

Under the Umbrella Policy, USAA CIC's duty to defend was only triggered if the BCS Complaint alleged injury arising out of an oral, written or electronic publication of a false statement that defamed BCS' character or reputation. Where Whiteley knew any defamatory statement made was false, the personal injury arose from a criminal act, or arose out of an agreement, coverage was excluded.

Even if coverage were triggered, which it was not, California law is clear an insured is not entitled to a legal defense where the underlying complaint seeks damages which are only financial in nature. (*Waller v. Truck Ins. Exch.,* 11 Cal. 4th 1, 19 (1995).)

As discussed in further detail below, the allegations within the BCS Complaint did not fall within the coverage promise of either the Homeowners or Umbrella Policies. The BCS Complaint alleged Whiteley and another former board member, Katharine McNamara ("McNamara") acted in concert to sabotage BCS's business practices and unjustly enrich themselves by, among other things, hacking into and deindexing BCS's Google account, hacking into and changing content on its website, tampering with or destroying confidential proprietary information, and interfering with business relationships. The allegations focused entirely on intentional,

malicious, criminal conduct by Whiteley and McNamara. The BCS Complaint sought only economic and financial damages, and equitable relief.

Absent any allegation within the BCS Complaint triggering coverage, and in the face of multiple, applicable exclusions, USAA CIC's duty to defend Whiteley was not triggered and USAA CIC cannot have breached the contract.

The undisputed facts further demonstrate USAA CIC acted within the scope of the implied covenant of good faith and fair dealing. USAA CIC's investigation was reasonable. USAA CIC considered the allegations within the BCS Complaint, interviewed Whiteley, had the BCS Complaint reviewed by an adjuster, manager, and director in conjunction with both the Homeowners and Umbrella Policies, and sought the advice of coverage counsel. In a robust and well-founded letter, coverage counsel stated in his opinion the duty to defend was not triggered. When Whiteley belatedly disputed the coverage determination over a year later, coverage counsel reviewed all new information and provided an affirmed the coverage opinion, upon which USAA CIC reasonably relied. (*State Farm Mut. Auto. Ins. Co. v. Superior Ct.* (1991) 228 Cal. App. 3d 721, 725, *modified* (Mar. 21, 1991) ["an insurer may defend itself against allegations of bad faith and malice in claims handling with evidence the insurer relied on the advice of competent counsel"].)

At most, there was a genuine dispute between Whiteley and USAA CIC as to whether coverage was triggered by the BCS Complaint. California law is clear a

genuine dispute is a complete defense to a claim for breach of the implied covenant. (*Chateau Chamberay Homeowners Ass 'n v. Associated Int'l Ins. Co.,* 90 Cal. App. 4th 335, 347 (2001).)

The totality of USAA CIC's investigation and coverage determination likewise demonstrate Whiteley cannot proffer any support for his claim for punitive damages, much less to California's requisite "clear and convincing" standard. The undisputed facts are devoid of any instance of USAA CIC acting with malice or oppressively. Nor is there any evidence a managing agent ratified conduct.

Where the undisputed material facts demonstrate USAA CIC had no duty to defend Whiteley under the homeowners or umbrella policies, conducted a reasonable and timely investigation revealing nothing more than a genuine dispute between the parties, and did not act maliciously or oppressively, Whiteley cannot meet his burden of proof as to any of his causes of action and the Court should enter judgment for USAA CIC.

## II. UNDISPUTED MATERIAL FACTS

The undisputed material facts demonstrate USAA CIC's duty to defend or indemnify Whiteley was not triggered, and its investigation and coverage determination was reasonable.

USAA CIC issued Homeowners Policy, No. 007778375-90A ("Homeowners Policy"), and Umbrella Policy, No. 007778375-70U ("Umbrella Policy"), to Whiteley (collectively "Policies"). (S.S. 1, 2.) The Policies provided coverage for personal liability subject to certain terms, conditions, limitations and exclusions.

On March 28, 2022, non-profit Breaking Code Silence ("BCS" filed a complaint against Whiteley and Katherine McNamara ("McNamara") alleging causes of action for violations of the Computer Fraud and Abuse Act (18 U.S.C. §1030) and California's Computer Data Access and Fraud Act (Cal. Penal Code § 502) ("BCS Complaint"). (S.S. 3.)

Whiteley made separate claims with USAA CIC for a legal defense and indemnification under the Policies.

**A. The Homeowners Policy Language**

In pertinent part, the Homeowners Policy states:

**UNIT OWNERS – HOMEOWNERS POLICY**
**-PERSONAL INJURY ENDORSEMENT-**
**COVERAGE E – PERSONAL LIABILITY**

If a claim is made or a suit is brought against any **"insured"** for damages because of **"bodily injury"**, **"property damage"** or **"personal injury"** caused by an **"occurrence"** to which this coverage applies, we will:

\* \* \*

1. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false, or fraudulent…

We will not pay for punitive **"damages"** or exemplary **"damages"**, fines or penalties.

-5-

(S.S. 4.)

The Homeowners Policy's Personal Injury Endorsement unambiguously

defines "personal injury" and "occurrence":

>**"Personal Injury"** means:
>
>>b. Libel.
>>c. Slander.
>>d. Defamation of character.
>>e. Invasion of rights of privacy.
>
>\*\*\*
>
>**"Personal injury"** only applies when the conduct is not malicious or criminal in nature.
>
>\*\*\*
>
>**"Occurrence"** means:
>
>>a. An accident … which results, during the policy period, in "**bodily injury**" or "**property damage**"…
>>
>>b. An event or series of events . . . proximately caused by an act or omission of any **"insured"**, which results, during the policy period, in **"personal injury"**, neither expected nor intended from the standpoint of the **"insured."**

(S.S. 5.)

The Homeowners Policy defines "bodily injury" and "property damage" as:

>**- DEFINITIONS -**
>
>\*\*\*
>
>2. "Bodily injury" means physical injury, sickness or disease, including required care, loss of services and death that results.
>
>>"Bodily injury" does not include mental injuries such as: emotional distress, mental anguish, humiliation, mental distress, or any similar injury unless it arises out of physical injury to the person claiming a mental injury.
>
>>\*\*\*
>
>18. "Property damage" means physical damage to, or destruction of tangible property, including loss of use of this property.

(S.S. 6.)

The Homeowners Policy and Personal Injury Endorsement included the following exclusions:

### - SECTION II – EXCLUSIONS -

1. Coverage E Personal Liability and Coverage F Medical Payments to Others do not apply to "personal injury":

    a.  which is expected or intended by the "insured" . . .

(S.S. 7.)

Based on the terms of the Homeowners Policy, if the BCS Complaint sought damage for bodily injury, property damage, or personal injury caused by an accident, the duty to defend would be triggered. If the BCS Complaint sought damages for personal injury stemming from a series of events proximately caused by Whiteley which he did not expect or intend to cause libel, slander, or defamation of character, the duty to defend would be triggered.

Even if the allegations of the BCS Complaint fell within the coverage promise, coverage would nevertheless be excluded where the alleged libel, slander, defamation, or invasion of privacy was expected or intended by Whiteley.

### B. The Umbrella Policy Language

The Umbrella Policy's personal liability coverage provides:

### PERSONAL UMBRELLA POLICY

### - INSURING AGREEMENT -

\*\*\*

B. Defense.

   1.  If a claim is made or a suit is brought against any **insured** for **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, or for **personal injury** to which this policy applies, we will provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent…

(S.S. 8.)

The Umbrella Policy defines "bodily injury" identical to the Homeowners Policy, and includes the following additional definitions:

**-DEFINITIONS-**

\*\*\*

N.  **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in **bodily injury** or **property damage**.

O.  **"Personal injury"** means injury arising out of one or more of the offenses listed below . . .

   1.  Oral, written or electronic publication of a false statement that defames a person's or organization's character or reputation.

   2.  Oral, written or electronic publication of material that violates a person's right of privacy by publicly disclosing private facts.

(S.S. 9.)

The Umbrella Policy sets forth the following exclusions:

**- EXCLUSIONS -**

\*\*\*

D.  This insurance does not apply to **personal injury** which results from a false statement if done by or at the direction of any **insured** with knowledge that the statement was false, or made with reckless disregard for the truth.

\*\*\*

G.  This insurance does not apply to **bodily injury, property damage** or **personal injury**:

   \*\*\*

7. Arising out of a criminal act or omission by, or with either the knowledge or consent of, any **insured**.

\*\*\*

10. Arising out of any contract or agreement.

(S.S. 10.)

## C. <u>The BCS Complaint</u>

The allegations within the BCS Complaint demonstrate USAA CIC's duty to defend was not triggered under the Policies. The BCS Complaint outlined only intentional conduct by Whiteley, including that he:

- "Engaged in acts of cyberhacking directed to BCS";
- "set-up the website infrastructure" and the "hosting account for the BCS website".
- "Acted intentionally … and pursuant to an agreement [with McNamara] . . . to obtain and convert secret, confidential, and proprietary information [and] documents" for "their own competitive advantage, and to deprive BCS of the use of such property in business";
- "Exercised an extreme act and maliciously accessed BCS's account with Google" and "caused the website to be deindexed" using Whiteley's former administrative credentials;
- "Maliciously attempted to remove and/or gain control of the BCS website and corresponding Google Webmaster Central permissions";
- "Attempted or succeeded at changing the content of the [BCS] website" and accessed BCS's AdWords account without authorizations.

(S.S. at 11-16.)

All allegations within the BCS Complaint related to any purported defamation (which are tangential at best) implicate *only* McNamara. The BCS Complaint

claimed McNamara "began regularly spreading gossip and slanderous lies about fellow board members among volunteers" which created tension, "conspired with other volunteers and employees" including "Mary Applegate and Caroline Lorson" to download and destroy confidential data, and "encouraged additional volunteers and board members to leave BCS under false pretenses". (S.S. 17-19)

The BCS Complaint sought damages only for financial and economic harm. The BCS Complaint alleged that due to Whiteley and McNamara's conduct, BCS was unable to promote a Lifetime documentary regarding its work, lost online traffic to its website, "lost business opportunities", "lost goodwill", breached "the trust of the public". (S.S. 20-23.) BCS also claimed its confidential information was destroyed and business relationships damaged, the service it provided to the public was "interrupted", it suffered damages "in excess of $5,000", and Whiteley and McNamara were unjustly enriched. (S.S. 22 - 24.)

### D. USAA CIC's Investigation and Coverage Determination

On April 21, 2022, Whiteley notified USAA CIC of the lawsuit. (S.S. 26.) On April 22, 2022, USAA CIC Adjuster John Kaczmarek ("Kaczmarek") was assigned to the claim. (S.S. 27.)

Kaczmarek reviewed the BCS Complaint and noted it alleged Whiteley "engaged in cyber hacking directed to BCS, including but not limited to the

unauthorized access of servers and networks". (S.S. 28.) Kaczmarek then reviewed the relevant Homeowners Policy terms. (*Id*.)

On April 22, 2022, Kaczmarek spoke with Whiteley regarding the BCS Complaint. (S.S. 29.) Whiteley denied taking part in the allegations and stated he believed he was named in the lawsuit as an act of retaliation by BCS following his resignation from the board. (*Id*.) Kaczmarek advised Whiteley "based on the suit and wording of the policy, there does not appear to be coverage for the loss or legal representation as the loss does not meet the definition of an occurrence under the policy", but that USAA CIC's final coverage determination was pending review by its legal team. (*Id.*)

Whiteley sent Kaczmarek a message disputing the preliminary coverage determination. (S.S. 30.)

Kaczmarek requested internal review of the BCS Complaint by a manager and director. (S.S. 31.) Manager of Claims Operations Kathryn Mashaw agreed with Kaczmarek that the duty to defend had not been triggered where the "accusations do not meet definition of occurrence and no property damage present". (S.S. 32.) On April 23, 2022, Director of Claims Operations Barbara Gonzalez ("Gonzalez") reviewed the Homeowners Policy and BCS Complaint and agreed the duty to defendant was not triggered and approved further review by outside coverage

counsel. (S.S. 33.) Whiteley contacted counsel to request a coverage review. (S.S. 34.)

On April 26, 2022, as Kaczmarek's investigation under the Homeowners Policy was ongoing, Whiteley requested the BCS Complaint be considered under the Umbrella Policy, claiming the Homeowners Policy was "not needed" because the lawsuit was frivolous and caused him personal injury. (S.S. 35.)

Kaczmarek responded, correctly, that the Umbrella Policy did not provide coverage for personal injury sustained by the insured because of a frivolous lawsuit, and instead that personal injury referred to damages claimed by the claimant in the underlying suit. (*Id.*) Nevertheless, Kaczmarek opened a separate claim. (S.S. 36.)

On April 27, 2022, Kaczmarek reviewed the Umbrella Policy and requested internal review by a manager and director of the BCS Complaint in conjunction with the Umbrella Policy. (S.S. 37.) Manager of Claims Operations Alisa Kuzma-Holmes ("Holmes") reviewed and agreed the duty to defend was not triggered under the Umbrella Policy. (S.S. 38.) Holmes requested outside coverage counsel review of the Umbrella Policy in addition to its pending review of the Homeowners Policy. (*Id.*)

On April 28, 2022, Gonzalez reviewed the Umbrella Policy and agreed with Kaczmarek and Holmes' coverage recommendations. (S.S. 39.)

### E. **USAA CIC Determines the Duty to Defend or Indemnify Was Not Triggered**

On April 27, 2022, Kaczmarek retained outside counsel Mark Israel ("Israel") to review the BCS Complaint, subject policies, and provide recommendations as to coverage. (S.S. 40.) Israel has specialized in insurance coverage for 37 years. (S.S. 41.)

On May 3, 2022, Kaczmarek notified Whiteley the coverage review was ongoing. (S.S. 42.) Whiteley continued to insist he was entitled to coverage for malicious prosecution. (S.S. 43.) On May 10, 2022, Kaczmarek left Whiteley a voicemail to discuss the claims. (S.S. 44.) Kaczmarek continued to notify Whiteley of the status of USAA CIC's investigation and respond to his messages. (S.S. 45.)

On May 16, 2022, Israel notified Kaczmarek of his recommendation that the duty to defend was not triggered under the Policies. (S.S. 46.) Israel sent draft language for Kaczmarek to incorporate into USAA CIC's coverage determination letter. (S.S. 47.) As explained, there was no coverage where the BCS Complaint 1) alleged only economic damages and no "bodily injury" or "property damage", 2) alleged only intentional, non-accidental conduct which did not constitute an "occurrence", 3) did not allege any of the listed "personal injury" damages but focused on violations of federal and California law, and 4) was otherwise excluded where the "acts alleged in the complaint were committed knowingly and intentionally". (*Id*.)

Kaczmarek immediately notified Whiteley via phone that USAA CIC determined there was no coverage under the Policies. (S.S. 48.) The following day, on May 17, 2022, Kaczmarek sent Whiteley's counsel written correspondence explaining the grounds for the denial of the claims and attaching Israel's proposed draft letter. (S.S. 49.)

USAA CIC's Member Advocacy Team, Kaczmarek, and Gonzalez each continued to investigate and respond to Whiteley's complaints regarding USAA CIC's communications with him and contacted him separately to discuss. (S.S. 50-51.) In response, Whiteley continued to reiterate the same groundless complaints. (*Id.*)

Whiteley nor his counsel contacted USAA CIC regarding the claims for over a year.

On September 21, 2023, Whiteley's counsel demanded "immediate withdrawal of the wrongful denial" of Whiteley's claims. (S.S. 53.) Both Kaczmarek and Holmes reviewed the correspondence and sent it to Israel for further review and updated recommendations and notified Whiteley's counsel of the same. (S.S. 54-56.)

On November 9, 2023, Israel notified Kaczmarek that his review of the additional correspondence did not change his recommendations and sent a draft response to Whiteley's counsel providing his analysis. (S.S. 57-58.)

Kaczmarek notified Whiteley's counsel that his correspondence was reviewed by counsel, and USAA CIC's coverage determination remained unchanged. (S.S. 59.)

In response, Whiteley filed the instant lawsuit alleging causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief, and seeking punitive damages.

## III. LEGAL STANDARD

Summary judgment "shall be granted if all papers submitted show that there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law." (Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).) The moving party bears the initial burden of identifying the element of the claim or defense on which summary judgment is sought and evidence that it believes demonstrates the absence of an issue of material fact. (*Celotex*, *supra* 477 U.S. at 323 (1986).)

The non-moving party then "must set forth specific facts showing that there is a genuine issue for trial." (*Anderson*, 477 U.S. at 250 (citation omitted); "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." (*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).) "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment. (*Anderson*, 744 U.S. at 248 (internal quotation marks omitted).)

Here, the undisputed material facts demonstrate the allegations within the BCS Complaint did not trigger USAA CIC's duty to defend, USAA CIC's investigation and coverage determination was reasonable, there are no grounds for declaratory relief, and the Court should grant summary judgment for USAA CIC.

## IV. USAA CIC'S DUTY TO DEFEND OR INDEMNIFY WAS NOT TRIGGERED

The allegations within the BCS Complaint do not set forth any potential for coverage under the Policies, USAA CIC's duty to defend was never triggered, and Whiteley's breach of contract claim fails.

Under California law, an insurer has a duty to defend an insured if it becomes aware of, or if a third-party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement. (*Montrose Chemical Corp. v. Superior Court* 6 Cal.4th 287, 295 (1993); *Street Surfing, LLC v. Great American E&S Ins. Co.*, 776 F.3d 603, 607 (9th Cir. 2014).) Where there is no possibility of coverage, there is no duty to defend. (*Waller, supra,* 11 Cal. 4th 19.)

To succeed on summary judgment, the insurer must show the underlying claim cannot fall within policy coverage under any reading of the lawsuit. (*Delgado v.*

*Interinsurance Exch. Of Auto. Club of S. Cal.*, 47 Cal.4th 302, 308 (2009); *Waller, supra*, 11 Cal. 4th at 16.)

"[W]hether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." (*Waller*, 11 Cal. 4th at 19.) "[C]overage turns not on the technical legal cause of action pleaded by the third party but on the facts alleged in the underlying complaint …" (*Swain v. Cal. Cas. Ins. Co.* (2002) 99 Cal. App. 4th 1, 8 (citation omitted).) In other words, the nature of the conduct alleged by the third-party complainant that forms not only the basis for the complaint but also whether the insurer's duty to defend is triggered.

An insurer is under no obligation to investigate facts outside of the third-party complaint when "it assume[s] the [insured's] version of the facts to be correct, but [finds] no potential for coverage anyway." (*Turner v. State Farm Fire and Cas. Co.* (2001) 92 Cal.App.4th 681, 690.)

In California, by longstanding statute and as a matter of public policy, an insured is not entitled to coverage "for willful injuries by the insured against a third party". (*Waller, supra* 11 Cal. 4th 19; Cal. Civ. Code. §1668 [enacted 1872].)

## A. There is No "Bodily Injury" or "Property Damage" Alleged in the BCS Complaint, and the Duty to Defend Was Not Triggered

Under both Policies, USAA CIC's duty to defend could be triggered if the BCS Complaint sought damages for "bodily injury" or "property damage" caused by

-17-

an "occurrence", defined as an accident. (S.S. 4-6, 8-9.) Nowhere within the BCS Complaint is there any allegation related to bodily injury or property damage, as defined in the policy. (S.S. 3 [BCS Complaint, generally].) Nor is there any allegation that Whiteley and McNamara's conduct was accidental within the subject Complaint. (*Id*.) Whiteley does not, and cannot, attempt to claim otherwise. (Dkt. 1, generally.)

Therefore, the "personal injury" terms and endorsement within the Policies must apply for USAA CIC's duty to defend to be triggered.

**B. There is No "Personal Injury" Alleged in the BCS Complaint, and the Duty to Defend Was Not Triggered**

Neither the Homeowners Policy nor Umbrella Policy contain allegations amounting to "personal injury" under their respective terms, and USAA CIC's duty to defend was not triggered.

Under the Homeowners Policy, if the BCS Complaint sought damages for libel, slander, or defamation of character ("personal injury") stemming from a series of events proximately caused by Whiteley which he did not expect or intend to cause, the duty to defend would be triggered. (S.S 4-5.)

Under the Umbrella Policy, if the BCS Complaint sought damage for the "publication of a false statement" that either "defames an organization's character or reputation" or "violates a person's right of privacy by publicly disclosing private facts", the duty to defend would be triggered. (S.S. 8-9.)

-18-

### 1. The BCS Complaint Does Not Allege "Personal Injury"

Both Policies require allegations that the insured defamed the character of another entity as a threshold element. Absent any claims of defamatory conduct, the duty to defend cannot be triggered.

Here, there are no allegations whatsoever that Whiteley made any false or defamatory statement which derided BCS' character. As to Whiteley, the BCS Complaint alleges only that he initially set up website infrastructure and a hosting account for BCS, resigned from the board of directors, and then acted intentionally and maliciously in deindexing BCS' Google account and attempting to gain control of its website. (S.S. 12-16.)

USAA CIC anticipates Whiteley will rely on paragraphs 45, 47 and 48 to demonstrate allegations reflecting defamation. In paragraph 45, BCS alleges "McNamara and her colleagues at Unsilenced made defamatory statements" which resulted in "strained" and "terminated" business relationships. (S.S. 22.) In paragraph 47, BCS alleges "defendants . . . disclosed misleading information to the public" which caused damage. (S.S. 23.) In paragraph 48, BCS "seeks recovery for lost goodwill as a result of Defendant's dissemination of false information by impersonating BCS". (S.S. 24.)

Nowhere does the BCS Complaint allege Whiteley himself made a defamatory or false statement. (S.S. 3, generally.) As Israel testified, the BCS Complaint was

"very clear and detailed" and "alleged precisely what it wishes to allege and it does not allege any defamatory statement of fact" by Whiteley. (S.S. 60.) Israel reviewed the complaint at his deposition and testified "there has to be a factual allegation" not based on "speculation as to what the intent was" for the duty to defend to be triggered. (S.S. 61.)

Likewise, the BCS Complaint does not state or even imply BCS (or anyone else)'s character or reputation was defamed by any purportedly false statement. (S.S. 3, generally.) The reference to "strained" or "terminated" relationships is insufficient to demonstrate defamation to reputation. This allegation shows only that McNamara's statements impacted BCS's ability to conduct business by interfering with its relationships – not its overall reputation in the community and industry.

The BCS Complaint is *not* about harm to BCS's reputation through defamation or slander. Instead, the crux of the BCS Complaint relies upon allegations of intentional conduct which purportedly caused financial harm and fall squarely outside the coverage promised by the Policies. (See, S.S. 3, generally.)

The BCS Complaint does not contain allegations which, even if accepted as true, constitute "personal injury" under the Homeowners Policy or the Umbrella Policy, and Whiteley cannot demonstrate the possibility of coverage. Where there is no possibility of coverage, there is no breach of contract.

### 2. Even Assuming "Personal Injury", Multiple Exclusions Apply to Foreclose Coverage

Even assuming *arguendo,* the allegations within the BCS Complaint amounted to "personal injury" as defined in the Policies – *which they do not* – USAA CIC's duty to defend would nevertheless be excluded.

Under the Homeowners Policy, where the alleged libel, slander or defamation was "malicious or criminal in nature" or "expected or intended by the insured", coverage is excluded. (S.S. 7.) Here, **both** exclusions apply.

The BCS Complaint characterizes Whiteley's conduct as "malicious" throughout and brings causes of action for criminal conduct including violations of California's penal code. (S.S. 3, 14-15.)

Further, the conduct and resulting damage to BCS alleged were expected and intended by Whiteley. A person cannot unexpectedly or unintentionally use expired credentials to gain access to and deindex the Google Account of a non-profit they previously worked with. Those are affirmative, intentional acts. As discussed above, the allegations within the BCS Complaint regarding Whiteley's conduct are exclusively intentional and purposeful in nature. (S.S. 11-16.) Further, a reasonable person would expect actions such as those allegedly taken by Whiteley to result in damage.

Any coverage under the Homeowners Policy is thus excluded.

Under the Umbrella Policy, coverage would be excluded where 1) Whiteley knew the defamatory statement was false or made it with reckless disregard for the truth, 2) the alleged personal injury arose out of a criminal act by Whiteley or 3) the alleged personal injury arose out of any contract or agreement into which Whiteley entered. (S.S. 10)

First, to the extent Whiteley is alleged to have made any defamatory statement, he did so with knowledge of its falsity or at a minimum disregard for its veracity and coverage would be excluded.

Second, as stated, the BCS Complaint claims Whiteley's conduct violated multiple criminal statutes, such that any personal injury alleged therein arose out of excluded criminal acts. (S.S. 3.)

Third, the BCS Complaint continually alleges Whiteley and McNamara's conduct was based upon an agreement between them to harm BCS and unjustly enrich themselves. (S.S. 13 ["defendants acted intentionally, in concert, and pursuant to an agreement between and among them"].) Coverage is excluded where the lawsuit arose out of Whiteley and McNamara's agreement to harm BCS.

Where multiple exclusions apply from both Policies, even if the BCS Complaint included allegations giving rise to USAA CIC's duty to defend – which it does not – coverage would nevertheless be excluded.

-22-

### 3. Even Assuming "Personal Injury" Is Alleged and No Exclusions Apply, there is No Duty to Defend an Action Alleging Purely Economic Damages

In addition to the failure of the allegations in the BCS Complaint to fall within the scope of the Policies' coverage promises and not be otherwise excluded, the BCS Complaint does not seek the type of damages for which an insured is entitled to coverage under California law.

The California Supreme Court held: "strictly economic losses like lost profits, loss of goodwill, loss of the anticipated benefit of a bargain, and loss of an investment, do not constitute damage or injury" covered by a liability insurance policy. (*Waller, supra*, 11 Cal. 4th 17.) Multiple federal courts applying California law agree. (*See, Scottsdale, Ins. Co. v. Darke*, 424 F.Supp.3d 638, 644 (N.D. Cal. 2019); *Travelers Property Casualty Company of America v. Allwire, Inc.*, 508 F.Supp.3d 736, 745-746 [collecting cases holding "damages for lost profits, loss of investment or other harm to one's economic interest constitute injuries to intangible property by which definition fall outside the scope of the policy"].)

The BCS Complaint alleges only financial and economic intangible damages, including but not limited to a "dramatic drop in traffic" to the BCS website, "breach of the trust of the public", destruction of confidential and proprietary information, "damaged relationships", "lost business opportunities", lost "monetary donations",

lost goodwill", unjust enrichment", an "interruption" in BCS's service to the community, and monetary damages "in excess of $5,000". (S.S. 19-25.)

Where the BCS Complaint was not brought to recover damages related to bodily injury, property damage, or personal injury, and instead seeks recovery for financial and economic losses, no coverage is available under either of the Policies, there was no breach of contract, and USAA CIC's Motion for Summary Judgment should be granted.

## V. THE BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM FAILS

USAA CIC did not owe Whiteley a duty to defend and otherwise acted reasonably and in accordance with its duty of good faith and fair dealing in the handling of the claims, and Whiteley's cause of action for insurance bad faith should be summarily adjudged in USAA CIC's favor.

To establish a breach of the implied covenant, Whiteley has the burden of demonstrating he suffered a loss covered under the Policies, notified USAA CIC of the loss, USAA CIC unreasonably declined to provide a legal defense or indemnification, he was harmed, and USAA CIC's delay in the disbursement of benefits under the Policies was a substantial factor in causing the harm. (CACI 2331-2332; *Benavides v. State Farm Gen. Ins. Co.*, 136 Cal. App. 4th 1241, 1250 (2006)

["first, that benefits were due under the policy, and second, that the benefits were withheld without proper cause"].)

Under California law, "as long as the insurer's coverage decision was reasonable, it will have no liability for breach of the covenant of good faith and fair dealing." (*Morris v. Paul Revere Life Ins. Co.* (2003) 109 Cal.App.4th 966, 977.) "Unreasonable" conduct is not synonymous with mistaken, sloppy or even negligent claims handling. (*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.,* (1990) 222 Cal. App. 3d 1371, 1395; *Chateau, supra,* 90 Cal. App. 4th 350 ["it is not enough to say... that [the insurer] could have done a better job in adjusting [a] claim."]; *Congleton v. National Union Fire Ins. Co.* (1987) 189 Cal. App. 3d 51, 59 ["bad faith" liability does not rest on an insurer's "mistaken judgment"].) Rather, bad faith liability requires conscious misconduct. (*Careau, supra,* 222 Cal. App. 3d 1395.)

Further, "an insurer may defend itself against allegations of bad faith and malice in claims handling with evidence the insurer relied on the advice of competent counsel." (*State Farm, supra,* 228 Cal. App. 3d 725.)

Under California's "genuine dispute doctrine", so long as an insurer's declination of a claim is based upon "the existence of a genuine dispute with its insured as to the existence of coverage" the insurer cannot be liable in bad faith." (*Chateau Chamberay, supra,* 90 Cal.App.4th 347; *Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 721.) The "genuine dispute" doctrine stems from the

recognition that insurance companies should be able to investigate claims without fear of accusations of breaching the implied covenant. (*Austero v. Nat. Gas Co.* (1978) 84 Cal.App.3d 1, 30.)

Here, the undisputed material facts show Whiteley cannot meet his burden of demonstrating USAA CIC breached the implied covenant of good faith and fair dealing.

First, California law is clear a breach of implied covenant claim cannot stand alone. Where, as discussed above, USAA CIC's duty to defend was not triggered under the Policies and there is no breach of contract, there can be no bad faith.

Second, even assuming *arguendo* the claim could survive independent of the breach of contract claim (which it cannot), the undisputed facts demonstrate USAA CIC acted reasonably, promptly, and in reliance on the advice of counsel, and as a matter of law did not breach the implied covenant of good faith and fair dealing.

Kaczmarek immediately reviewed the BCS Complaint and the Homeowners Policy and called Whiteley to discuss, notifying him it did not appear from his initial review there was coverage, but that he would obtain a legal review. (S.S. 28-29.) Kaczmarek then sought review by a manager and director, both of whom agreed the BCS Complaint did not appear to set forth allegations which would fall within the Homeowners Policy's insuring agreement. (S.S. 31-33.)

Kaczmarek opened a separate claim under the Umbrella Policy, and again notified Whiteley it was his impression the BCS Complaint would not trigger USAA's duty to defend thereunder. (S.S. 35-36.) Holmes and Gonzalez reviewed the Umbrella Policy and BCS Complaint and agreed with Kaczmarek. (S.S. 37-39.)

Kaczmarek then retained Israel, a seasoned coverage attorney, who reviewed the BCS Complaint in conjunction with both Policies and recommended coverage be denied as USAA CIC's duty to defend was not triggered under policy for multiple reasons. (S.S. 34, 40, 41, 46.) Israel provided a detailed analysis setting for the basis for his recommendations. (S.S. 46-47.)

Kaczmarek promptly conveyed USAA CIC's coverage determination to Whiteley both by phone and in writing. (S.S. 42-45, 48, 49.) Kaczmarek, Holmes and Gonzalez continued to address Whiteley's various complaints regarding how the claims were handled. (S.S. 50-52.) Whiteley did not dispute the coverage determination, or otherwise contact USAA CIC, for over one year.

When his counsel demanded USAA CIC withdraw its denial, Kaczmarek sent the correspondence to Israel for an additional, updated review. (S.S. 53-56.) Israel determined his recommendations were not altered by the positions set forth in Whiteley's counsel's correspondence. (S.S. 57-58.) Kaczmarek communicated USAA CIC's affirmation of its coverage denial to Whiteley and his counsel,

providing a detailed explanation and response to Whiteley's counsel's positions and arguments. (S.S. 59.)

The undisputed facts demonstrate USAA CIC's investigation of both claims was reasonable.

<u>Third</u>, the undisputed material facts establish USAA CIC and Whiteley – both of whom sought the advice of counsel – had a genuine dispute as to whether the duty to defend was triggered by the allegations in the BCS Complaint. (S.S. 46-49, 53, 57-59.)

The undisputed facts demonstrate Whiteley's claim for breach of the implied covenant fails on multiple grounds, and USAA CIC is entitled to summary judgment.

## VI. <u>THE CLAIM FOR DECLARATORY RELIEF FAILS</u>

Whiteley's request for declaratory relief should be decided as a matter of law and subsequently dismissed. "Summary judgment is appropriate in a declaratory relief action when only legal issues are presented for the court's determination." (*California Public Records Research, Inc. v. County of Yolo*, 4 Cal. App. 5th 150, 187 (2016.)) When the court deems summary judgment appropriate, it should "decree only that plaintiffs are not entitled to the declarations in their favor." (*Gafcon, Inc. v. Ponsor & Associates*, 98 Cal. App. 4th 1388, 1401 (2002).) A plaintiff is not entitled to a declaration in its favor where such a declaration would be legally incorrect, [or] the undisputed facts do not support the declaration". (*California Public Records*

*Research, Inc.*, *supra*, 4 Cal. App. 5th at 187; *Gafcon, Inc.*, *supra*, 98 Cal. App. 4th at 1402.)

As discussed above, USAA CIC's coverage determination was appropriate and its duty to defend was not triggered under the Policies. Moreover, USAA CIC conducted its investigation reasonably, promptly, in reliance on the advice of counsel, and in good faith. Thus, any declaratory relief in Whiteley's favor would be legally incorrect. Therefore, the Court should determine as a matter of law Whiteley is not entitled to declaratory relief, and USAA CIC is entitled to summary judgment.

## VII. <u>THE CLAIM FOR PUNITIVE DAMAGES FAILS</u>

Whiteley has not, and cannot, provided any evidence to support a claim for punitive damages – much less that which rises to the required clear and convincing standard.

"The law does not favor punitive damages, and they should be granted with the greatest caution." (*Beck v. State Farm Mut. Auto. Ins. Co.* (1976) 54 Cal. App. 3d 347, 355.) A claim for punitive damages requires proof "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." (Cal. Civ. Code § 3294(a).) Whiteley must show USAA CIC committed despicable acts with the intent to cause injury, with a willful disregard to the safety of others, or which subjected her to cruel and unjust hardship in conscious disregard of her rights. (Cal. Civ. Code 3294(c) (1-3).) Conduct that is "vile, base, contemptible, miserable,

wretched or loathsome", and which would be "despised by ordinary decent people", is considered despicable under California law. (*Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal. App. 4th 1269, 1286.)

In the insurance context, "punitive damages are not available for breaches of contract no matter how gross or willful". (*Tibbs v. Great American Ins. Co.* (9th Cir. 1985) 755 F.2d 1370, 1375; *Tomaselli*, *supra* 25 Cal. App. 4th 1286; Cal. Civ. Code § 3294(a).) A mistake of law, honest error in judgment, overzealousness, or even negligence by an insurance company does not support a claim for punitive damages. (*Ittelia Foods, Inc. v. Zurich Ins. Co.* (9th Cir. 2004) 98 Fed. Appx. 689, 691; *Tommaselli, supra,* 25 Cal. App. 4th 1286.)

As discussed at length above, USAA CIC's coverage determination was appropriate based on its review of the allegations within the BCS Complaint and its reliance on the advice of counsel. USAA CIC's investigation was reasonable and timely. There is no indication whatsoever USAA CIC acted with malice. At all times during the handling of the claim Kaczmarek and his team reviewed and considered all information submitted, kept an open mind, never made any decision or conducted any activity on the claim with any intent to cause harm, and never intended to make nor did make any misrepresentations to Whiteley. (S.S. at ¶62.) Whiteley's general disagreement with USAA CIC's declination of coverage, without more, is insufficient to support a claim for punitive damages.

Lastly, Whiteley cannot meet his additional burden of showing that an officer, director, or managing agent had advance knowledge of and ratified the conduct. (Cal. Civ. Code § 3294(b).) Under California law, a "managing agent" includes "only those corporate employees who exercise substantial independent authority and judgment in their corporate decision making so that their decisions ultimately determine corporate policy." (*White v. Ultramar, Inc.* (1999) 21 Cal. 4th 563, 566-567.) Whiteley cannot set forth any evidence identifying an officer, director, or managing agent of USAA CIC who was involved in the handling of the claim. (S.S., generally.) Nor has Whiteley made any allegations or submitted proof that any managing agent knew about or ratified purportedly despicable conduct in the handling of his claim.

The undisputed facts demonstrate Whiteley cannot meet his burden to the requisite heightened standard as to the punitive damages claim, and summary judgment should be granted in USAA's favor.

## VIII. <u>CONCLUSION</u>

For the foregoing reasons, USAA CIC respectfully requests that this Court grant summary judgment in its favor as to all causes of action.

DATED: January 31, 2025          **DKM LAW GROUP, LLP**


By: */s/Jessica J. Ross*
JOSHUA N. KASTAN (SBN 284767)
JNK@dkmlawgroup.com
JESSICA J. ROSS (SBN 313988)
JJR@dkmlawgroup.com
Attorneys for Defendant,
USAA CASUALTY INSURANCE
COMPANY


## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2</u>

The undersigned, counsel of record for USAA Casualty Insurance Company, certifies that this brief contains 6, 786 words, which complies with the word limit of L.R. 11-6.1.


DATED: January 31, 2025          **DKM LAW GROUP, LLP**


By:  */s/Jessica J. Ross*
JOSHUA N. KASTAN (SBN 284767)
JNK@dkmlawgroup.com
JESSICA J. ROSS (SBN 313988)
JJR@dkmlawgroup.com
Attorneys for Defendant,
USAA CASUALTY INSURANCE
COMPANY