JOSHUA N. KASTAN (SBN 284767)
JNK@dkmlawgroup.com
JESSICA J. ROSS (SBN 313988)
JJR@dkmlawgroup.com
**DKM Law Group, LLP**
50 California St., Suite 1500
San Francisco, CA 94111
Telephone:(415) 421-1100
Facsimile: (415) 842-0095

Attorneys for Defendant,
USAA CASUALTY INSURANCE COMPANY

# IN UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY R. WHITELEY,<br><br>Plaintiff,<br><br>vs.<br><br>USAA CASUALTY INSURANCE COMPANY,<br><br>Defendant. | CASE NO.: 2:24-cv-00138-FLA-MAA<br><br>**DEFENDANT USAA CASUALTY INSURANCE COMPANY'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>**Hearing Date:** March 14, 2025<br>**Hearing Time:** TBD<br>**Crtrm.:** 6B<br>**Judge:** Hon.Aenlle-Rocha<br>**Cmplt. Filed:** Jan. 5, 2024 |

Defendant USAA Casualty Insurance Company ("USAA CIC") respectfully submits its Statement of Uncontroverted Facts in support of its Moton for Summary Judgment:

# I.
## USAA IS ENTITLED TO SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIMS FOR BREACH OF CONTRACT, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, DECLARATORY RELIEF, AND PUNITIVE DAMAGES

| UNDISPUTED FACT | EVIDENCE |
|---|---|
| **1.** USAA CIC issued Homeowners Policy, No. 007778375-90A, to Plaintiff Jeremy Whiteley ("Homeowners Policy"). | Declaration of Jessica Ross in Support of USAA's Motion for Summary Judgment ("Ross Decl.") at Exhibit 1. |
| **2.** USAA CIC issued Umbrella Policy, No. 007778375-70U, to Plaintiff Jeremy Whiteley ("Umbrella Policy"). | Ross Decl. at Exhibit 2. |
| **3.** On March 28, 2022, non-profit Breaking Code Silence ("BCS" filed a complaint against Whiteley and Katherine McNamara ("McNamara") alleging causes of action for violations of the Computer Fraud and Abuse Act (18 U.S.C. §1030) and California's Computer Data Access and Fraud Act (Cal. Penal Code § 502) ("BCS Complaint"). | Declaration of Barbara Gonzalez ("Gonzalez Decl.") in support of USAA CIC's Motion for Summary Judgment at ¶6, Exhibit 3. |
| **4.** The Homeowners Policy states:<br><br>**UNIT OWNERS – HOMEOWNERS POLICY**<br><br>**-PERSONAL INJURY ENDORSEMENT-**<br><br>**COVERAGE E – PERSONAL LIABILITY** | Ross Decl., Exhibit 1 at WHITELEY_HO_CP_065. |

| UNDISPUTED FACT | EVIDENCE |
|---|---|
| If a claim is made or a suit is brought against any **"insured"** for damages because of **"bodily injury"**, **"property damage"** or **"personal injury"** caused by an **"occurrence"** to which this coverage applies, we will:<br><br>       \* \* \*<br><br>  1. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false, or fraudulent…<br><br>We will not pay for punitive **"damages"** or exemplary **"damages"**, fines or penalties. | |
| **5.** The Homeowners Policy's Personal Injury Endorsement defines "personal injury" and "occurrence":<br><br>**"Personal Injury"** means:<br><br>  b. Libel.<br>  c. Slander.<br>  d. Defamation of character.<br>  e. Invasion of rights of privacy.<br><br>\*\*\*<br><br>**"Personal injury"** only applies when the conduct is not malicious or criminal in nature.<br><br>\*\*\*<br><br>**"Occurrence"** means:<br><br>  **a.** An accident … which results, during the policy period, in **"bodily injury"** or **"property damage"**… | Ross Decl., Exhibit 1 at WHITELEY_HO_CP_065. |

| UNDISPUTED FACT | EVIDENCE |
|---|---|
| **b.** An event or series of events . . . proximately caused by an act or omission of any **"insured"**, which results, during the policy period, in **"personal injury"**, neither expected nor intended from the standpoint of the **"insured."** | |
| **6.** Homeowners Policy defines "bodily injury" and "property damage" as:<br><br>- DEFINITIONS -<br><br>\*\*\*<br><br>2. "Bodily injury" means physical injury, sickness or disease, including required care, loss of services and death that results.<br><br>"Bodily injury" does not include mental injuries such as: emotional distress, mental anguish, humiliation, mental distress, or any similar injury unless it arises out of physical injury to the person claiming a mental injury.<br><br>\*\*\*<br><br>18. "Property damage" means physical damage to, or destruction of tangible property, including loss of use of this property. | Ross Decl., Exhibit 1 at WHITELEY_HO_CP_008-009. |
| **7.** The Homeowners Policy and Personal Injury Endorsement included the following exclusions:<br><br>- SECTION II – EXCLUSIONS - | Ross Decl., Exhibit 1 at WHITELEY_HO_CP_065. |

| UNDISPUTED FACT | EVIDENCE |
|---|---|
| 1. Coverage E Personal Liability and Coverage F Medical Payments to Others do not apply to "personal injury":<br><br>a. which is expected or intended by the "insured" . . . | |
| **8.** The Umbrella Policy's personal liability coverage provides:<br><br>**PERSONAL UMBRELLA POLICY**<br><br>**- INSURING AGREEMENT -**<br><br>***<br><br>B. Defense.<br><br>1. If a claim is made or a suit is brought against any **insured** for **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, or for **personal injury** to which this policy applies, we will provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent… | Ross Decl., Exhibit 2 at WHITELEY_UMB_CP_011. |
| **9.** The Umbrella Policy defines "bodily injury" identical to the Homeowners Policy, and includes the following additional definitions:<br><br>**-DEFINITIONS-**<br><br>*** | Ross Decl., Exhibit 2 at WHITELEY_UMB_CP_010. |

| UNDISPUTED FACT | EVIDENCE |
|---|---|
| N. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in **bodily injury** or **property damage**.<br><br>O. "**Personal injury**" means injury arising out of one or more of the offenses listed below . . .<br><br>1. Oral, written or electronic publication of a false statement that defames a person's or organization's character or reputation.<br><br>2. Oral, written or electronic publication of material that violates a person's right of privacy by publicly disclosing private facts. | |
| 10. The Umbrella Policy sets forth the following exclusions:<br><br>- EXCLUSIONS -<br>***<br>D. This insurance does not apply to **personal injury** which results from a false statement if done by or at the direction of any **insured** with knowledge that the statement was false, or made with reckless disregard for the truth.<br><br>***<br><br>G. This insurance does not apply to **bodily injury**, | Ross Decl., Exhibit 2 at WHITELEY_UMB_CP_013-014. |

| UNDISPUTED FACT | EVIDENCE |
|---|---|
| **property damage** or **personal injury**:<br><br>***<br><br>7. Arising out of a criminal act or omission by, or with either the knowledge or consent of, any **insured**.<br><br>***<br><br>10. Arising out of any contract or agreement. | |
| **11.** The BCS Complaint alleged Whiteley "engaged in acts of cyberhacking directed to BCS". | Gonzalez Decl., ¶6, Exhibit 3 at ¶7. |
| **12.** The BCS Complaint alleged Whiteley "set-up the website infrastructure" and the "hosting account for the BCS website". | Gonzalez Decl., ¶6, Exhibit 3 at ¶11. |
| **13.** The BCS Complaint alleged Whiteley "was the alter ego of [McNamara]", "was a co-conspirator of [McNamara]" and "acted intentionally … and pursuant to an agreement [with McNamara] . . . to obtain and convert secret, confidential, and proprietary information [and] documents" for "their own competitive advantage, and to deprive BCS of the use of such property in business". | Gonzalez Decl., ¶6, Exhibit 3 at ¶13-15. |
| **14.** The BCS Complaint alleged Whiteley "exercised an extreme act and maliciously accessed BCS's account with Google" and "caused the website | Gonzalez Decl., ¶6, Exhibit 3 at ¶36. |

| UNDISPUTED FACT | EVIDENCE |
|---|---|
| to be deindexed" using Whiteley's former administrative credentials | |
| 15. The BCS Complaint alleged Whiteley "maliciously attempted to remove and/or gain control of the BCS website and corresponding Google Webmaster Central permissions". | Gonzalez Decl., ¶6, Exhibit 3 at ¶39. |
| 16. The BCS Complaint alleged Whiteley "attempted or succeeded at changing the content of the [BCS] website" and accessed BCS's AdWords account without authorizations. | Gonzalez Decl., ¶6, Exhibit 3 at ¶43. |
| 17. The BCS Complaint alleged McNamara "started creating tension on BCS's board and began regularly spreading gossip and slanderous lies about fellow board members among volunteers and in the survivor community". | Gonzalez Decl., ¶6, Exhibit 3 at ¶27. |
| 18. The BCS Complaint alleged McNamara "conspired with other volunteers and employees of BCS, including Mary "Meg" Applegate and Caroline (Cole) Lorson, to download BCS's files and confidential data, including an entire Google Drive, without BCS's authority or permission, and in specific instances, even tamper with, destroy, and deny access to portions of BCS data from such Google Drive . . .". | Gonzalez Decl., ¶6, Exhibit 3 at ¶30. |
| 19. The BCS Complaint alleged "once [McNamara] was satisfied that she | Gonzalez Decl., ¶6, Exhibit 3 at ¶32. |

| **UNDISPUTED FACT** | **EVIDENCE** |
|---|---|
| had gutted the entirety of BCS's electronically stored information, she encouraged additional volunteers and board members to leave BCS under false pretenses". | |
| 20. The BCS Complaint alleged "Lifetime was promoting a made-for-TV film based on the true stories of two TTI survivors, which . . . highlighted BCS's work on the TTI-survivor and victim communities. [Whiteley and McNamara's] conduct prevented BCS from being able to promote the documentary . . ." | Gonzalez Decl., ¶6, Exhibit 3 at ¶37. |
| 21. The BCS Complaint alleged "the deindexing of the BCS website blocked its primary and largest source of traffic, organic searches, cutting off the website's main source of exposure" and "reflected a significant and dramatic drop in traffic". | Gonzalez Decl., ¶6, Exhibit 3 at ¶38. |
| 22. The BCS Complaint alleged ". . . the harm caused by [Whiteley and McNamara] is irreparable, e.g. the breach of the trust of the public sought to be served by BCS, the unknown extent to which they have reviewed and destroyed BCS confidential information, emails, intellectual properties, and other files, and damaged relationships after Defendant McNamara and her colleagues at UnSilenced made defamatory statements to valued | Gonzalez Decl., ¶6, Exhibit 3 at ¶45. |

| UNDISPUTED FACT | EVIDENCE |
|---|---|
| partners, resulting in strained and, in some cases, terminated valued relationships. In this lawsuit, BCS seeks an injunction . . . " | |
| 23. The BCS Complaint alleged "as a direct and proximate result of [Whiteley and McNamara's] conduct BCS has suffered extensive damages in excess of $5,000 . . . Such damages include . . . lost business opportunities and monetary donations, and disclosure of misleading information to the public." | Gonzalez Decl., ¶6, Exhibit 3 at ¶47. |
| 24. The BCS Complaint alleged "BCS also seeks recovery for lost goodwill as a result of [Whiteley and McNamara]'s dissemination of false information by impersonating BCS. Defendants have also greatly and unjustly enriched themselves used BCS's social media accounts and proprietary information at BCS's expense." | Gonzalez Decl., ¶6, Exhibit 3 at ¶48. |
| 25. The BCS Complaint alleged "During this period of service interruptions, BCS suffered losses of revenue and donations . . . lost thousands of dollars in donations, revenues, and in potential future growth . . ." | Gonzalez Decl., ¶6, Exhibit 3 at ¶73. |
| 26. On April 21, 2022, Whiteley notified USAA CIC of the lawsuit. | Gonzalez Decl., ¶6, Exhibit 4. |
| 27. On April 22, 2022, USAA CIC | Gonzalez Decl., ¶7, Exhibit 5. |

| **UNDISPUTED FACT** | **EVIDENCE** |
|---|---|
| Adjuster Kaczmarek was assigned to the claim. | |
| **28.** On April 22, 2022, Kaczmarek reviewed the BCS Complaint and noted it alleged Whiteley "engaged in cyber hacking directed to BCS, including but not limited to the unauthorized access of servers and networks", and then reviewed the Homeowners Policy. | *Id.* |
| **29.** On April 22, 2022, Kaczmarek spoke with Whiteley regarding the BCS Complaint.<br><br>During the call, Whiteley denied taking part in the allegations and stated he believed he was named in the lawsuit as an act of retaliation by BCS.<br><br>Kaczmarek advised Whiteley "based on the suit and wording of the policy, there does not appear to be coverage for the loss or legal representation as the loss does not meet the definition of an occurrence under the policy", but that USAA CIC's final coverage determination was pending review by its legal team. | Gonzalez Decl., ¶8, Exhibit 6. |
| **30.** On April 22, 2022, Whiteley sent a digital message to Kaczmarek disputing his statements regarding coverage. | Gonzalez Decl., ¶8, Exhibit 7. |
| **31.** On April 22, 2022, Kaczmarek | Gonzalez Decl., ¶9, Exhibit 8. |

| UNDISPUTED FACT | EVIDENCE |
|---|---|
| requested internal review and recommendation regarding the BCS Complaint in conjunction with the Homeowners Policy by a manager and director. | |
| 32. On April 22, 2022, Manager of Claims Operations Kathryn Mashaw reviewed the BCS Complaint, Homeowners Policy, and Kaczmarek's request, and recommended:<br><br>"Agree w/[Kaczmarek's] recommendation. Accusations do not meet definition of occurrence and no property damage present. Deferring to [Director of Claims Operations].: | Gonzalez Decl., ¶9, Exhibit 9. |
| 33. On April 23, 2022, Director of Claims Operations Barbara Gonzalez ("Gonzalez") reviewed the Homeowners Policy and BCS Complaint, and stated:<br><br>"DCO review does not find any allegations or actions that would meet the definition of [bodily injury or property damage] under the policy and therefore does not see a duty to defend . . . DCO authorized further review by [outside counsel]."<br><br>"DCO agrees with [Kaczmarek] and [Mashaw] that allegations do not meet [definition of bodily injury or property damage]." | Gonzalez Decl., ¶10, Exhibit 10. |

| UNDISPUTED FACT | EVIDENCE |
|---|---|
| | |
| **34.** On April 26, 2022, Kaczmarek called outside counsel Daniels Fine Israel Schonbuch & Lebovits to request a coverage review. | Gonzalez Decl., ¶11, Exhibit 11. |
| **35.** On April 26, 2022, Whiteley sent multiple digital messages to Kaczmarek, stating:<br><br>"I have hired an attorney with extensive experience with this type of frivolous lawsuit."<br><br>"This is a claim for a frivolous lawsuit. Under the Personal Injury section of my policy. My homeowners and umbrella policy provide coverage. My HOA is not needed."<br><br>Kaczmarek responded:<br><br>"There is no coverage for personal injury to an insured under the umbrella policy. The personal injury coverage applies to a claimant or third party." | Gonzalez Decl., ¶12, Exhibit 12. |
| **36.** Based on Whiteley's messages, Kaczmarek opened a separate claim under the Umbrella Policy. | Gonzalez Decl., ¶13, Exhibit 13 at Doc Note 1, 4. |
| **37.** On April 27, 2022, Kaczmarek reviewed the Umbrella Policy and requested internal review by a manager and director of the BCS Complaint in conjunction with the Umbrella Policy. | Gonzalez Decl., ¶13, Exhibit 13 at Doc Note 6. |

| UNDISPUTED FACT | EVIDENCE |
|---|---|
| | |
| **38.** On April 27, 2022, Manager of Claims Operations Alisa Kuzma-Holmes ("Holmes") reviewed and agreed the duty to defend was not triggered under the Umbrella Policy, stating:<br><br>"Agree w/[Kaczmarek] recommendation. Accusations do not meet definition of occurrence and no property damage present. [Outside counsel] is reviewing coverage under [homeowners] policy – doc #29 – request to have review under umbrella as well". | Gonzalez Decl., ¶14, Exhibit 14. |
| **39.** On April 28, 2022, Gonzalez reviewed the Umbrella Policy and agreed with Kaczmarek and Holmes' coverage recommendations, stating:<br><br>"DCO does not see that allegations meet the def of [bodily injury, property damage] or occurrence as outlined in the policy and therefore does not see duty to defend but would like further review by [outside counsel] and give authority for same". | Gonzalez Decl., ¶15 Exhibit 15. |
| **40.** On April 27, 2022, Kaczmarek retained outside counsel Mark Israel ("Israel") to provide a coverage review. | Gonzalez Decl., ¶16, Exhibit 16. |
| **41.** On November 21, 2024, Israel was deposed in this matter ("Israel's | Ross Decl., Exhibit 17 Depo [depo 8:24-9:1].) |

| UNDISPUTED FACT | EVIDENCE |
|---|---|
| Deposition"). Israel testified:<br><br>Q: And how long have you specialized in insurance coverage?<br><br>A: Thirty-seven years. | |
| 42. On May 3, 2022, Kaczmarek sent a digital message to Whiteley notifying him USAA CIC was "still completing our coverage review of your loss". | Gonzalez Decl., ¶17, Exhibit 18. |
| 43. On May 3, 2022, Whiteley sent a digital message to Kaczmarek stating:<br><br>". . . This is covered under the personal injury section of my homeowner's policy under g. Malicious prosecution and humiliation. This Complaint is no more than judicial extortion. Plaintiff's allegations are a work of fiction designed to intimidate Defendant McNamara into surrendering a domain name she purchased with her own funds and in her own name years prior to her involvement with [BCS] and never transferred to the company". | Gonzalez Decl., ¶17, Exhibit 18. |
| 44. On May 10, 2022, after having been out of office for training, Kaczmarek contacted Whiteley to discuss the claims, and left him a voicemail. | Gonzalez Decl., ¶18, Exhibit 19. |
| 45. On May 12, 2022, Whiteley sent | Gonzalez Decl., ¶18, Exhibit 20. |

| UNDISPUTED FACT | EVIDENCE |
|---|---|
| Kaczmarek a digital message claiming his voicemail was "unresponsive and breaches USAA's duty to defend".<br><br>Kaczmarek responded:<br><br>". . . I did reach out to the outside counsel that is completing the coverage review for your claim and was advised that they hope to have the review completed by Monday. Once i receive their response, I will follow up with you to discuss our position." | |
| 46. On May 16, 2022, Israel notified Kaczmarek of his recommendation that USAA CIC's duty to defend was not triggered under the Homeowners Policy or Umbrella Policy, stating:<br><br>"I conclude that there is no duty to defend this matter which allege violations of state and federal anti-hacking statutes for the reasons set forth in the attached response letter"<br><br>Kaczmarek copied Israel's e-mail into the claim file's Activity Log and noted he would advise Whiteley and Whiteley's counsel of the coverage determination. | Gonzalez Decl., ¶20, Exhibit 21. |
| 47. Israel attached a ten-page long draft response letter to Whiteley's counsel which set forth Israel's | Gonzalez Decl., ¶20, Exhibit 22. |

| UNDISPUTED FACT | EVIDENCE |
|---|---|
| conclusions and provided a detailed recitation of the BCS Complaint, the Homeowners Policy language, the Umbrella Policy language, and analysis including citations to relevant California case law.<br><br>Israel's letter provided four separate reasons USAA CIC's duty to defend was not triggered. | |
| 48. On May 16, 2022, Kaczmarek called Whiteley to notify him of USAA CIC's coverage determination. Kaczmarek noted he "explained to ni the outcome of the review" and "advised a denial letter will be drafted under each policy and sent to him and his attorney".<br><br>Kaczmarek further noted Whiteley "request to have callback from my manager to discuss his claim". | Gonzalez Decl., ¶21, Exhibit 23. |
| 49. On May 17, 2022, Kaczmarek sent Whiteley and his counsel written correspondence notifying him of USAA CIC's coverage determination that its duty to defend was not triggered, explaining the grounds for the denial of the claims, and attaching Israel's responsive letter. | Gonzalez Decl., ¶22, Exhibit 24.<br><br>For efficiency of review, attachment is not included but is within the record as Gonzalez Decl., Exhibit 22. |
| 50. On May 17, 2022, the USAA CIC Member Advocacy Team investigated Whiteley's complaint and called him to discuss. | Gonzalez Decl., ¶23, Exhibit 25. |

| UNDISPUTED FACT | EVIDENCE |
|---|---|
| **51.** On May 20, 2022, Whiteley spoke with Kaczmarek on the phone and claimed "he never requested to file a claim under his umbrella policy" and "disputed ever speaking to [Kaczmarek] prior to our conversation last Monday".<br><br>Whiteley then "advised [Kaczmarek] he had recorded the call for reference", without notifying Kaczmarek or obtaining his consent, which Kaczmarek did not give. | Gonzalez Decl., ¶24, Exhibit 26, at Doc Note 87. |
| **52.** On May 23, 2022, Gonzalez called Whiteley. Gonzalez summarized the call, noting:<br><br>"[Whiteley] alleges no communication about the claims process" . . .<br><br>". . . he understands that the complaint outlined in the law suit does not meet the definitions in the contract but is unhappy with the handling of the claim . . ."<br><br>"he said that his attorneys will take it from here". | Gonzalez Decl., ¶24, Exhibit 26 at Doc Note 88. |
| **53.** On September 21, 2023, Whiteley's counsel sent written correspondence to USAA CIC demanding "immediate withdrawal of the wrongful denial".<br><br>The letter disputed USAA CIC's | Gonzalez Decl., ¶25, Exhibit 27. |

| **UNDISPUTED FACT** | **EVIDENCE** |
|---|---|
| coverage determination and set forth Whiteley's counsel's factual and legal positions. | |
| 54. On September 21, 2023, Kaczmarek reviewed the correspondence from Whiteley's counsel and noted he would "forward the document to [MCO Holmes] for further review and to discuss the next steps". | Gonzalez Decl., ¶25, Exhibit 28 at Doc Note 112. |
| 55. On September 21, 2023, Holmes reviewed the written correspondence from Whiteley's counsel and instructed Kaczmarek to "send the letter to [outside counsel Isrel] to review to determine if the additional information would change opinion" and to advise Whiteley and his counsel of the same. | Gonzalez Decl., ¶25, Exhibit 28 at Doc Note 113. |
| 56. On September 22, 2023, Kaczmarek forward the written correspondence from Whiteley's counsel to Israel and "requested [Israel] review and verify if anything included in the letter changes our opinion".<br><br>Kaczmarek also notified Whiteley's counsel of USAA CIC's continued review. | Gonzalez Decl., ¶25, Exhibit 28 at Doc Note 115. |
| 57. On November 9, 2023, Kaczmarek received e-mail correspondence from Israel which he copied into USAA CIC's claim file. Israel stated: | Gonzalez Decl., ¶26, Exhibit 29. |

| UNDISPUTED FACT | EVIDENCE |
|---|---|
| "While this matter is somewhat esoteric and complex, I believe a careful review of the points raised by [Whiteley's counsel] indicates that his arguments are factually and or legally insufficient to trigger coverage under either policy issued to Mr. Whiteley. You will see the reasoning for that conclusion explained in detail in the letter", which was attached. | |
| 58. Israel attached a draft responsive letter to Whiteley's counsel to his November 9, 2023 e-mail correspondence.<br><br>The letter set forth a detailed explanation of Israel's recommendations as to coverage and his consideration and response to the positions taken by Whiteley's counsel in his September 5, 2023 letter.<br><br>Israel stated:<br><br>"We have carefully reviewed the issues raised by your correspondence as well as the federal court pleadings and Mr. Whiteley's USAA CIC policies. We find no coverage allegations in the complaint pertaining to Mr. Whiteley that would trigger a duty to defend the lawsuit or to indemnify any of the damages alleged." | Gonzalez Decl., ¶26, Exhibit 30. |

| UNDISPUTED FACT | EVIDENCE |
|---|---|
| Israel then addressed and responded to each allegation within the BCS Complaint that Whiteley's counsel claimed triggered USAA CIC's duty to defend. (*See* WHITELEY_CF_383-386.) | |
| **59.** On November 9, 2023, Kaczmarek sent written correspondence to Whiteley's counsel affirming USAA CIC's coverage determination and copying Israel's draft response letter. | Gonzalez Decl., ¶27, Exhibit 31. |
| **60.** At Israel's Deposition, he testified:<br><br>Q: Well, the complaint alleges various facts, right? It makes –<br><br>A: Yes, it does. It's very clear and detailed. Which, again, it is very clear and detailed, it alleges precisely what it wishes to allege and it does not allege any defamatory statement of fact by Mr. Whiteley against the plaintiff. | Ross Decl., Exhibit 17 at 25:20-26:2. |
| **61.** At Israel's Deposition, he testified:<br><br>Q: What about paragraph 48, same sort of line of questioning?<br><br>A: I read that the same way. That's an impersonation of BCS and also is defendant singular. So I don't see any clear factual allegation of defamation on the part of Mr. Whiteley in that paragraph. | Ross Decl., Exhibit 17 at 23:2-22; 24:5-23; 25:5-15. |

| UNDISPUTED FACT | EVIDENCE |
|---|---|
| Q: Does it have to be a clear factual allegation to trigger the duty to defend?<br><br>A: Yes. There has to be a factual allegation. It can't be based on speculation as to what the intent was. Particularly in my opinion when the cause of action is not alleged and never was alleged. And this is not a complaint that was not carefully drafted. It's obvious on its face it was very carefully drafted. It refers only to specified computer fraud and criminal statutes. So, in my opinion, no, this doesn't come anywhere near sufficient factually to allege a defamation cause of action with respect to Mr. Whiteley.<br><br>* * *<br>Q: Does paragraph 78 of the BCS complaint allege defamation?<br><br>A: I don't believe it does. It refers to a violation of a California Penal Code Statute.<br><br>[colloquy omitted]<br><br>Q: So it says: "Defendants . . . permanently damaged BCS's reputation and goodwill with the public". That's not enough to trigger allegations of defamation?<br><br>A: No. It's certainly possible to damage somebody's reputation and goodwill with the public without | |

-22-

| **<u>UNDISPUTED FACT</u>** | **<u>EVIDENCE</u>** |
|---|---|
| defaming them. For example, taking down their website.<br><br>* * *<br><br>Q: But the fact that the complaint says that defendants engaged in dissemination of false information or damaged BCS's reputation or disclosed misleading information to the public, all of the paragraphs that we just reviewed?<br><br>A: I would answer it exactly the same way. That calls for speculation as to what the allegation was, that this was intended to be an allegation of a defamatory falsehood made by Mr. Whiteley about the plaintiff. It's not the complaint. It's nowhere in the complaint. | |
| **62.** At all times during the handling of the claim, Kaczmarek and his team, including but not limited to Holmes and Gonzalez, reviewed all information provided, kept an open mind, never made any decision or conducted any activity on the claim with any intent to cause harm, and never intended to make nor did make any misrepresentations to Whiteley or his counsel. | Gonzalez Decl. at ¶¶28-29. |

//

//

Dated:  January 31, 2025                    **DKM LAW GROUP, LLP**


                                            By: */s/Jessica J. Ross*
                                               JOSHUA N. KASTAN (SBN 284767)
                                               JNK@dkmlawgroup.com
                                               JESSICA J. ROSS (SBN 313988)
                                               JJR@dkmlawgroup.com
                                               Attorneys for Defendant,
                                               USAA CASUALTY INSURANCE
                                               COMPANY