JOSHUA N. KASTAN (SBN 284767)
JNK@dkmlawgroup.com
JESSICA J. ROSS (SBN 313988)
JJR@dkmlawgroup.com
**DKM LAW GROUP, LLP**
50 California St., Suite 1500
San Francisco, CA 94111
Telephone:(415) 421-1100
Facsimile: (415) 842-0095

Attorneys for Defendant,
USAA CASUALTY INSURANCE COMPANY

# IN UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY R. WHITELEY,<br><br>Plaintiff,<br><br>vs.<br><br>USAA CASUALTY INSURANCE COMPANY,<br><br>Defendant. | CASE NO.: 2:24-cv-00138-FLA-MAA<br><br>**DECLARATION OF BARBARA GONZALEZ IN SUPPORT OF DEFENDANT USAA CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Hearing Date:** March 14, 2025<br>**Hearing Time:** TBD<br>**Crtrm.:** 6B<br>**Judge:** Hon.Aenlle-Rocha<br>**Cmplt. Filed:** Jan. 5, 2024 |

I, Barbara Gonzalez, declare as follows:

1.    I am a Property Claims Director involved, in part, in the handling and overseeing of personal liability claims on behalf of USAA Casualty Insurance Company ("USAA CIC"). I have been involved in handling claims for USAA CIC and its affiliated companies for approximately 33 years. As a Property Claims Director I do not have the authority to create, revise, or enact corporate policies or

procedures. The decisions that I and my team make during the handling of an insurance claim do not determine or affect USAA CIC's company-wide corporate policies and procedures.

2.    I have personal knowledge of each matter stated herein and, if called as a witness, I would competently testify to all of the following based on my personal knowledge.

3.    I submit this declaration in support of the Motion for Summary Judgement on behalf of USAA CIC.

4.    I am familiar with Plaintiff Jeremy Whiteley's claim for personal liability benefits arising out of the underlying lawsuit filed against him by Breaking Code Silence ("BCS") styled *Breaking Code Silence v. Katharine McNamara and Jeremey Whiteley* in the U.S. District Court for the Central District of California on March 28, 2022, Case No. 2:22-cv-002052 ("BCS Complaint"). My team was assigned the claim soon after Mr. Whiteley reported the loss in April of 2022. Accordingly, I am familiar with the issues in this case, and familiar with the documents contained within the claims file in this matter.

5.    Many of the documents contained within the claim files were either received, generated, or reviewed by me and my team during the handling of the claims. The documents contained within the claim file are documents that are typical of those created, used, or requested in the regular course of claims handling business

for USAA CIC, and were made at or near the time of the act, condition, or event. Based upon my training, education, and experience, I have found such documents to be reliable.

6.    On April 21, 2022, Whiteley notified USAA CIC he had been named in a lawsuit and provided a copy of the BCS Complaint.

- Attached hereto as **Exhibit 3** is a true and correct copy of the BCS Complaint, as submitted to USAA CIC by Whiteley.

- Attached hereto as **Exhibit 4** is a true and correct copy of the digital messages between USAA CIC and Whiteley, dated April 21, 2022, regarding Whiteley's initial loss report.

7.    On April 22, 2022, Adjuster John Kaczmarek ("Kaczmarek") was assigned to Whiteley's claim. Kaczmarek reviewed the BCS Complaint and the Homeowners Policy and noted the next steps of his investigation within the claim file's Activity Log, including contacting Whiteley and sending the claim for legal review.

- Attached hereto as **Exhibit 5** is a true and correct copy of Activity Log Documentation No. 5, dated April 22, 2022, concerning Kaczmarek's assignment to Whiteley's claim and initial investigation and impressions of the same.

8.      On April 22, 2022, Kaczmarek spoke with Whiteley on the phone and summarized his conversation within the claim file's Activity Log. Following the call, Whiteley sent a digital message to the claim file disputing Whiteley's initial statements regarding coverage.

- Attached hereto as **Exhibit 6** is a true and correct copy of Activity Log Documentation No. 12, dated April 22, 2022, concerning Kaczmarek's call with Whiteley.
- Attached hereto as **Exhibit 7** is a true and correct copy of the digital message Whiteley sent to the claim file, dated April 22, 2022.

9.      On April 22, 2022, Kaczmarek completed a Resolve Legal Question template, requesting internal review of the claim by a manager and director within USAA CIC in preparation for further review by counsel. Manager of Claims Operations Kathryn Mashaw reviewed the Resolve Legal Question template, the BCS Complaint, and the Homeowners Policy and inserted her recommendation that coverage was not triggered by the allegations within the BCS Complaint.

- Attached hereto as **Exhibit 8** is a true and correct copy of the Resolve Legal Question template, Activity Log Documentation No. 14, Kaczmarek completed, dated April 22, 2022.

- Attached hereto as **Exhibit 9** is a true and correct copy of the Resolve Legal Question template, Activity Log Documentation No. 17, completed by Kathryn Mashaw, dated April 22, 2022.

10.     On April 23, 2022, I reviewed Kaczmarek and Mashaw's Resolve Legal Question templates, the BCS Complaint, and the Homeowners Policy and noted my recommendation that coverage was not triggered by the allegations within the BCS Complaint, and that I believed further review by outside counsel should be obtained.

- Attached hereto as **Exhibit 10** is a true and correct copy of Activity Log Documentation Nos. 19-20, dated April 23, 2022, regarding my file review and response to Resolve Legal Question templates.

11.     On April 26, 2022, Kaczmarek contacted the law firm Daniels Fine Israel Schonbuch & Lebovits to request a review of Whiteley's claim for a legal defense.

- Attached hereto as **Exhibit 11** is a true and correct copy of Activity Log Documentation No. 23, dated April 26, 2022, regarding Kaczmarek's contact to the law firm.

12.     On April 26, 2022, Whiteley sent several digital messages to the claim file, which Kaczmarek received and reviewed. Whiteley stated both the Homeowners and Umbrella Policies provided coverage under their respective Personal Injury sections, and that the Homeowners Policy was not needed. Kaczmarek responded to

Whiteley and explained the Umbrella Policy did not afford coverage for personal injury to an insured.

- Attached hereto as **Exhibit 12** is a true and correct copy of the digital messages between Kaczmarek and Whiteley, dated April 26, 2022.

13.    On April 27, 2022 Kaczmarek opened a separate claim for benefits pursuant to the Umbrella Policy, identified as L/R #30. Kaczmarek reviewed the Umbrella Policy in conjunction with the BCS Complaint and completed a Resolve Legal Question template seeking internal review by a manager and director within USAA CIC in preparation for further review by counsel of the claim under the Umbrella Policy.

- Attached hereto as **Exhibit 13** is a true and correct copy of Activity Log Documentation Nos. 1, 4, and 6 from the L/R #30 claim file regarding Kaczmarek's initiation of the claim and Resolve Legal Question template.

14.    On April 27, 2022, Manager of Claims Operations Alisa Kuzma-Holmes ("Holmes") reviewed Kaczmarek's Resolve Legal Question template, the BCS Complaint, and the Umbrella Policy and inserted her recommendation that coverage was not triggered by the allegations within the BCS Complaint.

**DECLARATION OF BARBARA GONZALEZ ISO MOTION FOR SUMMARY JUDGMENT**
**CASE NO. 2:24-cv-00138-FLA-MAA**

- Attached hereto as **Exhibit 14** is a true and correct copy of the Resolve Legal Question template, L/R #30 Activity Log Documentation No. 10, completed by Holmes, dated April 27, 2022.

15.    On April 28, 2022, I reviewed Kaczmarek and Holmes' Resolve Legal Question templates as to L/R #30, the BCS Complaint, and the Umbrella Policy and noted based on my review it appeared coverage was not triggered by the allegations within the BCS Complaint, and that further review of the claim regarding the Umbrella Policy by outside counsel was authorized.

- Attached hereto as **Exhibit 15** is a true and correct copy of L/R #30 Activity Log Documentation No. 14, dated April 28, 2022.

16.    On April 27, 2022, Kaczmarek retained outside counsel Mark Israel ("Israel") to provide a coverage review.

- Attached hereto as **Exhibit 16** is a true and correct copy of Activity Log Documentation No. 37, dated April 27, 2022.

17.    On May 3, 2022, Kaczmarek sent Whiteley a digital message notifying him the coverage review was ongoing. Whiteley responded to the message and continued to state he believed the claim was covered.

- Attached hereto as **Exhibit 18** is a true and correct copy of the digital messages within the claim file between Kaczmarek and Whiteley, dated May 3, 2022.

18.    On May 10, 2022, Kaczmarek contacted Whiteley by phone to discuss the status of the claims and left him a voicemail. Kaczmarek had been out of office the previous week.

- Attached hereto as **Exhibit 19** is a true and correct copy of Activity Log Documentation No. 59, dated May 10, 2022.

19.    On May 12, 2022, Whiteley sent a digital message to the claim file to which Kaczmarek responded and advised Whiteley he would follow up once Israel's coverage review was completed.

- Attached hereto as **Exhibit 20** is a true and correct copy of the digital messages within the claim file between Kaczmarek and Whiteley, dated May 12, 2022.

20.    On May 16, 2022, Israel notified Kaczmarek via e-mail it was his recommendation USAA CIC's duty to defend Whiteley in the BCS Complaint had not been triggered under the Homeowners or Umbrella policies. Kaczmarek copied the e-mail Israel sent in its entirety into the claim file Activity Log. Israel attached a ten-page long draft letter to Whiteley, which explained the basis for his recommendations.

- Attached hereto as **Exhibit 21** is a true and correct copy of Activity Log Documentation No. 72, dated May 16, 2022.

- Attached hereto as **Exhibit 22** is a true and correct copy of the draft response letter prepared by Israel and sent to Kaczmarek as an attachment to the May 16, 2022 e-mail.

21.    On May 16, 2022, Kaczmarek called Whiteley to notify him of USAA CIC's coverage determination and summarized the conversation in the Activity Log.

- Attached hereto as **Exhibit 23** is a true and correct copy of Activity Log Documentation No. 74, dated May 16, 2022.

22.    On May 17, 2022, Kaczmarek sent Whiteley and his counsel written correspondence notifying him of USAA CIC's coverage determination, explaining the grounds for the denial of the claims, and attaching Israel's letter.

- Attached hereto as **Exhibit 24** is a true and correct copy of written correspondence sent to Whiteley and his counsel, dated May 17, 2022. For ease of review, Israel's letter is not attached but is set forth hereto as Exhibit 22.

23.    On May 17, 2022, the USAA CIC Member Advocacy Team investigated Whiteley's complaint and called him to discuss. The call was documented within the claim file.

- Attached hereto as **Exhibit 25** is a true and correct copy of Activity Log Documentation No. 77, dated May 17, 2022.

24.    On May 20, 2022, Whiteley spoke with Kaczmarek. Kaczmarek summarized and documented the conversation within the claim file. On May 23, 2022, I called Whiteley to discuss his complaint regarding the handling of the claims, and summarized our conversation within the claim file.

- Attached hereto as **Exhibit 26** is a true and correct copy of Activity Log Documentation Nos. 87-88, dated May 20 and May 27, 2022, regarding the calls with Whiteley.

25.    On September 21, 2023, Whiteley's counsel sent written correspondence to USAA CIC disputing its coverage determination. On the same day, Kaczmarek reviewed the correspondence and sent the same to Holmes. Holmes reviewed the correspondence and instructed Kaczmarek to forward it to Israel for review and determination as to whether the correspondence would change his opinion regarding coverage. Kaczmarek sent the correspondence to Israel and notified Whiteley's counsel of the same.

- Attached hereto as **Exhibit 27** is a true and correct copy of written correspondence from Whiteley's counsel dated September 21, 2023.

- Attached hereto as **Exhibit 28** is a true and correct copy of Activity Log Documentation Nos. 112, 113 and 115, dated September 21-22, 2023.

26.    On November 9, 2023, Kaczmarek received e-mail correspondence from Israel which he copied into USAA CIC's claim file. Israel indicated his review of

Whiteley's counsel's September 21, 2023 letter did not change his opinions. Israel attached a draft responsive letter to Whiteley's counsel setting forth a detailed explanation of his recommendations regarding coverage and his response to the positions set forth by Whiteley's counsel.

- Attached hereto as **Exhibit 29** is a true and correct copy of Activity Log Documentation Nos. 134, dated November 9, 2023.

- Attached hereto as **Exhibit 30** is a true and correct copy of the draft response letter to Whiteley's counsel regarding the September 21, 2023 letter as prepared by Israel and sent to Kaczmarek as an attachment to the November 9, 2023 e-mail.

27.    On November 29, 2023, Kaczmarek sent written correspondence to Whiteley's counsel affirming USAA CIC's coverage determination and copying Israel's draft response letter.

- Attached hereto as **Exhibit 31** is a true and correct copy of written correspondence sent to Whiteley's counsel, dated November 9, 2023.

28.    My team and I reviewed and considered all information submitted to USAA during the handling of the claim.

29.    Throughout my and my team's and USAA CIC's handling of Whiteley's claim, I believe we acted reasonably, fairly, and properly. We remained willing to consider any information, and never acted with any ill will towards Mr. Whiteley. At

**DECLARATION OF BARBARA GONZALEZ ISO MOTION FOR SUMMARY JUDGMENT**
**CASE NO. 2:24-cv-00138-FLA-MAA**

1  no time did we act maliciously or unfairly in connection with the claim. We never

2

3  made any decision or conducted any activity on the claim with any intent to cause

4  harm.

5

6

7         I declare under the penalty of perjury under the laws of the United States of

8  America that the foregoing is true and correct.

9         Executed this 31st day of January 2025, at Virginia Beach, Virginia.

10

11                          */s/Barbara Gonzalez*_____
                          BARBARA GONZALEZ
12                          *Signed with permission*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit "3"

1   Tamany J. Vinson Bentz (CA SBN 258600)
    tamany.bentz@us.dlapiper.com
2   Jonathan D. Kintzele (CA SBN 316482)
    jonathan.kintzele@us.dlapiper.com
3   **DLA PIPER LLP**
    2000 Avenue of the Stars
4   Suite 400 North Tower
    Los Angeles, California 90067-4704
5   Tel:  310.595.3022
    Fax:  310.595.3300
6
    Attorneys for Plaintiff
7   BREAKING CODE SILENCE,
    a California 501(c)(3) nonprofit
8

9              **UNITED STATES DISTRICT COURT**

10            **CENTRAL DISTRICT OF CALIFORNIA**

11

12  BREAKING CODE SILENCE, a          **CASE NO.  2:22-cv-002052**
    California 501(c)(3) nonprofit,
13                                     **COMPLAINT FOR DAMAGES:**

14           Plaintiff,                  1. **Computer Fraud and Abuse Act,
                                            18 U.S.C. § 1030,** *et seq.***;**
15       v.
                                        2. **California's Computer Data
16                                         Access and Fraud Act, Cal. Penal
    KATHERINE MCNAMARA, an                 Code § 502,** *et seq.*
17  individual, JEREMY WHITELEY
    an individual, and DOES 1 through 50,
18  inclusive,

19           Defendants.              **DEMAND FOR JURY TRIAL**

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES

**WHITELEY_CF_132**

0901119cb1463e12

USAA Confidential

**COMPLAINT**

Plaintiff Breaking Code Silence ("BCS"), by and through its undersigned attorneys, brings this suit against Defendants Katherine McNamara and Jeremy Whiteley and alleges as follows:

**INTRODUCTION**

1.      BCS is a California 501(c)(3) nonprofit organization that represents children, youth, and adults who are/were incarcerated in the U.S. troubled teen industry ("TTI"), a network of privately-owned, powerfully punitive, and often wilderness-based therapy programs, residential treatment centers, therapeutic boarding schools, group homes, boot camps, and faith-based academies.

2.      Breaking Code Silence intends to be a vehicle for the TTI-survivor community–ever striving to uplift, organize, and inspire present and future generations, while promoting youth rights and evidence-based alternatives to the troubled teen industry.  BCS cannot do any of these things for the TTI victims or survivors if it cannot communicate with the community and the people, like attorneys, who share in BCS's mission of ending TTI abuses.

3.      Unfortunately, Defendants Katherine McNamara and Jeremy Whiteley, both former BCS board members, are attempting to silence BCS and prevent BCS from communicating with the TTI-survivor community.  In particular, Defendant Katherine McNamara has exhibited a pattern and practice of maliciously accessing materials, social media accounts, third party platform accounts, and a website all belonging to BCS in an attempt to shut down BCS.

4.      This conduct has left BCS with no other choice but to bring this complaint for damages and injunctive relief.

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(a) as those claims are so related

WHITELEY_CF_133

0901119cb1463e12

USAA Confidential

to Plaintiff's federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

6.      This Court has personal jurisdiction over Defendant McNamara because, on information and belief, McNamara is a resident of California, and this lawsuit arises out of McNamara's purposeful and unlawful conduct occurring within the State of California and in this District.

7.      This Court has personal jurisdiction over Defendant Whiteley because this lawsuit arises out of Whiteley's purposeful and unlawful conduct knowingly directed to BCS within the State of California and in this District.  Specifically, this Court has jurisdiction over Whiteley, because, on information and belief, Whiteley, *inter alia*, has engaged in acts of cyber hacking directed to BCS in California and in this District, including but not limited to the unauthorized accessing of servers and networks that, upon information and belief, are located in the County of Los Angeles, and purposefully directed his activities at residents of California and this District. As such, Whiteley's conduct has established that he would reasonably and fairly anticipate being called into court in this District.

8.      Venue is further proper in this District under 28 U.S.C. § 1391(b)(2) because the acts, liabilities, and events claimed in this action arose in and were directed at Plaintiff within this District, in Los Angeles County. Venue is also proper in this district under 28 U.S.C. § 1391(b)(1) because Defendant McNamara resides in this district.

## THE PARTIES

9.      Plaintiff Breaking Code Silence is, and at all times relevant herein was, a 501(c)(3) nonprofit organization formed and existing under the laws of the State of California and having a principal place of business at 1005 E. Las Tunas Dr., #104, San Gabriel, California 91776.  BCS was founded in California by six women in 2019, including Defendant Katherine McNamara, and incorporated as a

WHITELEY_CF_134

0901119cb1463e12

USAA Confidential

1    501(c)(3) nonprofit with the California Secretary of State on March 22, 2021.

2        10.    Defendant McNamara is, and at all times relevant herein was, a U.S.

3    citizen domiciled in California. Defendant McNamara served as a board member

4    and BCS's IT person, which aligned with her professional skills and experience as a

5    cybersecurity systems engineer. Defendant McNamara managed many of BCS's

6    accounts because she helped the organization set up its information technology

7    accounts and maintained the administrative privileges to those accounts. Defendant

8    McNamara voluntarily terminated her relationship with BCS on or around

9    December 9, 2021, after a dispute regarding the direction and professionalism of

10   the organization and concerns over Defendant McNamara's behavior in the

11   survivor community. Defendant McNamara formally resigned, and on information

12   and belief, she is currently operating an identical organization known as

13   Unsilenced. Unsilenced has and continues to use many of the materials developed

14   and written by BCS's employees and volunteers, an issue that BCS was trying to

15   work out amicably with UnSilenced despite ongoing attacks by Defendant

16   McNamara that maliciously targeted online platforms that are critical components

17   of BCS's means of communicating with the TTI-survivor and victim community.

18   However, Defendant McNamara's escalation of these attacks to target the BCS

19   Website has proven continued discussions would be futile.

20       11.    Defendant Whiteley is, and at all times relevant herein was, a U.S.

21   citizen domiciled in Arizona. Defendant Whiteley was also a former BCS board

22   member. He joined the BCS board on or around March 22, 2021 and voluntarily

23   terminated his relationship with BCS on or around June 28, 2021. Mr. Whiteley, in

24   partnership with Ms. McNamara, originally set-up the website infrastructure for

25   BCS to use with its domains. He also set up the hosting account for the BCS

26   website through Cloudways, which he returned to the organization after resigning

27   per the agreement established with all board members.

28

DLA PIPER LLP (US)
LOS ANGELES

-3-

COMPLAINT FOR DAMAGES

WHITELEY_CF_135

0901119cb1463e12

USAA Confidential

12.     BCS does not know the true names or capacities, whether individual, partner or corporate, of the defendants sued herein as DOES 1 through 50, inclusive, and for that reason, said defendants are sued under such fictitious names, and BCS will seek leave to amend this complaint, if necessary, when true names and capacities are known.  BCS is informed and believes and based thereon alleges that each of said fictitious defendants was responsible in some way for the matters alleged herein and proximately caused BCS and members of the general public to be subject to the illegal actions, wrongs, and injuries complained of herein.

13.     Upon information and belief, each of the Defendants was the agent, principal, employee, representative, or alter ego of the other Defendants and/or acted with one or more of the other Defendants' knowledge, consent and approval, and acted within the course and scope of their agency or representative capacity. As such, each of the Defendants is responsible for the actions of the other Defendants, as alleged herein.

14.     Upon information and belief, at all times pertinent hereto, each of the Defendants was an aider, abettor, or co-conspirator of each of the other Defendants. Each of the Defendants acted within the course and scope of such conspiracy or in the course and scope of a common plan and scheme described below; and each of the Defendants was in some manner responsible for the acts and omissions alleged in these causes of action.  Upon information and belief, each of the Defendants has ratified and/or approved each of the acts and omissions of each of the other Defendants.

15.     Upon information and belief, in taking the actions described in this complaint, Defendants acted intentionally, in concert, and pursuant to an agreement between and among them, the purpose of which was to obtain and convert secret, confidential, and proprietary information, documents, data, work product, business opportunities, business relationships, and other property belonging to BCS, to use

COMPLAINT FOR DAMAGES

DLA PIPER LLP (US)
LOS ANGELES

WHITELEY_CF_136

0901119cb1463e12

USAA Confidential

such property for their own benefit and for their own competitive advantage, and to deprive BCS of the use of such property in its business.  Upon information and belief, each of these Defendants knew of and agreed to both the objective and course of action to deprive BCS of such property and to cause injury to BCS.  The wrongful acts and damage caused to BCS as a result of Defendants' conduct are set forth in detail below.

## FACTUAL BACKGROUND

16.    Six women, including Defendant McNamara, founded BCS. Plaintiff's mission is to prevent institutional child abuse and empower survivors to promote positive social change through self-advocacy.  Accomplishing this mission depends principally on BCS's ability to contact, engage, and mobilize the survivor community by using its company assets, including its contact and donor lists, and repository of confidential client information contained in BCS's databases.

17.    In 2019, the founding members of BCS started setting up various social media accounts and registered the domain name <breakingcodesilence.net>. At all times this work was done on behalf of BCS and not for the individuals' benefit.  This work continued on behalf of the organization into 2020, at which time Defendant McNamara registered the domain <breakingcodesilence.org> for the organization.

18.    Defendant McNamara was requested to secure the registration of the <.org> domain, and she acquired and paid for the domain on March 11, 2020. In March 2021, BCS launched the URL <breakingcodesilence.org>  to correspond with the signing of Utah SB 127, which was based on the model legislation created while participating in the RISE Justice Labs program. Another founding board member secured and paid for hosting services for the website in March 2021.

19.    Communicating via its website and social media accounts is critical to BCS's ability to serve its community.  BCS's charitable operations are virtually all

WHITELEY_CF_137

0901119cb1463e12

USAA Confidential

online, including, but not limited to, advertising, communications, marketing, and donation transactions, are conducted exclusively online using a variety of software programs and social media accounts, including, but not limited to, Google, which hosts the email address info@breakingcodesilence.org; Google/Adwords; PayPal; Zotero; Hootsuite; Twitter; TikTok; Youtube; Instagram/Facebook; Slack; and the use of BCS's compiled mailing lists of just under 1,000 individuals.

20. In September 2020, the six original founders of BCS jointly filed for a federal trademark registration for BREAKING CODE SILENCE. This application has not been granted and, since the original filing, some of the original founders have filed competing applications, none of which have been granted.

21. On March 22, 2021, BCS was formally incorporated as a 501(c)(3) nonprofit organization in California.

22. On April 6, 2021, Josh Scarpuzzi, creator of the memoir book *Breaking Code Silence* and owner of the domain <breakingcodesilence.com> and the breakingcodesilence Facebook page, assigned his rights to the domain name and Facebook page to BCS.

23. A few months after BCS was incorporated, Defendant McNamara submitted reimbursement requests for several items, including certain costs associated with the <breakingcodesilence.org> domain and email accounts. By submitting her costs for reimbursement, she reiterated that these accounts were not her personal assets but instead for the benefit of BCS. BCS for its part agreed to reimburse Defendant McNamara when it was "fully funded." This was the same agreement finalized with each of the three other board members who provided funds toward the organization's initial establishment and growth, none of whom have been reimbursed yet, as the organization is not fully funded.

24. In addition to the domain name and social media accounts, it was BCS's understanding that it owned any and all credentials, passwords, and login

WHITELEY_CF_138

USAA Confidential

0901119cb1463e12

information for the same properties, and any and all credentials, passwords, and login information associated with its free access, use, and control of its website, online platforms, and social media accounts.

### Defendant Whiteley Resigns From BCS

25.     In June 2021, Defendant Whiteley voluntarily resigned from BCS's board of directors.

26.     Within weeks, Defendant McNamara (who was still on the BCS board) demanded that Defendant Whiteley turn over any administration credentials or information he had relating to BCS's domain and social media accounts. Specifically, Defendant McNamara stated, in writing, that any accounts Defendant Whiteley had created for BCS's use were for the benefit of BCS and belonged to BCS.

### Defendant McNamara Resigns From BCS

27.     Beginning in the fall of 2021, Defendant McNamara started creating tension on BCS's board and began regularly spreading gossip and slanderous lies about fellow board members among volunteers and in the survivor community. The parties engaged in a conflict resolution process with a consultant.  The conflict resolution process was unsuccessful in large part because Defendant McNamara would not accept the consultant's proposal that she step down from the board.

28.     On December 9, 2021, Defendant McNamara voluntarily resigned from BCS's board.

29.     However, after resigning from BCS's board, Defendant McNamara continued to undermine BCS's mission to assist the TTI-survivor and victim community.

30.     On or around December 10, 2021, McNamara conspired with other volunteers and employees of BCS, including Mary "Meg" Appelgate (neé Gochnauer) and Caroline (Cole) Lorson, to download BCS's files and confidential

WHITELEY_CF_139

0901119cb1463e12

USAA Confidential

data, including an entire Google Drive, without BCS's authority or permission, and in specific instances, even tamper with, destroy, and deny access to portions of BCS data from such Google Drive, including but not limited to the permanent theft of the entire Legislative Google Drive folder and all documents in its contents, the majority of which BCS did not and does not have copies of anymore.

31.     Other files stolen by McNamara, Appelgate, Cole, and others they coerced, many of which they also attempted to permanently delete, were inaccessible to BCS for up to 25 days before BCS personnel were successfully able to manually override the deletion request and recover the data.

32.     Once Defendant McNamara was satisfied that she had gutted the entirety of BCS's electronically stored information, she encouraged additional volunteers and board members to leave BCS under false pretenses.

**Defendants Form Unsilenced and Begin Withholding Access to BCS Accounts**

33.     Sometime after December 2021, Defendant McNamara and former BCS volunteers, formed UnSilenced, a nonprofit corporation that purports to serve the same survivor community as BCS, and seeks to achieve the identical objectives as BCS.  It is clear that stealing BCS's electronic materials was intended to allow Defendant McNamara to avoid the cost, time, and risk of building a competing nonprofit from scratch and to appropriate the years of goodwill built by the BCS name and brand.

34.     Defendant McNamara also started accessing BCS's critical social media accounts without authorization and changing passwords so BCS can no longer control the accounts.  For instance, on January 9, 2022, upon information and belief, Defendant McNamara maliciously gained access to @BreakingCodeSi1, the Twitter account used by BCS to communicate with survivors, victims currently suffering from abuse, and attorneys and other advocates trying to help victims.  Upon information and belief, Defendant McNamara changed the name of the

0901119cb1463e12

USAA Confidential

Twitter account to "Go-ACCA" before deleting the account in its entirety. She then secured a new Twitter account under the now available handle "breakingcodesi1" and described it as "Just Another Twitter Account". Defendant McNamara's actions denied BCS not only access to the account but also the benefit of years of connections and communications with the community.

35.    Defendant McNamara also refused to return her administrative credentials to BCS's YouTube channel and actively denied them access to the account. While Defendant McNamara represented to BCS that she did not have administrative privileges on this account, the administrative information available from YouTube listed Defendant McNamara as the "Primary Account Owner" of the BCS YouTube account. The account was also registered to her personal email address "iristheangel@gmail.com." Defendant McNamara finally returned only this one account to BCS, but only after multiple requests by BCS. On or around January 9, 2021, and again on January 28, 2021 BCS requested that Defendant McNamara return their administrative credentials for the BCS TikTok account. Defendant McNamara represented to BCS that she had no control over the account because it belongs to BCS and was registered to Defendant McNamara's BCS email account ("kmcnamara@breakingcodesilence.org"). Defendant McNamara's representation was again false, as the TikTok account is not registered to her BCS email account, but on information and belief, Defendant McNamara maintains control over BCS's TikTok account and freely has access to its followers under the guise that UnSilenced is related to BCS.

### Defendants Escalate McNamara's Conduct and Hack Into BCS's Website

36.    On or around March 10, 2022, using Defendant Whiteley's former administrative credentials, both Defendants exercised an extreme act and maliciously accessed BCS's account with Google via the Google Search Console and possibly the back end of BCS's Website (which includes both the

0901119cb1463e12

USAA Confidential

1   www.breakingcodesilence.org  and www.breakingcodesilence.com domains)

2   without permission or authorization from BCS and caused the website to be

3   deindexed on Google.  The effect of being deindexed is that no one could find

4   BCS's Website on the largest search engine.[1]

5       37.    The timing of the deindexing was critical.  Earlier that day BCS had

6   been featured on the TV show *The Doctors* and expected a rise in website traffic.

7   In addition, around this same time, Lifetime was promoting a made-for-TV film

8   based on the true stories of two TTI survivors, which was scheduled to debut on

9   March 12 and highlighted BCS's work on the TTI-survivor and victim

10  communities.  Defendants' conduct prevented BCS from being able to promote the

11  documentary, as Lifetime expected, and blocked the distribution of its message to

12  people who viewed the documentary and tried to look up their website.

13      38.    From the date of Defendants' deindexing, Google Analytics reports

14  for the website reflect a significant and dramatic drop in traffic. The deindexing of

15  the BCS website blocked its primary and largest source of traffic, organic searches,

16  cutting off the website's main source of exposure. For example, as a result of the

17  deindexing requests from Defendants, the Google Search Console for the BCS

18  website shows zero user traffic for the dates of March 10 and March 11, 2022, the

19  same or nearly the same days of the *The Doctors'* feature piece and right before the

20  Lifetime documentary promoting BCS to nation-wide audiences. On information

21  and belief, these temporary deindexing requests last up to 6 months.

22      39.    Concurrently with successfully deindexing the BCS website,

23  Defendants repeatedly, relentlessly, and maliciously attempted to remove and/or

24  gain control of the BCS Website and corresponding Google Webmaster Central

25  permissions on the day of the March 12, 2022, Lifetime documentary premiere.

26

27  _____

[1] BCS only knew its website had been deindexed by accident.  One of its current

28  board members was making changes to the site and wanted to see how the changes
    were reflected in a Google search.  When she searched, she could not find the site.

DLA PIPER LLP (US)
LOS ANGELES

-10-

WHITELEY_CF_142

0901119cb1463e12

USAA Confidential

40.     BCS immediately engaged forensic data privacy experts to look into these issues.  These experts found a malicious tag attached to the BCS website, which allowed Defendants to wrongfully claim ownership of the site and deindex it. These experts were able to gain access to Google Search Console and could see three requests to deindex the website had been made – two on March 8 and one on March 9.

41.     The experts then accessed the website's WordPress account to manage the administrative privileges and were able to remove the tag, but they noticed a deeper problem. There was a malicious TXT record on the DNS entry that was controlled by Defendant McNamara.  This prevents BCS from being able to permanently stop the intrusion to its Google account.

42.     After a few days of this, Defendant McNamara escalated yet again and began alternating between requesting that Defendant Whiteley be given administrative privileges using a <medtexter.com> email account and then requesting that access be granted to two <Whitehouse.gov> email accounts: president@whitehouse.gov and comments@whitehouse.gov. The forensic experts conveyed concerns that, given Defendant McNamara's information security expertise, including accounts belonging to the federal government was an indicator that she was intentionally attempting to sabotage the account.  The experts further realized that removing the malicious tag was not enough to prevent the hacking – Defendants actually maintained administrative privileges to the site and were possibly accessing the back-end of the site without BCS's knowledge or permission.

43.     In addition to Defendants' causing the BCS website to be deindexed, they have attempted or succeeded at changing the content of the website. They also have the capacity to change the Google AdWords associated with the account, as shown by the Defendants' previous engagement in hacking actions and by, but not

WHITELEY_CF_143

USAA Confidential

0901119cb1463e12

limited to, Defendant McNamara's unauthorized access of the BCS AdWords account in January 2021.

44.     There is no means by which BCS can prevent Defendants from accessing and controlling their website.  Given Defendant McNamara's erratic and escalating harassment of BCS and attempts to interrupt its ability to service the TTI-survivor and victim community, BCS is concerned it will suffer further damage without injunctive relief from the Court.

45.     In some cases, the harm caused by Defendants is irreparable, e.g., the breach of the trust of the public sought to be served by BCS, the unknown extent to which they have reviewed and destroyed BCS confidential information, emails, intellectual properties, and other files, and damaged relationships after Defendant McNamara and her colleagues at UnSilenced made defamatory statements to valued partners, resulting in strained and, in some cases, terminated valued relationships.  In this lawsuit, BCS seeks an injunction to regain control of its digital assets and properties, as well as to recover damages, including statutory damages and penalties, resulting from Defendants' intentional, wrongful, and unlawful conduct.

46.     BCS's ability to communicate with, educate, and convey information to the survivor community is the lifeblood of the organization's operations and its service to the public.  Preventing BCS from being able to do so poses a severe and malicious threat to public health and well-being, particularly to the uniquely vulnerable persons that BCS was formed to serve and help where no other such organization existed. Defendants have acted intentionally, and with wanton and reckless disregard for the members of the public that their conduct has and continues to harm, by commandeering BCS's communications tools and ability to convey information across all of its core online channels.

WHITELEY_CF_144

USAA Confidential

0901119cb1463e12

47.     As a direct and proximate result of Defendants' wrongful conduct, BCS has suffered extensive damages in excess of $5,000 and in an amount to be proven at trial. Such damages include the expenses associated with investigating Defendants' wrongful conduct and engaging forensic experts, lost business opportunities and monetary donations, and disclosure of misleading information to the public.

48.     BCS also seeks recovery for lost goodwill as a result of Defendant's dissemination of false information by impersonating BCS. Defendants have also greatly and unjustly enriched themselves using BCS's social media accounts and proprietary information at BCS's expense.

49.     BCS demands immediate injunctive relief requiring Defendants to immediately return all BCS credentials, passwords, and login information, as well as any and all of BCS's proprietary information in Defendants' possession, custody, and control.

50.     BCS further demands the right to inspect McNamara's personal computer and cloud based personal accounts to determine with whom and to what extent she has shared BCS's proprietary and sensitive information.

**FIRST CAUSE OF ACTION**
**Violation of the Computer Fraud & Abuse Act (18 U.S.C. § 1030 et seq.)**
**(Against All Defendants)**

51.     BCS incorporates the preceding allegations as if fully set forth herein.

52.     At all relevant times herein, BCS's computer system or systems constituted a "protected computer" within the meaning of 18 U.S.C. § 1030(e)(2), in that they were used in or affecting interstate or foreign commerce or communication, and each company that BCS has an account with, including but not limited to the Google accounts, BCS Website and social media accounts, maintains a network of computers and servers that store all information and data related to the

WHITELEY_CF_145

0901119cb1463e12

USAA Confidential

BCS account and allows BCS to engage in interstate and foreign commerce and communication.

53.    At all relevant times herein, BCS maintained a policy, which prohibits, among other things, accessing data, a server, a network or an account for any purpose other than conducting approved BCS business; revealing BCS system passwords to others or allowing use of the individual's account by others; circumventing user authentication or security; providing information about, or lists of, BCS users to parties outside BCS; and effecting security breaches or disruptions of BCS system resources, including but not limited to accessing data of which the individual is not an intended recipient or logging into a server or account that the individual is not expressly authorized to access.

54.    Through Defendant McNamara's pattern and practice of repeatedly denying to BCS, including its owners and personnel, access to BCS's accounts including, but not limited to: Slack; Google Drive; Hootsuite; Zotero; Twitter; TikTok; YouTube; Instagram/Facebook; and the BCS Website, she intentionally accessed and used protected computers without authorization, or in excess of its authority, in violation of 18 U.S.C. §§ 1030 (a)(2)(C) and 1030 (a)(5)(c).

55.    Defendant McNamara also violated the CFAA by intentionally accessing a computer used for interstate commerce or communication without authorization or by exceeding authorized access to such a computer, and by obtaining information from such a computer, including but not limited to, (1) accessing BCS's electronic systems and the information contained therein, including without limitation its proprietary, sensitive, and confidential information; and (3) accessing BCS's internet/intranet/extranet-related systems, including without limitation the social media accounts, Google accounts, and BCS Website.

56.    Defendant Whiteley violated the CFAA by intentionally accessing a computer used for interstate commerce or communication without authorization or

WHITELEY_CF_146

0901119cb1463e12

USAA Confidential

by exceeding authorized access to such a computer, and by obtaining information from such a computer, including but not limited to, accessing BCS's Google accounts to cause the website to be deindexed.

57.     During the period between at least March 8, 2022 and today, access to BCS's Website, information, and data was interrupted by Defendants, and they have refused to return the company's access and control of its online properties back to BCS.

58.     During the period between December 2021 and today, access to BCS's social media accounts was interrupted by Defendant McNamara as she refused to return the company's access and control back to BCS.  All of these accounts are still inaccessible to BCS (other than the YouTube account that Ms. McNamara returned in February 2022).

59.     Defendants' continued interruption of service and ongoing denial of BCS's owners and personnel access to the BCS website and the social media accounts have caused and continue to cause damage to BCS, and has caused BCS to suffer losses in excess of $5,000, and Defendants did so by intentionally accessing and using protected computers to obtain information from a protected computer without authorization, or in excess of its authority, in violation of 18 U.S.C. §§ 1030 (a)(2)(c).

60.     BCS has suffered and will continue to suffer immediate and irreparable harm, including but not limited to impairment of data damage caused by Defendants' extended period of exclusive control over BCS's online accounts, investigation and recovery losses involved in hours of past and continued efforts to secure the restoration of BCS and its data and information, as well as the time and services expended to conduct damage assessments and use forensic experts to investigate Defendants' CFAA and CDFA violations, and interruption of services and losses resulting from the loss of control and deindexing of the BCS Website.

WHITELEY_CF_147

0901119cb1463e12

USAA Confidential

BCS will continue to suffer such harm until Defendants' access to its property, accounts, and networks are preliminarily and permanently enjoined, and BCS's full and unlimited access is restored.

61.     As a proximate result of Defendants' conduct, BCS has suffered, and will continue to suffer, actual damages, and Defendants will be unjustly enriched, in amounts to be proven at trial.

62.     The acts of Defendants were intentional, malicious, and in bad faith and have subjected and will continue to subject BCS to cruel and unjust hardship in conscious disregard of BCS's rights, so as to justify an award of exemplary and punitive damages.

## SECOND CAUSE OF ACTION

### Violation of California Penal Code § 502
### (Against All Defendants)

63.     BCS incorporates the preceding allegations as if fully set forth herein.

64.     At all times relevant herein, BCS owned the computer systems, computer network, computer data, and computer security credentials and login information used without permission or authorization by Defendants in the course of the conduct at issue.

65.     Defendants have violated California Penal Code § 502 by knowingly accessing, copying, using, making use of, interfering, and/or altering data belonging to BCS: (1) in and from the State of California; (2) in the home state of BCS; and upon information and belief (3) in the state in which the servers that provided the communication link between BCS and its social media accounts, Google accounts, and Website are located.

66.     Through Defendant McNamara's pattern and practice of repeatedly denying BCS access to its accounts, including, but not limited to: Hootsuite; Twitter; TikTok; YouTube; Instagram/Facebook; Zotero; Slack; Google; and the BCS Website, as well as the continued denial to the owners and personnel of BCS,

WHITELEY_CF_148

0901119cb1463e12

USAA Confidential

she has intentionally accessed and used protected computers without permission to alter, damage, delete, destroy, or otherwise use any data, computer, computer system, or computer network belonging to or licensed to BCS in order to wrongfully control or obtain money, property, or data, in violation of California Penal Code §§ 502(c)(1).

67.    Through Defendant McNamara's pattern and practice of repeatedly denying BCS access to its accounts after December 2021, including, but not limited to: Google; Hootsuite; Twitter; TikTok; YouTube; Instagram/Facebook; Zotero; Slack; and the BCS website, as well as the continued denial to the owners and personnel of BCS, she has intentionally accessed and used protected computers without permission to take, copy, or otherwise use any data, computer, computer system, or computer network of belonging to or licensed to BCS, in violation of California Penal Code §§ 502 (c)(2).

68.    Defendants have intentionally accessed and used without permission to use or cause to be used computer services belonging to or licensed to BCS, in violation of California Penal Code §§ 502 (c)(3).  Defendant McNamara violated California Penal Code §§ 502 (c)(3) when she accessed and altered BCS's social media accounts, other online accounts, and the BCS Website.  Defendant Whiteley violated California Penal Code §§ 502 (c)(3) when he accessed BCS's Website without permission and caused it to be deindexed.

69.    Defendants have intentionally accessed and used protected computer services without permission to alter, damage, delete, destroy, or otherwise use any data, computer, computer system, or computer network which resides or exists internal or external to a computer, computer system, or computer network belonging to or licensed to BCS, in violation of California Penal Code §§ 502 (c)(4).  Defendant McNamara violated California Penal Code §§ 502 (c)(4) when she accessed and altered BCS's social media accounts, other online accounts, and

WHITELEY_CF_149

0901119cb1463e12

USAA Confidential

1   the BCS Website.  Defendant Whiteley violated California Penal Code §§ 502

2   (c)(4) when he accessed BCS's Website without permission and caused it to be

3   deindexed.

4          70.    Defendants have intentionally and without permission, disrupted or

5   caused the disruption of computer services and/or denied or caused the denial of

6   computer services to the authorized users of BCS's computer, computer systems, or

7   computer networks, including the owners of BCS, in violation of California Penal

8   Code §§ 502 (c)(5).  Defendant McNamara violated California Penal Code §§ 502

9   (c)(5) when she accessed and altered BCS's social media accounts, other online

10  accounts, and the BCS Website.  Defendant Whiteley violated California Penal

11  Code §§ 502 (c)(5) when he accessed BCS's Website without permission and

12  caused it to be deindexed.

13         71.    Defendants have intentionally accessed a computer, computer system,

14  or computer network of BCS, in violation of California Penal Code §§ 502 (c)(7).

15  Defendant McNamara violated California Penal Code §§ 502 (c)(7) when she

16  accessed and altered BCS's social media accounts, other online accounts, and the

17  BCS Website.  Defendant Whiteley violated California Penal Code §§ 502 (c)(7)

18  when he accessed BCS's Website without permission and caused it to be

19  deindexed.

20         72.    During the period between December 2021 and today, access to BCS's

21  information and data by BCS and its owners was interrupted by Defendants as they

22  refused to return the company property back to its owners.  By locking BCS out of

23  its accounts and deindexing the BCS Website, Defendants created an interruption of

24  service, preventing BCS from accessing or using the accounts as well as the data

25  and information contained therein and blocking search traffic to its website.

26  Defendants' actions caused BCS's data and programs to be not readily obtainable to

27  it, and Defendants continue to refuse to return such access to BCS.

28

WHITELEY_CF_150

0901119cb1463e12

USAA Confidential

73.    During this period of service interruption, BCS suffered losses of revenue and donations as well as costs incurred and other consequential damages as a result of Defendants' refusal to return the organization's control of its online properties. Lost revenues include unrealized revenues, such as those lost revenues BCS suffered beginning in March of 2022, because Defendants intentionally shut off all search traffic to BCS's website at the same time as BCS's multiple high-profile public relations and television events, as described herein.  Because BCS's website was deindexed, BCS could not interact with or reach its community, intake donor contributions through its online payment portals, generate new followers for its online accounts, or otherwise operate whatsoever, and as a result, BCS lost thousands of dollars in donations, revenues, and in potential future growth of the same due to the Defendants' unauthorized commandeering of BCS's network and computer service platforms.

74.    At all times relevant herein, BCS owned the computer systems, computer networks, and data at issue.

75.    Defendants' unauthorized access to BCS's computer systems and data was not carried out within the course and scope of their employment with BCS, and Defendants were not accessing the electronic files in order to perform acts that were reasonably necessary to their performance of work assignments for BCS.

76.    Defendants did the acts and things herein alleged pursuant to, and in furtherance of, the above alleged misconduct aimed at harming BCS and permanently damaging BCS's reputation and goodwill with the public, as well as with the intention of causing BCS monetary losses by way of this same conduct.

77.    Defendants' conduct was willful and malicious, performed with the intent to do harm.  Therefore, under Penal Code Section 502(e)(4), BCS is entitled to an award of punitive and exemplary damages.

WHITELEY_CF_151

0901119cb1463e12

USAA Confidential

78.     As outlined in the foregoing paragraphs, BCS has been damaged as a result of Defendants' violations of Section 502, in an amount to be proven at trial, including but not limited to the costs of the time and expense of recovering the company and determining the damage caused by Defendants.

79.     Defendants have been unjustly enriched as a result of their violations of Section 502, in an amount to be proven at trial.

80.     Under Penal Code Section 502, BCS is entitled to an award of damages against Defendants for injuries suffered to date by Defendants' unlawful access, as well as equitable relief or restitution, and BCS is entitled to a permanent injunction against Defendants, enjoining the ongoing conduct and restoring the accounts and returning all account credentials referenced herein to BCS.

81.     As a direct and proximate result of Defendants' unlawful conduct within the meaning of California Penal Code § 502, Defendants have caused loss to BCS in an amount to be proven at trial and discovery is ongoing. BCS is also entitled to recover its reasonable attorneys' fees pursuant to California Penal Code § 502(e).

## **PRAYER FOR RELIEF**

WHEREFORE, BCS prays for judgment and relief against Defendants as follows:

1.     For judgment in favor of BCS and against Defendants on all causes of action in the Complaint;

2.     For an Order directing Defendants to return all of BCS's information, credentials, and property in their possession, custody, or control;

3.     For Orders temporarily, preliminarily, and permanently enjoining Defendants and all persons or entities acting in concert with them, from directly or indirectly:

(a)     obtaining, using, or disclosing any of the company data, including

DLA PIPER LLP (US)
LOS ANGELES

-20-
COMPLAINT FOR DAMAGES

WHITELEY_CF_152

USAA Confidential

0901119cb1463e12

any and all sensitive confidential and proprietary information, and any and all donor contact information, belonging to BCS for any purpose whatsoever;

(b) accessing, retrieving, copying, deleting, destroying, altering, or disseminating any hard or electronic copies of documents containing BCS's confidential and proprietary information; and

(c) using, on their own behalf or on behalf of Defendants, or providing Defendants' or their employees, or any other third party, with BCS donor-specific or employee-specific information, not independently readily available to Defendants' personnel, in order to enable them to solicit BCS's donors, or potential donors, including but not limited to any information downloaded from BCS's computers, networks, or online accounts, which have been subsequently uploaded to Defendants' computers, networks, or online accounts.

4.      For an order to inspect Defendants' personal and/or business computer systems to determine where and to whom BCS's proprietary and confidential information has been disseminated;

5.      For three times the amount of actual damages, including lost income, according to proof, as set forth herein, in an amount in excess of the jurisdictional requirements;

6.      For restitution and disgorgement of all ill-gotten gains as set forth herein, in an amount to be proven at trial, but at least in excess of the jurisdictional requirements;

7.      For punitive and exemplary damages, according to proof at trial, for all causes of action for which such damages are authorized;

8.      For reasonable attorneys' fees and costs incurred herein,

DLA PIPER LLP (US)
LOS ANGELES

-21-
COMPLAINT FOR DAMAGES

WHITELEY_CF_153

0901119cb1463e12

USAA Confidential

9. For prejudgment and post-judgment interest at the maximum legal rate, as provided by California law, as applicable, as an element of damages which BCS has suffered as a result of Defendants' wrongful and unlawful acts; and

10. For any other and further relief that the Court may deem just and proper.

## JURY DEMAND

Plaintiff BCS demands a trial by jury.

Dated:  March 28, 2022  **DLA PIPER LLP (US)**

By: /s/ Tamany J. Vinson Bentz

TAMANY J. VINSON BENTZ
JONATHAN D. KINTZELE

Attorneys for Plaintiff
BREAKING CODE SILENCE

DLA PIPER LLP (US)
LOS ANGELES

-22-

WHITELEY_CF_154

0901119cb1463e12

USAA Confidential

# Exhibit "4"

# ⊗ MR. JEREMY WHITELEY # 777 83 75 L/R # 29 DOL: 03/10/2022



 **USAA   April 21, 2022 at 3:49 p.m. CT**   View Conversation

We received your property claim. We'll contact you soon to discuss your claim and coverage. Check Claim Status for more information and next steps.

 **Jeremy Whiteley   April 21, 2022 at 3:50 p.m. CT**   View Conversation

Copy of the frivolous lawsuit. There is no truth to this. Should be protected under my homeowners and umbrella policy.



_Dkt_2__C...PDF
(9.99 MB)

# Exhibit "5"

**April 22, 2022 at 10:30 a.m.**   66822 - John Kaczmarek        Documentation Number
**CT**                                                                                       5

New Assignment Received

FNOL Details : ILR for lawsuit

COVERAGES
Policy : 90A
Form : HO-6R(02)
Edition : 07-08
Base state : AZ
Deductible : $1,000
Limits : DWG $122,000
UPP $20,500
LOU $8,200
PD $1,000,000
Inception Date : 9/1/17
Prior Inspection Report : N/A
Loss History : favorable

Action :
ni provided a copy of the lawsuit via ccom
Plaintiff : Breaking Code Silence (BCS)
Complaint
1. Computer Fraud and Abuse Act
2. California's Computer Data Access and Fraud Act

lawsuit claims Jeremy Whiteley and 2nd defendant Katherine McNamara (who
were both prior board members with BCS), attempted to prevent
communication between BCS and U.S. troubled teen industry (TTI). The
suit claims Katherine McNamara maliciously accessed social media
accounts, third party platform accounts and websites belonging to BCS
and that the ni has engaged in cyber hacking directed to BCS, including
but not limited to the unauthorized access of servers and networks.

covg rvw
HO-6R(02) (07-08)
Page 21 of 30
SECTION II - LIABILITY COVERAGES
COVERAGE E - Personal Liability
If a claim is made or a suit is brought against any "insured" for
"damages" because of "bodily injury" or "property damage" caused by an
"occurrence" to which this coverage applies, we will:

2. Provide a defense at our expense by counsel of our choice, even if
the suit is groundless, false or fraudulent. We may investigate and
settle any claim or suit that we decide is appropriate. Our duty to
settle or defend ends when the amount we pay for "damages" resulting

**Available Actions**

Claims Documentation

Start New Conversation

Refresh Page

Close Page

WHITELEY_CF_002

from the "occurrence" equals our limit of liability.

This coverage does not provide defense to any "insured" for criminal prosecution or proceedings.

We will not pay for punitive damages or exemplary damages, fines or penalties.

File Pends :
-contact ni to disc loss details
-send legal resolve

**Available Actions**

Claims Documentation

WHITELEY_CF_003

# Exhibit "6"

**CT**  **April 22, 2022 at 11:56 a.m.**  66822 - John Kaczmarek        Documentation Number 12

```
obc to ni to disc loss details
ni states he rcvd the lawsuit yesterday
ni states that he never accessed any of the servers that the plaintiff
is accusing him of
Breaking Code Silence does not own the domain, it is owned by another
company
ni stats that he used to be on the board and that he
left last June due to discrimination and harassment by the CEO
ni claims the CEO was making remarks and comments behind ni's back that
he found out about
in his resignation letter ni states that he included the the reason he
was leaving was due to harassment from the CEO
ni believes the he is included in the suit because of this and that the
CEO is retaliating against him
ni states that Katherine owns the domain name
ni set up a webserver last spring for BCS and placed a google analytics
tag on the website which he gave to BCS
ni has reached out to an atty for legal guidance and representation

advsd ni that based on the suit and the wording of the policy, there
does not appear to be coverage for the loss or legal representation as
the loss does not meet the definition of an occurrence under the policy

ni inq about covg under the umbrella policy
explained umbrella policy carries the same covgs as a HO policy

advsd ni that I will need to have a legal resolve completed and once
complete, I will advise of outcome of our covg rvw
```

**WHITELEY_CF_004**

# Exhibit "7"

 **Jeremy Whiteley**  **April 22, 2022 at 12:25 p.m. CT**    View Conversation

The policy says Personal Injury means: Malicious prosecution, wrongful eviction, wrongful entry, libel, slander and defamation of character. The definition of Malicious prosecution is: Malicious prosecution occurs when one party has knowingly and with malicious intent initiated baseless litigation against another party. This frivolous lawsuit clearly mets that criteria. Also I am covered because I was a board member of a charitable organization.

# Exhibit "8"

 **April 22, 2022 at 12:45 p.m.**  66822 - John Kaczmarek                    Documentation Number
**CT**                                                                                      14

Resolve Legal Question

Date reported to USAA: 04/21/2022
Policy Type/Endorsements: HOM
Policy Base State: AZ
Occurrence State: AZ
Suit filed? Yes
If yes, in what state? CA
Reservation of Rights or Non-Waiver in file? NO
Applicable Policy Language: If a claim is made or a suit is brought
against any "insured" for "damages" because of "bodily injury" or
"property damage" caused by an "occurrence" to which this coverage
applies, we will
2. Provide a defense at our expense by counsel of our choice, even if
the suit is groundless, false or fraudulent.
This coverage does not provide defense to any "insured" for criminal
prosecution or proceedings
Legal Question: The insured has been named in a lawsuit that claims he
has been involved in cyber hacking. The accusations against the insured

**WHITELEY_CF_005**

do not meet the definition of an occurrence under the HO-6R(02) policy
as there is no physical damage being claimed. Would the policy provide
legal representation for this type of loss?

What is your recommendation? Based on the accusations against the
insured not meeting the policy definition of an occurrence, there would
be no legal representation provided.

Is this a mandatory referral? No

If mandatory, on what basis?

If not mandatory, is issue addressed in KD? No

If no, referral reason? To verify if coverage would apply for legal
representation before sending claim to litigation for handling.

Manager recommendation:

Director recommendation:

Legal recommendation:

**Available Actions**

Claims Documentation

Start New Conversation

Refresh Page

# Exhibit "9"



**April 22, 2022 at 3:59 p.m.**   F2764 - Kathryn Mashaw            Documentation Number 17

CT

Resolve Legal Question

Date reported to USAA: 04/21/2022
Policy Type/Endorsements: HOM
Policy Base State: AZ
Occurrence State: AZ
Suit filed? Yes
If yes, in what state? CA
Reservation of Rights or Non-Waiver in file? NO
Applicable Policy Language: If a claim is made or a suit is
brought against any "insured" for "damages" because of
"bodily injury" or "property damage" caused by an
"occurrence" to which this coverage applies, we will
2. Provide a defense at our expense by counsel of our choice,
even if the suit is groundless, false or fraudulent.
This coverage does not provide defense to any "insured" for
criminal prosecution or proceedings
Legal Question: The insured has been named in a lawsuit that

**WHITELEY_CF_006**

claims he has been involved in cyber hacking. The accusations against the insured do not meet the definition of an occurrence under the HO-6R(O2) policy as there is no physical damage being claimed. Would the policy provide legal representation for this type of loss?

What is your recommendation? Based on the accusations against the insured not meeting the policy definition of an occurrence, there would be no legal representation provided.

Is this a mandatory referral? No

If mandatory, on what basis?

If not mandatory, is issue addressed in KD? No

If no, referral reason? To verify if coverage would apply for legal representation before sending claim to litigation for handling.

Manager recommendation: Agree w/ FH recommendation. accusations do not meet defnition of occurrence and no property damage present. defering to dco

Director recommendation:

Legal recommendation:

**Available Actions**

Claims Documentation

Start New Conversation

Refresh Page

Close Page

# Exhibit "10"


**CT**  **April 23, 2022 at 9:09 a.m.**  38623 - Barbara Gonzalez    Documentation Number 19

DCO review for duty to defend
ni being sued by plaitiff regarding actions related to a board

POL: AZ HO6R 02 07-08 $1M limits
NI is being accused of inappropriately accessing servers for Breaking
COde Silence and trying to prevent BCS from communicating with the TTI
Victims

CASE
SERVED
ANSWER DUE
COUNTS
1 Violation of Computer Fraid and ABuse Act
2 Violation of CA Penal Code
Prayer for Relief

DCO review does not find any allegations or actions that would meet the
def of BI or PD under the policy and therefore does not see a duty to
defend
DCO authorized further review by OSC

Resolve Legal Question

Date reported to USAA: 04/21/2022
Policy Type/Endorsements: HOM
Policy Base State: AZ
Occurrence State: AZ
Suit filed? Yes
If yes, in what state? CA
Reservation of Rights or Non-Waiver in file? NO
Applicable Policy Language: If a claim is made or a suit is
brought against any "insured" for "damages" because of
"bodily injury" or "property damage" caused by an
"occurrence" to which this coverage applies, we will
2. Provide a defense at our expense by counsel of our choice,
even if the suit is groundless, false or fraudulent.
This coverage does not provide defense to any "insured" for
criminal prosecution or proceedings
Legal Question: The insured has been named in a lawsuit that
claims he has been involved in cyber hacking. The accusations
against the insured do not meet the definition of an
occurrence under the HO-6R(02) policy as there is no physical
damage being claimed. Would the policy provide legal
representation for this type of loss?
What is your recommendation? Based on the accusations against
the insured not meeting the policy definition of an
occurrence, there would be no legal representation provided.
Is this a mandatory referral? No
If mandatory, on what basis?
If not mandatory, is issue addressed in KD? No
If no, referral reason? To verify if coverage would apply for
legal representation before sending claim to litigation for
handling.
Manager recommendation: Agree w/ FH recommendation.
accusations do not meet defnition of occurrence and no
property damage present. defering to dco
Director recommendation:DCO agrees with FH and MCO that
allegations do not meet def of BI or PD
Legal recommendation:

**Available Actions**

Claims Documentation

Start New Conversation

Refresh Page

Close Page

# Exhibit "11"


**CT**

**April 26, 2022 at 11:26 a.m.**    66822 - John Kaczmarek

Documentation Number
23

```
rcvd DCO approval to rqst OSC complete covg rvw
obc to OSC Daniels Fine Israel Schonbuch & Lebovits @ 310.556.7900
no answer, lcbm on vmail for Erin Hallissy
Hallissy@dfis-law.com 
310.556.7900
psp 046048
```

**Available Actions**

Claims Documentation

Start New Conversation

Refresh Page

Close Page

# Exhibit "12"

 **Jeremy Whiteley   April 26, 2022 at 10:27 p.m. CT**   View Conversation

I have hired an attorney with extensive experience with this type of frivous lawsuit. Catherine A. Close Attorney Julander, Brown & Bollard 949-988-3637 cac@jbblaw.com www.jbblaw.com 9110 Irvine Center Drive, Irvine, CA 92618

 **Jeremy Whiteley   April 26, 2022 at 10:30 p.m. CT**   View Conversation

This is a claim for a frivolous lawsuit. Under the Personal Injury section of my policy. My homeowners and umbrella policy provide coverage. My HOA policy is not needed.

 **John Kaczmarek   April 27, 2022 at 9:36 a.m. CT**   View Conversation

Mr. Whiteley, There is no coverage for personal injury to an insured under the umbrella policy. The personal injury coverage applies to a claimant or third party.

**WHITELEY_CF_009**

# Exhibit "13"

## ⊗ MR. JEREMY WHITELEY # 777 83 75 L/R # 30 DOL: 03/10/2022

[Refresh]   [Close]

**Integrated View**

Sort Order: [Oldest ▾]        [Submit]

≤ Page



**Available Actions**

**C**laims Do**c**umentation

Start **N**ew Conversation

Refresh Page

Close Page

**April 27, 2022 at 12:17 p.m.**  66822 - John Kaczmarek    Documentation Number 1
CT

Loss Report Created

**April 27, 2022 at 12:26 p.m.**  66822 - John Kaczmarek    Documentation Number 4
CT

copied claim from LR#29 as ni is rqsting to pursue claim under umbrella
policy

FNOL Details : ILR for lawsuit

COVERAGES
Policy : 70U
Form : U-2009
Edition : 07-09
Base state : AZ
Limit - LIABILITY $3,000,000
Inception Date : 5/13/21

Action :
ni provided a copy of the lawsuit via ccom

**WHITELEY_UMB_CF_001**

```
Plaintiff : Breaking Code Silence (BCS)
Complaint
1. Computer Fraud and Abuse Act
2. California's Computer Data Access and Fraud Act


lawsuit claims Jeremy Whiteley and 2nd defendant Katherine McNamara (who
were both prior board members with BCS), attempted to prevent
communication between BCS and U.S. troubled teen industry (TTI). The
suit claims Katherine McNamara maliciously accessed social media
accounts, third party platform accounts and websites belonging to B
and that the ni has engaged in cyber hacking directed to BCS, inclu
but not limited to the unauthorized access of servers and networks.



File Pends :
-complete legal resolve
```

**Available Actions**

Claims Documentation

Start New Conversation

Refresh Page

Close Page

**April 27, 2022 at 12:56 p.m.**   66822 - John Kaczmarek      Documentation Number 6
CT

```
Resolve Legal Question

Date reported to USAA: 04/27/2022
Policy Type/Endorsements: UMB
Policy Base State: AZ
Occurrence State: AZ
Suit filed? Yes
If yes, in what state? CA
Reservation of Rights or Non-Waiver in file? NO
Applicable Policy Language: If a claim is made or a suit is brought
against any insured for bodily injury or property damage arising from an
occurrence to which this policy applies, or for personal injury to
```

WHITELEY_UMB_CF_002

which this policy applies, we will provide a defense at our expense by
counsel of our choice, even if the suit is groundless, false or
fraudulent.

However, we will not provide a
defense:

a. To any insured for criminal prosecution or proceedings; or
b. If the occurrence or offense is covered by underlying insurance or
any other liability insurance available to any insured.

DEFINITIONS

"Personal injury" means injury arising out of one or more of the
offenses listed below, but only if the insured's act occurred during
policy period. A series of similar or related acts by an insured,
multiple publications of the same statement, and continuous or repeated
injury from the same act or publication, will be considered a single
offense and injury during the single policy period in which the first
act or publication occurred.

1. Oral, written or electronic publication of a false statement that
defames a person's or organization's character or reputation.
2. Oral, written or electronic publication of material that violates a
person's right of privacy by publicly disclosing private facts.
3. Malicious prosecution.

Legal Question: The insured has been named in a lawsuit that claims he
has been involved in cyber hacking. The accusations against the insured
do not meet the definition of an occurrence under the 70U policy as
there is no physical damage being claimed. The insured is requesting
representation for legal counsel under personal injury which the insured
feels applies to him. Would the policy provide legal representation for
this type of loss?

What is your recommendation? The accusations against the insured not
meeting the policy definition of an occurrence. The personal injury
coverage under liability does not apply to an insured only a claimant .
Based on this, there would be no coverage for duty to defend and provide
legal counsel for the insured.

Is this a mandatory referral? No

If mandatory, on what basis?

If not mandatory, is issue addressed in KD? No

If no, referral reason? To verify if coverage would apply for legal
representation before sending claim to litigation for handling.

Manager recommendation:

Director recommendation:

Legal recommendation:

**Available Actions**

Claims Documentation

Start New Conversation

Refresh Page

Close Page

# Exhibit "14"

**CT**     **April 27, 2022 at 5:05 p.m.**    <u>67438</u> - Alisa Kuzma-Holmes      Documentation Number 10

Resolve Legal Question

Date reported to USAA: 04/27/2022
Policy Type/Endorsements: UMB
Policy Base State: AZ
Occurrence State: AZ
Suit filed? Yes
If yes, in what state? CA
Reservation of Rights or Non-Waiver in file? NO
Applicable Policy Language: If a claim is made or a suit is
brought against any insured for bodily injury or property
damage arising from an occurrence to which this policy
applies, or for personal injury to
which this policy applies, we will provide a defense at our
expense by counsel of our choice, even if the suit is
groundless, false or fraudulent.
However, we will not provide a
defense:
a. To any insured for criminal prosecution or proceedings; or
b. If the occurrence or offense is covered by underlying
insurance or any other liability insurance available to any
insured.
DEFINITIONS
"Personal injury" means injury arising out of one or more of
the offenses listed below, but only if the insured's act
occurred during the policy period. A series of similar or
related acts by an insured, multiple publications of the same
statement, and continuous or repeated injury from the same
act or publication, will be considered a single offense and
injury during the single policy period in which the first act
or publication occurred.
1. Oral, written or electronic publication of a false

**WHITELEY_UMB_CF_004**

statement that defames a person's or organization's character or reputation.

2. Oral, written or electronic publication of material that violates a person's right of privacy by publicly disclosing private facts.

3. Malicious prosecution.

Legal Question: The insured has been named in a lawsuit that claims he has been involved in cyber hacking. The accusations against the insured do not meet the definition of an occurrence under the 70U policy as there is no physical damage being claimed. The insured is requesting representation for legal counsel under personal injury which the insured feels applies to him. Would the policy provide legal representation for this type of loss?

What is your recommendation? The accusations against the insured not meeting the policy definition of an occurrence. The personal injury coverage under liability does not apply to an insured only a claimant . Based on this, there would be no coverage for duty to defend and provide legal counsel for the insured.

Is this a mandatory referral? No

If mandatory, on what basis?

If not mandatory, is issue addressed in KD? No

If no, referral reason? To verify if coverage would apply for legal representation before sending claim to litigation for handling.

Manager recommendation: Agree w/ FH recommendation. accusations do not meet defnition of occurrence and no property damage present. Osc is reviewing coverage under ho policy - doc #29 - request to have review under umbrella as well

Director recommendation:

Legal recommendation:

**Available Actions**

Claims Documentation

Start New Conversation

Refresh Page

Close Page

# Exhibit "15"

 April 28, 2022 at 12:15 p.m.    38623 - Barbara Gonzalez    Documentation Number 14
CT

**Available Actions**

Claims Documentation

Start New Conversation

Refresh Page

Close Page

DCO reviewing for duty to defend
ni being sued for computer fraud and data access fraud
this is companion claim to HO policy
Unmrella policy with $3M coverage

DCO does not see that allegations meet the def of BI pD or occurrence as
outlined in the policy and therefore does not see suty to defend but
would like further review by OSC and give auth for same

# Exhibit "16"

rcvd vmail form Marl Israel w/OSC rqsting c/b to 310.789.4206 to disc rqst

obc to Mark who rqst he be sent a copy of the suit for rvw to verify there is no conflict of interest

his email address is Israel@dfis-law.com

advsd I will send over copy of suit and awt his response

all okay

eoc

WHITELEY_CF_013

# Exhibit "18"

# Exhibit "19"

 **John Kaczmarek**  **May 3, 2022 at 9:53 a.m. CT**   View Conversation

Thank you for the update Mr. Whiteley. We are still completing our coverage review of your loss. You previously mentioned that you received a copy of the suit on 4/21. Our litigation team needs to know what the method of service was...in person, email, electronic, mail, etc...



 **Jeremy Whiteley**  **May 3, 2022 at 10:51 a.m. CT**   View Conversation

Thank you for the reply. I received an email copy of this on April 12th, 2022, with a copy of waiver of service, which I plan to sign and send back. This is covered under the personal injury section of my homeowner's policy under g. Malicious prosecution and humiliation. This Complaint is no more than judicial extortion. Plaintiff's allegations are a work of fiction designed to intimidate Defendant McNamara and into surrendering a domain name she purchased with her own funds and in her own name years prior to her involvement with Breaking Code Silence and never transferred to the company.

Notice_of...PDF
(222.12 KB)

Proposed_...PDF
(201.44 KB)

unnamed_d...PDF
(71.76 KB)

_Dkt_2__C...PDF
(9.99 MB)

_Dkt_3__C...PDF
(1.1 MB)

_Dkt_4__C...PDF
(347.29 KB)

_Dkt_7__N...PDF
(363.99 KB)

_Dkt_8__U...PDF
(1.02 MB)

_Dkt_9__U...PDF
(369.23 KB)

_Dkt_11__...PDF
(216.66 KB)

 **Jeremy Whiteley**  **May 3, 2022 at 10:59 a.m. CT**   View Conversation

attaching the last attachment.

_Dkt_12__...PDF
(6.22 MB)

**WHITELEY_CF_016**

 **Roberto Balladares**   **May 3, 2022 at 3:13 p.m. CT**   View Conversation

We are replying on behalf of your adjuster who is currently unavailable. We have received your documents and will review and update your claim. We appreciate your time and have a good day.

**Available Actions**

Claims Documentation

Start **N**ew Conversation

Refresh Page

 **Jeremy Whiteley   May 7, 2022 at 5:38 a.m. CT**   View Conversation

Attached is the response my attorneys filed in response to this FRIVOLOUS LAWSUIT. I am very disappointed with USAA. I called the adjuster on April 27th, and I have yet to get a call back. My messages here pretty much go unanswered. This frivolous lawsuit is very stressful and USAA has a duty to defend me against Malicious prosecution or humiliation under the provisions of the personal injury section of my policy. I am 3rd generation member and I have been a loyal USAA customer for over 30 years.

BreakingC...PDF
(201.97 KB)

 **Jeremy Whiteley   May 7, 2022 at 5:39 a.m. CT**   View Conversation

Breaking Code Silence's Complaint is no more than judicial extortion and retaliation. Plaintiff's allegations are a work of fiction designed to intimidate Defendant McNamara into surrendering a domain name she purchased with her own funds and in her own name years prior to her involvement with Breaking Code Silence and never transferred to the company and to avoid repaying expenses McNamara incurred at the request of the Plaintiff. The Complaint against Whiteley is simply retaliation for his reporting of the harassment he suffered at the hands of Breaking Code Silence's management and his resulting refusal to further assist Breaking Code Silence.

**WHITELEY_CF_017**

# Exhibit "20"



**CT**    **May 10, 2022 at 3:37 p.m.**    66822 - John Kaczmarek    Documentation Number 59

rcvd diary from LCA in regard to a waiver of service
reviewed ccom ni submitted last week while I was in training
ni provided a copy of the email he rcvd on 4/12/2022 from Jon Kintzele
w/DLA Piper LLP (the firm representing Breaking Code Silence)
the email includes a waiver of service which if ni signed and returned,
would extend the deadline to answer to 60 days from the date of the
email
if the waiver was not received w/i 30 days from the date of the email,
the firm would we will proceed to serve you under the Federal Rules of
Civil Procedure and ask the Court to require you to pay the full costs
of such service.

in the ccom message, ni advsd that he was planning on signing the waiver
of service and sending in

@ this time a covg review response has not been rcvd

obc to ni to discuss status
no answer, left detailed message
advsd I rcvd his ccom while I was ooo last week and inq he has signed
and sent in the waiver of service document to the clmt firm
explained at this time, I am still awaiting a response from osc in
regard to the covg review that was submitted for both of his policies
explained, until the covg rvw is complete, I am unable to advise if the
policy would provide covg for D2D
advsd ni that he should continue to work with his atty in regard to
answering the clmt atty and addressing any issues

WHITELEY_CF_019

sending response to LCA in regard to the waiver of service that was rcvd via ccom

WHITELEY_CF_020

 **Jeremy Whiteley   May 12, 2022 at 11:53 a.m. CT**   View Conversation

Please see my letter from my attorney in response to your voice mail that you left for me
on Tuesday, May 10th, which was unresponsive and breaches USAA's duty to defend. It's
now been 22 days since I filed this claim.



2022_05_1...PDF
(390.69 KB)

 **John Kaczmarek**   **May 12, 2022 at 12:23 p.m. CT**   View Conversation

Thank you for the message Mr. Whiteley. We did receive a copy of the letter from your
attorney yesterday and forwarded it to our litigation team for review. I did reach out to the
outside counsel that is completing the coverage review for your claim and was advsd that
they hope to have the review completed by Monday. Once I receive their response, I will
follow up with you to discuss our position.

# Exhibit "21"



**May 16, 2022 at 9:44 a.m.**    66822 - John Kaczmarek

CT

Documentation Number
72

email received from outside counsel in regard to coverage review

John,

I have reviewed the information you provided.

I conclude that there is no duty to defend this matter which alleges
violations of state and federal anti-hacking statutes for the reasons
set forth in the attached response letter.

If you have any questions regarding this matter, please do not hesitate
to contact me.

Mark R. Israel, Esq.
Daniels, Fine, Israel, Schonbuch & Lebovits LLP
1801 Century Park E. Fl9
Los Angeles, CA 90067
Main: 310-556-7900
Direct: 310-789-4206

will contact ni & ni's atty to advise of denial
will draft and send a denial letter to ni and ni's atty for both ni's
policies

**Available Actions**

Claims Documentation

Start New Conversation

Refresh Page

Close Page

# Exhibit "22"

JEREMY R WHITELEY
C/O CATHERINE A. CLOSE, ESQ.
JULANDER, BROWN & BOLLARD
9110 IRVINE CENTER DRIVE
IRVINE, CA 92618
VIA EMAIL: CAC@JBBLAW.COM

> Re:        ***Breaking Code Silence v. Katherine McNamara, et. al.***
> Unit owner:        Jeremy R Whiteley
> Claim number:        007778375–029
> Date of loss:        March 28, 2022
> Property address:        6721 E McDowell Rd Unit 322C
>                                     Scottsdale, Maricopa, AZ, 85257-3105

Dear Attorney Close:

USAA Casualty Insurance Company ("USAA-CIC") has received the complaint entitled *Breaking Code Silence v. Katherine McNamara, et.al.*, U.S.D.C. Case No. 2:22-cv-002052. The *Breaking Code Silence ("BCS")* lawsuit seeks damages, restitution, punitive damages, and injunctive relief arising out of alleged violations of the Computer Fraud and Abuse Act and the California Computer Data Access and Fraud Act. The *BCS* complaint alleges "purposeful and unlawful conduct directed to BCS within the State of California," including "acts of cyber hacking" that violate the cited federal and state statutes. USAA-CIC does not assume that these allegations are meritorious. However, we have carefully reviewed the pleadings and your USAA-CIC policies and find no covered, or potentially covered, allegations in the complaint that would trigger a duty to defend the lawsuit or to indemnify any of the damages alleged. Consequently, USAA-CIC will respectfully deny coverage for this matter. The basis of USAA-CIC's coverage determination is explained in detail below.

## FACTUAL BACKGROUND

USAA-CIC issued Unit-Owners Policy Number 00777 83 75 90A to Jeremy R Whitley. The insured location is 6721 E McDowell Rd, Unit 322C, Scottsdale, AZ 85257-3105. The policy was in force from September 1, 2021 to September 1, 2022. Liability coverage is provided through the Unit Owners – Homeowners Policy HO-6R (02) (07-08). The policy is

0901119cb1703cf7                    USAA Confidential

JEREMY R WHITELEY
Page 2 of 10
May   , 2022

endorsed with the Sharing Economy Endorsement HO-HS (04-18) and Personal Injury Liability HO-82 (07-08). The policy provides liability coverage with limits of $1,000,000 per occurrence.

USAA-CIC issued Personal Umbrella Policy number CIC 00777 83 75 70U, in force from May 13, 2021 to May 13, 2022. This policy provides umbrella coverage above the Unit Owners policy with limits of $5,000,000 per occurrence.  Liability coverage is provided through the Personal Umbrella Policy PU-2009 (07-09).

On March 28, 2022, BCS filed the complaint entitled *Breaking Code Silence v. Katherine McNamara, et.al.*, U.S.D.C. Case No. 2:22-cv-002052.  The defendants are Katherine McNamara and Jeremy Whiteley. The complaint alleges that the federal District Court for the Central District of California has jurisdiction over Defendant Whiteley due to "Whiteley's purposeful and unlawful conduct knowingly directed to BCS within the State of California and in this District." (Complaint, para. 7.) This conduct includes "acts of cyber hacking directed to BCS…." The complaint alleges that Mr. Whitely was a member of the BCS board for several months until June 28, 2021 at which time he "terminated his relationship with BCS…." (Complaint, para. 11.) The complaint alleges that on March 10, 2022, "using Defendant Whiteley's former administrative credentials, both Defendants exercised an extreme act and maliciously accessed BCS's account with Google via the Google Search Console…. without permission or authorization from BCS and caused the website to be deindexed on Google.  The effect of being deindexed is that no one could find BCS's Website on the largest search engine." (Complaint, para. 36.) The complaint alleges that "Defendants repeatedly, relentlessly, and maliciously attempted to remove and/or gain control of the BCS Website and corresponding Google Webmaster Central permissions…." (Complaint, para. 39.) The complaint alleges that in addition to "causing the BCS website to be deindexed, they have attempted or succeeded in changing the content of the website." (Complaint, para. 43.) The complaint alleges that "Defendants have acted intentionally, and with wanton and reckless disregard for the members of the public that their conduct has and continues to harm, by commandeering BCS's communications tools and ability to convey information across all of its core online channels." (Complaint, para. 46.) The complaint alleges a first cause of action for violation of the Computer Fraud & Abuse Act (18 U.S.C section 1030, et. seq.) based on Defendant Whiteley "intentionally accessing a computer used for interstate commerce or communication without authorization or by exceeding authorized access to such a computer, and by obtaining information from such a computer, including but not limited to, accessing BCS's Google accounts to cause the website to be deindexed." (Complaint, para. 56.) The complaint alleges a second cause of action for Violation of California Penal Code section 502. The complaint seeks injunctive relief as well as treble damages, restitution, and punitive and exemplary damages.

2

**WHITELEY_CF_253**

0901119cb1703cf7                    USAA Confidential

JEREMY R WHITELEY
Page 3 of 10
May   , 2022

## PERTINENT POLICY LANGUAGE

The insuring provision of the Homeowners 6R(02) Unit-Owners Form (07-08) as modified by the Personal Injury Endorsement provides, in pertinent part, as follows:

### COVERAGE E - Personal Liability

If a claim is made or a suit is brought against any **"insured"** for **"damages"** because of **"bodily injury"**, **"property damage"** or **"personal injury"** caused by an **"occurrence"** to which this coverage applies, we will:

1.      Pay up to our limit of liability for the **"damages"** for which the "**insured**" is legally liable; and

2.      Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for "**damages**" resulting from the "**occurrence**" equals our limit of liability. This coverage does not provide defense to any "**insured**" for criminal prosecution or proceedings.

We will not pay for punitive **"damages"** or exemplary **"damages"**, fines or penalties.

The Unit-Owners Form and the Personal Injury Endorsement include the following pertinent definitions:

3.      **"Bodily injury"** means physical injury, sickness or disease, including required care, loss of services and death that results.

**"Bodily injury"** does not include mental injuries such as: emotional distress, mental anguish, humiliation, mental distress, or any similar injury unless it arises out of physical injury to the person claiming a mental injury.

* * *

6.      "**Damages**" means compensatory damages the "**insured**" is legally obligated to pay as a result of "**bodily injury**" or

3

**WHITELEY_CF_254**

USAA Confidential

0901119cb1703cf7

JEREMY R WHITELEY
Page 4 of 10
May   , 2022

"**property damage**" covered by this insurance, but does not
include punitive, exemplary or multiple damages.

\* \* \*

18.    **"Property damage"** means physical damage to or
destruction of tangible property, including loss of use of this
property.

\* \* \*

**"Personal injury"** means:

a.    Wrongful eviction, wrongful entry.
b.    Libel.
c.    Slander.
d.    Defamation of character.
e.    Invasion of rights of privacy.
f.    Wrongful detention, false arrest or false imprisonment.
g.    Humiliation.
h.    Assault and battery if committed by any "insured" or at
his direction to protect persons or property. This applies
only when the conduct is not criminal.

**"Personal Injury"** only applies when the conduct is not
malicious or criminal in nature.

**"Occurrence"** means:

a.    An accident, including continuous or repeated exposure
to substantially the same generally harmful conditions,
which results, during the policy period, in **"bodily
injury"** or **"property damage"**.

b.    An event or series of events, including injurious
exposure to conditions, proximately caused by an act or
omission of any **"insured"**, which results, during the
policy period, in **"personal injury"**, neither expected
nor intended from the standpoint of the **"insured"**.

4

**WHITELEY_CF_255**

**USAA Confidential**

JEREMY R WHITELEY
Page 5 of 10
May    , 2022


The Unit-Owners Form and Personal Injury Endorsement exclude coverage, in pertinent part, as follows:

**1.    Coverage E – Personal Liability** and **Coverage F – Medical Payments to Others,** with respect **to** personal injury only, paragraph a. is deleted and replace by:

    **a.**    which is expected or intended by the **"insured";**

**2.    Coverage E – Personal Liability** does not apply to:

    **g.**    Punitive or exemplary damages, fines, or penalties.

The Personal Injury Endorsement excludes coverage, in pertinent part, as follows:

The following exclusions are added with respect to "personal injury":

    **5**.    Arising out of libel, slander or defamation of character that is published by the "insured" on the internet.

The Insuring Agreement of the Personal Umbrella Policy provides in relevant part as follows:

A.  Damages

    1.  **We** will pay for damages, in excess of the **retained limit**, that an **insured** becomes legally obligated to pay because of **bodily injury** or **property damage** resulting from an **occurrence**.

    2.  **We** will pay for damages that an **insured** becomes legally obligated to pay because of **personal injury**.

B.  Defense

    1.  If a claim is made or a suit is brought against any insured for bodily injury or property damage arising from an occurrence to which this policy applies, or for personal injury to which this policy applies, we will provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.

5

**WHITELEY_CF_256**

USAA Confidential

JEREMY R WHITELEY
Page 6 of 10
May   , 2022

However, **we** will not provide a defense:

a. To any **insured** for criminal prosecution or proceedings; or

b. If the **occurrence** or offense is covered by **underlying insurance** or any other liability insurance available to any **insured**.

\* \* \* \*

The Personal Umbrella Policy includes the following pertinent definitions:

C. **"Bodily injury."**

1. **"Bodily injury"** means bodily harm, sickness, disease or death.

2. **"Bodily injury"** does not include mental injury such as emotional distress, mental anguish, humiliation, mental distress, or any similar injury unless it arises out of physical injury to some person.

N. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in **bodily injury** or **property damage**.

O. **"Personal injury"** means injury arising out of one or more of the offenses listed below, but only if the **insured's** act occurred during the policy period. A series of similar or related acts by an **insured**, multiple publications of the same statement, and continuous or repeated injury from the same act or publication, will be considered a single offense and injury during the single policy period in which the first act or publication occurred.

6

0901119cb1703cf7

USAA Confidential

JEREMY R WHITELEY
Page 7 of 10
May   , 2022

1. Oral, written or electronic publication of a false
   statement that defames a person's or organization's
   character or reputation.

2. Oral, written or electronic publication of material
   that violates a person's right of privacy by
   disclosing private facts.

3. Malicious prosecution.

4. False arrest, false imprisonment, wrongful
   detention.

5. When committed by or on behalf of the owner,
   landlord or lessor of a room, dwelling or premises
   that a person occupies:

   a. Wrongful eviction;

   b. Wrongful entry; or

   c. Invasion of the right of private occupancy.

6. Assault and battery if committed by any **insured**, or
   at his direction, to protect persons or property. This
   applies only when the conduct is not criminal.

**R.**   **"Property damage."**

1. **"Property damage"** means physical damage to or
   destruction of tangible property including loss of use
   of this property.

2. For purposes of this policy, electronic data is not
   tangible property. Electronic data means
   information, facts or programs:

   a. Stored as or on;

   b. Created or used on; or

   c. Transmitted to or from:

   computer software, including systems and
   applications software, hard or floppy disks, CD-

7

**WHITELEY_CF_258**

**USAA Confidential**

0901119cb1703cf7

JEREMY R WHITELEY
Page 8 of 10
May   , 2022

> ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

The Personal Umbrella Policy includes the following pertinent exclusions:

> A.  This insurance does not apply to:
>
> > 3.   Punitive or exemplary damages, fines or penalties.
>
> D.  This insurance does not apply to **personal injury** which results from a false statement if done by or at the direction of any **insured** with knowledge that the statement was false, or made with reckless disregard for the truth.
>
> G.  This insurance does not apply to **bodily injury**, **property damage** or **personal injury**:
>
> > \* \* \* \*
> >
> > 7.   Arising out of a criminal act or omission by, or with the knowledge or consent of, any **insured**.

## COVERAGE DETERMINATION

Based upon the foregoing information and policy language, USAA-CIC has determined that the policies do not provide coverage for the BCS lawsuit for the following reasons:

First, the policies provide coverage for damages because of "**bodily injury**" and **"property damage"** as defined above. The *BCS* lawsuit, however, solely concerns economic damages allegedly suffered by *BCS* as a result of the conduct alleged in the complaint. Economic harm of this type does not fall within the insuring provisions of the policies for **"bodily injury"** and **"property damage"**. (See, e.g., *Giddings v. Industrial Indemnity Co.* (1980) 112 Cal.App.3d 218 ["Strictly economic losses like lost profits, loss of goodwill, loss of the anticipated benefit of a bargain, and loss of an investment do not constitute damage or injury to tangible property covered by a comprehensive general liability policy."].) Cases interpreting the phrase "tangible property" in an insurance policy hold that such phrase does not include coverage for economic interests or property rights (such as damages for lost profits or loss of investment). (See *Fresno Economy Import Used Cars, Inc. v. United States Fid. & Guar. Co.* (1977) 76 Cal.App.3d 272; *Allstate Ins. Co. v. Interbank Financial Services* (1989) 215 Cal.App.3d 825; and *Warner v. Fire Ins. Exchange* (1991) 230 Cal.App.3d 1029.) Data is not "tangible property" within the meaning of the **"property**

8

0901119cb1703cf7          USAA Confidential

JEREMY R WHITELEY
Page 9 of 10
May   , 2022

**damage"** definition. "Tangible property" is limited to items that can be "touched, seen and smelled." (See *Kazi v State Farm Fire & Casualty Company* (2001) 24 Cal.4th 871; *Ward Gen. Ins. Services, Inc. v. Employers Fire Ins. Co.* (2003) 114 Cal.App.4th 548.)

Second, the policies provide coverage only for **"damages"** due to **"bodily injury"** and **"property damage"** that are caused by an **"occurrence"** which means an accident. The *BCS* complaint does not allege accidental conduct. The *BCS* complaint alleges damage due to intentional and knowing violations of the Computer Fraud and Abuse Act and the California Computer Data Access and Fraud Act. Any damages that may result from such conduct does not result from an accident. (*Chatton v. National Union Fire Ins. Co.* (1992) 10 Cal.App.4th 846, 861; *Miller v. Western Gen. Agency, Inc.* (1996) 41 Cal.App.4th 1144, 1150.)

Third, the complaint alleges that defendants committed various violations of the Computer Fraud and Abuse Act and the California Computer Data Access and Fraud Act. The complaint does not allege any of the "personal injury" offenses listed in the Personal Injury Endorsement and/or Personal Umbrella Policy.

Fourth, the policy excludes coverage for damages intended or reasonably expected by any insured. The Personal Injury Endorsement requires that any covered Personal Injury offense must be neither expected nor intended from the standpoint of the **"insured".** Even if the complaint could be said to allege a "personal injury" offense, which we do not believe it does, the acts alleged in the complaint were committed knowingly and intentionally according to the allegations and based upon the requirements of the respective statures, and therefore cannot be said to have been unexpected or unintended from the standpoint of the insured. We conclude that these policy provisions would preclude coverage based on the nature of the conduct alleged in the complaint.

There are other policy provisions, exclusions and coverage defenses that may apply to some or all of the damages and other remedies sought by the BCS complaint. However, we conclude that the foregoing issues are determinative of coverage under the policies for the reasons described above.

**CONCLUSION**

We hope this letter is clear. However, if you have questions, or have any additional information you believe USAA-CIC should consider, please feel free to contact me. USAA-CIC does not by this correspondence intend to waive any coverage issue or defense not expressly set forth above.

**WHITELEY_CF_260**

0901119cb1703cf7

USAA Confidential

JEREMY R WHITELEY
Page 10 of 10
May   , 2022

    We are required by California Insurance Regulations, Section 2695.7(b)(3), to advise you that if you believe this claim, or any part of this claim, has been wrongfully denied or rejected, you may have the matter reviewed by the California Department of Insurance, Claims Service Bureau, 300 South Spring Street, Los Angeles, California 90013, telephone 1-800-927-4357.

          Very truly yours,

10

**WHITELEY_CF_261**

0901119cb1703cf7

USAA Confidential

# Exhibit "23"



**May 16, 2022 at 1:34 p.m.**    66822 - John Kaczmarek          Documentation Number
CT                                                                 74

```
obc to ni to advise of the coverage review and our position
explained to ni the outcome of the review
ni rqst a copy of the denial be sent in writing
advsd a denial letter will be drafted under each policy and sent to him
and his atty


ni inq about the poor customer service he has received in regard to his
claim(s)
ni states he called and left a vmail for me on 4/27 and has never heard
back
```

WHITELEY_CF_023

advsd ni that he has been called and sent correspondence since leaving a
message on 4/27

advsd per our prior discussion, I would need to have the coverage review
completed before I could advise our position and the next steps


ni states that he is going to file a complaint with the AZ insurance
board in regard to the handling of his claim


ni rqst to have a c/b from my manager to discuss his claim
advsd I will fwd his rqst to my mgr for follow up
ni had no additional questions
eoc

**Available Actions**

Claims Documentation

Start **N**ew Conversation

**WHITELEY_CF_024**

# Exhibit "24"

**From: USAA Claims<44phd5cc2mm3@claims.usaa.com>**

**Sent: Tuesday, May 17, 2022 05:09 PM**

**To: cac@jbblaw.com**

**Subject: USAA's Claims Coverage Decision**

**WHITELEY_CF_272**

USAA Confidential

0901119cb177ee56

 USAA Casualty Insurance Company

# CLAIMS COVERAGE DECISION

CATHERINE A CLOSE
JULANDER, BROWN & BOLLARD
9110 IRVINE CENTER DRIVE
IRVINE CA 92618

May 17, 2022

Dear Catherine A Close,

Thank you for giving us the opportunity to evaluate your claim for possible coverage. As discussed, we've determined your loss isn't covered by your HO-6R(02) 07-08 homeowners policy.

| | |
|---|---|
| **USAA policyholder:** | Jeremy R Whiteley |
| **Claim number:** | 007778375–029 |
| **Date of loss:** | March 10, 2022 |
| **Loss location:** | Unknown, Arizona |

**Reason for Denial**
Your claim for legal representation regarding the Breaking Code Silence lawsuit isn't covered because our coverage review determined that your policy does not provide coverage for the following reasons:

First, the policies provide coverage for damages because of "bodily injury" and "property damage" as defined in the attached letter.  The *BCS* lawsuit, however, solely concerns economic damages allegedly suffered by *BCS* as a result of the conduct alleged in the complaint. Economic harm of this type does not fall within the insuring provisions of the policies for "bodily injury" and "property damage".

Second, the policies provide coverage only for "damages" due to "bodily injury" and "property damage" that are caused by an "occurrence" which means an accident. The *BCS* complaint does not allege accidental conduct. The *BCS* complaint alleges damage due to intentional and knowing violations of the Computer Fraud and Abuse Act and the California Computer Data Access and Fraud Act. Any damages that may result from such conduct does not result from an accident.

Third, the complaint alleges that defendants committed various violations of the Computer Fraud and Abuse Act and the California Computer Data Access and Fraud Act. The complaint does not allege any of the "personal injury" offenses listed in the Personal Injury Endorsement and/or Personal Umbrella Policy.

Fourth, the policy excludes coverage for damages intended or reasonably expected by any insured.  The Personal Injury Endorsement requires that any covered Personal Injury offense must be neither expected nor intended from the standpoint of the "insured".  Even if the complaint could be said to allege a "personal injury" offense, which we do not believe it does, the acts alleged in the complaint were committed knowingly and intentionally according to the allegations and based upon the requirements of the respective statures, and therefore cannot be said to have been unexpected or unintended from the standpoint of the insured. We conclude that these policy provisions would preclude coverage based on the nature of the conduct alleged in the complaint.

There are other policy provisions, exclusions and coverage defenses that may apply to some or all of the damages and

007778375 - 029 - 8710 - 05                                                                                          60912-0921

**WHITELEY_CF_273**

USAA Confidential

0901119cb177ee56

other remedies sought by the BCS complaint. However, we conclude that the foregoing issues are determinative of coverage under the policies for the reasons described above.

**Policy Provisions**
The specific policy language, which is the basis for the denial, is located on:

- Pages 1, DEFINITIONS, 3.,6.,18.
- Pages 21, Section 2, LIABILITY COVERAGES, 1.,2.
- Pages , Section 2, EXCLUSIONS, 1.a.,2.g.,5.

By providing you the specific reasons for our decision, we don't intend to waive:

- Any other applicable terms or conditions of the policy, or
- Any other rights provided by the policy or law.

## How to Contact Us

Please send any correspondence or questions to us using one of the following options and include the claim number on each page mailed or faxed:

| | | |
|---|---|---|
| | **usaa.com or our mobile app:** | Upload documents or post a secure message to your claim file through the Claim Communication Center. |
| | **Email:** | Send an email or attachments to your claim file at 44phd5cc2mm3@claims.usaa.com. Don't send private information via this channel. |
| | **Address:** | USAA Claims Department<br>P.O. Box 33490<br>San Antonio, TX 78265 |
| | **Fax:** | 800-531-8669 |
| | **Phone:** | 1-210-531-8722 ext. 7-9471 |

**Important Legal Information**
Your policy's Suit Against Us Provision prohibits you from taking any action against us unless you've given us notice of the loss, complied with all policy provisions and started legal action within two (2) years from the date of loss. However, an insurer must show prejudice from the delay in filing suit unless the insurer has clearly stated the limits of its liability and its refusal to recognize any further liability under the policy. Nangle v. Farmers Insurance Co. of Arizona 205 Ariz. 517 (2003).

Please see the full coverage review letter that is attached to this letter for reference and full explanation of our position.

We appreciate your membership and look forward to serving you in the future.

Sincerely,

John S Kaczmarek
Specialty Team
USAA Casualty Insurance Company

Use of the term "member" or "membership" refers to membership in USAA Membership Services and does not convey any legal or ownership rights in USAA. Restrictions apply and are subject to change.

0901119cb177ee56

Attached: Coverage Review Letter

cc : Jeremy R Whiteley

0901119cb177ee56

USAA Confidential

# Exhibit "25"



**CT**  **May 17, 2022 at 1:25 p.m.**    91973 - Carmen Guzman

Documentation Number
78

The Advocacy Team has received a complaint,
ISSUE ID 9030434-1

- An Advocacy Advisor will facilitate a resolution and complete the
necessary research and resolution within the Enterprise Complaint
Registry.
- The written complaint can be found in EDOC.
- The subject and details of the conversation with the complainant will
be documented below.
- Claims Operations should continue to handle the claim per the normal
process.

Claims Operations should continue to handle the claim per the normal
process. All adjusting decisions and actions remain in Claims
Operations.

The member contacted the CEO regarding the unfavorable claim experience.

AA Guzman called ni

**WHITELEY_CF_025**

spoke to ni

adv of advocacy role

adv unable to make any claims adjustment

adv will advocate on ni behalf to ensure proper claims handling

ni sttd was promised a claims denial letter and had not received the
letter

ni allege he was not advised why the claim was not covered

ni sttd his attorneys advised this would be covered

ni allege he filed a doi complaint regarding communication on claim

ni sttd his attorney sent a letter to advised why this claim would
covered

reviewed ni attorney letter.


ni allege lack of communication- 04/27 vm left

ni allege no one has not ask him questions regarding a claim

ni allege

ni sttd he resigned at the end of 06/2021

ni sttd allegation occurred after he resigned as a form of retailation

ni sttd malicious prosecution & humiliations is covered by the policy

-

ni sttd he was told someone would contact he and he did not received a
c/b around 05/07

ni wants to know why he was banned from usaa facebook page

----------------------

sending to dco

**Available Actions**

Claims Documentation

Start New Conversation

Refresh Page

Close Page

# Exhibit "26"

**May 20, 2022 at 4:57 p.m. CT**       66822 - John Kaczmarek       Documentation Number 87

ibc from ni questioning why there were 2 claims filed for this loss
explained to ni that the initial claim was reported under his umbrella
policy and that the umbrella policy is excess to his HO policy so a
claim under his HO policy was needed
ni states that he never requested to file a claim under his umbrella
policy
advsd ni of our conversation on 4/22 (see doc #12) where he felt there
should be coverage under his umbrella policy
ni disputed ever speaking to me prior to our conversation last Monday
reiterated to ni that I spoke to him on 4/22 and explained a covg rvw
was needed to determine if his policies would provide coverage
ni advsd he will file a DOI complaint under the umbrella policy as well
then
advsd ni that is his right to do so
ni advsd he will take up his issues with my supervisor directly
before the end of the phone call, ni advised that he had recorded the
call for reference

**WHITELEY_CF_029**

advsd ni that I do not consent to his recording of the conversation
ni states he resides in a state that only requires consent from 1 party
eoc

**May 23, 2022 at 11:59 a.m. CT**     38623 - Barbara Gonzalez     Documentation Number 88

DCO received v/m from NI
he is upset about the claim handling
returned call to 7778375029

NI explained that he is not happy about the handling of the claim
alleges no communication about the claims process
he stated no one walked him through the claims process
no one asked him questions as related to the law suit

he states that he understands that the complaint outlined in the law
suit does not meet the definitions in the contract
but is unhappy with the handling of the claim and feels that a duty to
defend should be provided since he feels USAA has breached the duty to
communicate and are engaging in unfair practices

he plans to file a complaint with the insurance commissioner on both the
dwelling and umbrella policy

he appreciated my call and states that he hopes USAA improves on Service

he said that his atty's will take it from here

**Available Actions**

Claims Documentation

Start New Conversation

Refresh Page

Close Page

# Exhibit "27"

# PASICH LLP

| | |
|---|---|
| **Shaun Crosner** | **Tae E. Andrews** |
| Partner | Senior Managing Attorney |
| | |
| 1230 Rosecrans Avenue, Suite 690 | 286 Madison Avenue, Suite 401 |
| Manhattan Beach, CA 90266 | New York, NY 10017 |
| SCrosner@PasichLLP.com | TAndrews@PasichLLP.com |
| (424) 313-7844 | (646) 517-5051 |
| PasichLLP.com | Pasich LLP.com |

September 5, 2023

<u>Via E-Mail</u>

John S. Kaczmarek
Specialty Team
USAA Casualty Insurance Company
USAA Claims Department
P.O. Box 33490
San Antonio, TX 78265
44phd5cc2mm3@claims.usaa.com

| RE: | **Insured**: | Jeremy R. Whiteley |
|---|---|---|
| | **Complaint**: | *Breaking Code Silence v. McNamara*, No. 2:22-cv-002052 (C.D. Cal. originally filed Mar. 28, 2022) (the "*BCS* Action") |
| | **Policy Nos.**: | CIC 00777 83 75 90A (the "Homeowners Policy") |
| | | CIC 00777 83 75 70U (the "Umbrella Policy") |
| | **Claim No.**: | 007778375–029 |
| | **Date of Loss**: | March 10, 2022 |

Dear Mr. Kaczmarek:

We are insurance recovery counsel for Jeremy Whiteley in connection with his demand for coverage under the above-referenced claim.  We write in response to your letter dated May 17, 2022, in which USAA Casualty Insurance Company denied coverage for Mr. Whiteley's claim for coverage for the *BCS* Action.  In light of the below points and the governing law, we demand that USAA immediately withdraw its wrongful denial and confirm that it will honor all coverage obligations owed to Mr. Whiteley in connection with the *BCS* Action.

Los Angeles    |    Manhattan Beach    |    New York

**WHITELEY_CF_317**

USAA Confidential

0901119cb8892d56

John S. Kaczmarek
September 5, 2023
Page 2



# I.    FACTUAL BACKGROUND

### A.    The Policies

#### 1.    The Homeowners Policy

USAA issued Homeowners Policy No. CIC 00777 83 75 90A (the "Homeowners Policy") to Mr. Whiteley for the September 1, 2020, to September 1, 2021 policy period. The Homeowners Policy provides $1,000,000 in coverage for Personal Liability – Each Occurrence.  In pertinent part, the Homeowners Policy's Personal Liability coverage states:

> If a claim is made or a suit is brought against any 'insured' for damages because of . . . 'personal injury' caused by an 'occurrence' to which this coverage applies, we will:
>
> 1.    Pay up to the limit of liability for the damages for which the 'insured' is legally liable; and
>
> 2.    Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.

*See* Homeowners Policy, Personal Injury Endorsement, Coverage E - Personal Liability.

In pertinent part, the Homeowners Policy defines "personal injury" to mean:

a.    Wrongful eviction, wrongful entry.
b.    Libel.
c.    Slander.
d.    Defamation of character.
e.    Invasion of rights of privacy.

*See id.*

The Homeowners Policy also contains an exclusion stating that Coverage E - Personal Liability does not apply to "personal injury" "which is expected or intended by the 'insured.'"  *See id.*

#### 2.    The Umbrella Policy

USAA also issued Umbrella Policy No. CIC 00777 83 75 70A (the "Umbrella Policy") to Mr. Whiteley for the May 13, 2021 to May 13, 2022 policy period.  The Umbrella Policy provides $5,000,000 in coverage for Umbrella Liability.  In pertinent part, the Umbrella Policy states, "**We** will pay for damages that an **insured** becomes legally obligated to pay because of **personal injury**."  *See* Umbrella Policy, Liab. Coverages, Insuring Agreement §

**WHITELEY_CF_318**

USAA Confidential

0901119cb8892d56

John S. Kaczmarek
September 5, 2023
Page 3



A. 2 (emphasis in original).

In pertinent part, the Umbrella Policy also states, "If a claim is made or a suit is brought against any **insured** . . . for **personal injury** to which this policy applies, **we** will provide a defense at our expense by counsel of **our** choice, even if the suit is groundless, false or fraudulent." *See id.* § B. 1 (emphasis in original).

In pertinent part, the Umbrella Policy defines "**personal injury**" to mean:

1.    Oral, written or electronic publication of a false statement that defames a person's or organization's character or reputation.

2.    Oral, written or electronic publication of material that violates a person's right of privacy by publicly disclosing private facts.

*See id.* Definitions § O.

### B.    The *BCS* Action

On March 28, 2022, Breaking Code Silence ("BCS") filed the *BCS* Action against Mr. Whiteley and Ms. Katherine McNamara in Central District of California.  The *BCS* Action alleges that Mr. Whiteley and Ms. McNamara are former board members of BCS who later resigned.  *See* Compl. ¶¶ 10-11, 25 & 28.  The *BCS* Action also alleges that after leaving BCS, Mr. Whiteley and Ms. McNamara formed a competitor organization called UnSilenced.  *See id.* ¶¶ 32-33 ("Defendants Form UnSilenced and Begin Withholding Access to BCS Accounts.").  The *BCS* Action further alleges that Ms. McNamara "and her colleagues at UnSilenced made defamatory statements to valued partners, resulting in strained and, in some cases, terminated valued relationships." *See id.* ¶ 45.

In addition, the *BCS* Action alleges that BCS maintained a policy which prohibited "revealing BCS system passwords to others or allowing use of the individual's account by others" and "providing information about, or lists of, BCS users to parties outside BCS[.]" *See id.* ¶ 53.  The *BCS* Action further alleges that after resigning, Ms. McNamara and others downloaded "BCS's files and confidential information." *See id.* ¶ 30.  The *BCS* Action goes on to allege that months after resigning, Ms. McNamara and Mr. Whiteley "exercised an extreme act and maliciously accessed BCS's account with Google" to deindex BCS's website, with the effect that "no one could find BCS's Website on the largest search engine." *See id.* ¶ 36.

The *BCS* Action seeks broad damages, including the expenses associated with "investigating Defendants' wrongful conduct and engaging forensic experts, lost business opportunities and monetary donations, and disclosure of misleading information to the public[.]" *See id.* ¶ 47.  The *BCS* Action also seeks an injunction enjoining Ms. McNamara and Mr. Whiteley from disclosing any of BCS's company data, "including any and all sensitive confidential and proprietary information, and any and all donor contact

**WHITELEY_CF_319**

USAA Confidential

John S. Kaczmarek
September 5, 2023
Page 4



information, belonging to BCS for any purpose whatsoever"; "disseminating any hard or electronic copies of documents containing BCS's confidential and proprietary information"; and "providing Defendants' or their employees, or any other third party, with BCS donor-specific or employee specific information[.]" *See id.* Prayer for Relief ¶ 3. The *BCS Action* also seeks an order to inspect Ms. Namara and Mr. Whiteley's "personal and/or business computer systems to determine where and to whom BCS's proprietary and confidential information has been disseminated." *See id.* ¶ 4.

### C.    USAA's Denial of Coverage

On April 21, 2022, Mr. Whiteley promptly tendered the *BCS* Action to USAA seeking a defense from USAA. By letter dated May 17, 2022, USAA denied coverage, claiming that: (1) the *BCS* Action does not allege any "personal injury" offenses; and (2) even if the *BCS* Action did allege a "personal injury" offense, the alleged acts were committed knowingly and intentionally and "therefore cannot be said to have been unexpected or unintended from the standpoint of the insured." *See* May 17, 2022 Letter. As explained below, USAA's denial of coverage is without merit. USAA has and had a duty to defend and indemnify Mr. Whiteley in connection with the *BCS* Action.

## II.    **USAA HAS A DUTY TO DEFEND THE *BCS* ACTION.**

### A.    USAA's Duty to Defend Turns on the Potential for Coverage.

As you are aware, an insurer's duty to defend is very broad under California law. Indeed, USAA has a duty to defend Mr. Whiteley against the allegations in the *BCS* Action if they are even *potentially* covered by the Policy:

> To prevail [on a duty to defend issue], the insured must prove the existence of a ***potential for coverage***, while the insurer must establish ***the absence of any such potential***. In other words, the insured need only show that the underlying claim ***may*** fall within policy coverage; the insurer must prove it ***cannot***. Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales.

*Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 300 (1993). In sum, "the insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages *potentially* covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy." *Id.* at 299; *see also Manzarek v. St. Paul Fire & Marine Ins. Co*, 519 F.3d 1025, 1031-32 (9th Cir. 2008) (same); *Pension Trust Fund for Operating Engs. v. Fed. Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002) ("the mere possibility of coverage is enough to trigger the defense duty"). "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor."

**WHITELEY_CF_320**

USAA Confidential

John S. Kaczmarek
September 5, 2023
Page 5



*Montrose*, 6 Cal. 4th at 299-300.

Moreover, if ***any*** allegation in a complaint is potentially covered, an insurer must defend the ***entire*** action. As the California Supreme Court has held, "[w]e look not to whether noncovered acts predominate in the third party's action, but rather to whether there is *any* potential for liability under the policy." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1084 (1993); *see also Buss v. Superior Court,* 16 Cal. 4th 35, 49 (1997) (insurer "cannot parse the claims, dividing those that are at least potentially covered from those that are not.").

In determining whether a duty to defend exists, an insurer must construe allegations in the underlying complaint liberally and without regard to inartful drafting. *See, e.g., Gray v. Zurich Ins. Co.*, 65 Cal. 2d 275–76 (1966) (holding insurer's duty not measured by technical language in pleadings, but by potential for coverage as revealed by facts alleged in the complaint and stating court should not should "designate the third party as the arbiter of the policy's coverage"); *CNA Cas. of Cal. v. Seaboard Sur. Co.*, 176 Cal. App. 3d 598, 609 (1986) ("[I]t is not the form or title of a cause of action that determines the carrier's duty to defend, but the potential liability suggested by the facts alleged or otherwise available to the insurer.").

Finally, "[t]he duty to defend is determined by reference to the policy, the complaint, and *all* facts known to the insurer from any source." *Montrose*, 6 Cal.4th at 300 (emphasis in original). "To prevail, the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*." *Id.* (same). For this reason, "an insurer that wishes to rely on an exclusion has the burden of proving, through conclusive evidence, that the exclusion applies **in all possible worlds**." *Atl. Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1039 (2002) (emphasis added).

**B.    The Allegations in the *BCS* Action Trigger USAA's Duty to Defend.**

**1.    The *BCS* Action Alleges Covered or Potentially Covered Allegations of "Personal Injury."**

Here, USAA has a duty to defend Mr. Whiteley in the *BCS* Action because it alleges covered or potentially covered claims for "personal injury" allegedly caused by Mr. Whiteley. Contrary to the claim in your May 17, 2022 letter, the *BCS* Action alleges multiple "personal injury" offenses, including libel, slander, and/or defamation of character, as well as invasion of rights of privacy.

Specifically, the *BCS* Action alleges that Ms. McNamara "started creating tension on BCS's board and began regularly spreading gossip and slanderous lies about fellow board members among volunteers and in the survivor community." *See id.* ¶ 27. The *BCS* Action further alleges that Ms. McNamara and her colleagues at UnSilenced, including Mr. Whiteley, "made defamatory statements to valued partners, resulting in strained and, in

**WHITELEY_CF_321**

USAA Confidential

John S. Kaczmarek
September 5, 2023
Page 6



some cases, terminated valued relationships." *See id.* ¶¶ 27, 45.  These are clearly covered allegations of "personal injury" under the policies issued Mr. Whiteley, which define "personal injury" to include "[l]bel, [s]lander, and [d]efamation of character."

The *BCS* Action also alleges that Ms. McNamara and Mr. Whiteley downloaded BCS's "files and confidential data, including an entire Google Drive, without BCS's authority or permission[.]"  *See id.* ¶ 30.  The *BCS* Action further alleges that Mr. Whiteley violated the Computer Fraud & Abuse ACT (the "CFAA") by accessing BCS's computers "without authorization."  *See id.* ¶ 56.  These are also clearly covered allegations of "personal injury" under the Policies, which includes "[i]nvasion of rights of privacy."

Thus, contrary to USAA's denial letter, the *BCS* Action includes "personal injury" allegations falling squarely within the policies issued by USAA to Mr. Whiteley.

### 2.    USAA's Reliance on the "Expected or Intended" Exclusion Is Misplaced.

As a fallback, USAA has asserted that an exclusion for "expected or intended" injuries bars coverage for the *BCS* Action.  USAA is wrong.

In its denial letter, USAA asserted that "[e]ven if the [*BCS* Action] could be said to allege a 'personal injury' offense, which we do not believe it does, the acts alleged in the complaint were committed knowingly and intentionally according to the allegations and based upon the requirements of the respective statutes, and therefore cannot be said to have been unexpected or unintended from the standpoint of the insured."  *See* May 17, 2022 Letter.  However, as you and USAA know, it is immaterial that the plaintiffs in the *BCS* Action chose to include allegations of knowing and intentional conduct.  Indeed, the California Supreme Court has recognized that exclusions turning on the "intent" or "knowledge" of the insured will not excuse an insurer's duty to defend because they do not negate the potential for coverage:

> Moreover, despite [the underlying plaintiff's] pleading of intentional and wilful conduct, he could have amended his complaint to allege merely negligent conduct. Further, [the insured] might have been able to show that . . . he did not commit wilful and intended injury, but engaged only in nonintentional tortious conduct."

*Gray*, 65 Cal. 2d at 277.  Moreover, even if an underlying complaint alleges intentional misconduct on the part of the insured, such allegations will not excuse an insurer's duty to defend.  As the *Gray* court stated:

> Obviously, . . . the complainant in the third party action drafts his complaint in the broadest terms; he may very well stretch the action which lies in only nonintentional conduct to the dramatic complaint that alleges intentional misconduct.  In light of the likely overstatement of the complaint and of the

**WHITELEY_CF_322**

USAA Confidential

John S. Kaczmarek
September 5, 2023
Page 7



plasticity of modern pleading, we should hardly designate the third party as the arbiter of the policy's coverage.

*Id.* at 276.

Here, as noted above, the *BCS* Action alleges that Mr. Whiteley made defamatory statements about the underlying plaintiffs. Even if those alleged defamatory statements were actually made (something that has not been proven), it would not follow that that Mr. Whiteley "expected or intended" to cause any harm or injury with such statements. After all, even if alleged defamatory statements were made (which Mr. Whiteley disputes), any resulting injuries would not be expected or intended from Mr. Whiteley's standpoint if he had a good faith (but mistaken) belief that they were truthful. Under these circumstances, USAA lacks legitimate grounds to rely on the "Expected or Intended" injury exclusion in the Homeowners Policy. *See Shell Oil v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 748 (1993) ("The appropriate test for 'expected' damage is whether the insured knew or believed its conduct was substantially certain or highly likely to result in that kind of damage."); *accord Armstrong World Indus. Inc. v. Aetna Cas. & Sur. Co.*, 45 Cal. App. 4th 1, 72-73 (1996) ("[What is expected or intended is different from that which was reasonably foreseeable or which should have been known . . . . The insured may be negligent in failing to take precautions or to foresee the possibility of harm, yet insurance coverage protects the insured from his own lack of due care.").

Regardless, even if the "Expected or Intended" exclusion in the Homeowners Policy was a bar to coverage for the *BCS* Action (which, again, it is not), the fact remains that there is no such exclusion in the Umbrella Policy. Given that USAA included this exclusion in the Homeowners Policy, USAA's decision not to include the exclusion in the Umbrella Policy makes clear that it had no intention to limit coverage in that way. *See Fireman's Fund Ins. Cos. v. Atl. Richfield Co.*, 94 Cal. App. 4th 842, 852 (2001) ("several courts have observed an insurance company's failure to use available language to exclude certain types of liability gives rise to the inference that the parties intended not to so limit coverage"). Thus, USAA's denial of coverage under the Umbrella Policy is also incorrect. Because the *BCS* Action includes covered or potentially coverage allegations of "personal injury," and because no exclusion applies, USAA had and has a duty to defend Mr. Whiteley under the Umbrella Policy.

\*      \*      \*

For the above reasons, the *BCS* Action contains covered (or at least potentially covered) claims and allegations, and USAA's denial of coverage constitutes a clear breach of its duties. Please immediately confirm that USAA will withdraw its denial of coverage, honor its full obligations under the Policies and the law, and defend Mr. Whiteley in connection with the *BCS* Action.

**WHITELEY_CF_323**

USAA Confidential

John S. Kaczmarek
September 5, 2023
Page 8



     We look forward to hearing from you promptly.  In the meantime, Mr. Whiteley continues to reserve all rights and remedies.

Sincerely,

Shaun H. Crosner
Tae Andrews

WHITELEY_CF_324

USAA Confidential

0901119cb8892d56

# Exhibit "28"

**September 21, 2023 at 12:14 p.m. CT**    66822 - John Kaczmarek    Documentation Number 112

rcvd email, fax and mailed letter from Tae Andrews w/Pasich law firm who

is an insurance recovery counsel
letter included references denial letter that was previously sent
rqsting "immediately withdraw its wrongful denial and confirm that it
will honor all coverage obligations owed to Mr. Whiteley in connection
with
the BCS Action."


will fwd document to mco for further rvw and to discuss the next steps


**September 21, 2023 at 12:53**    67438 - Alisa Kuzma-Holmes    Documentation Number
**p.m. CT**                                                      113

┌────────────────────────────────┐
│ **Available Actions**           │
│ Claims Documentation            │
│ Start **N**ew Conversation      │
│ Refresh Page                    │
│ Close Page                      │
└────────────────────────────────┘

- mco doc file review
- NI attorney sent in a letter concerning the denial for duty to defend

- letter included references denial letter that was previously sent
requesting "immediately withdraw its wrongful denial and confirm that it
will honor all coverage obligations owed to Mr. Whiteley in connection
with the BCS Action."

- fh to send the letter to the OSC to review to determine if the
additional information would change opinion
- adv NI and the NI attorney will review with our OSC


**September 22, 2023 at 11:48**    66822 - John Kaczmarek    Documentation Number
**a.m. CT**                                                   115


sending email to OSC Mark Isreal @ Israel@dfis-law.com and attached a
copy of the letter from Pasich
rqst OSC review and verify if anything included in the letter changes
our opinion

sent acknowledgement letter to Pasich firm advising we rcvd their letter
and are having OSC review to determine if our opinion would change

WHITELEY_CF_035

# Exhibit "29"

**November 9, 2023 at 9:52 a.m.**     66822 - John Kaczmarek     Documentation Number
134

CT

email rcvd from OSC regarding rvw of ni's atty's request for denial
reversal

OSC Isreal response:

"While this matter is somewhat esoteric and complex, I believe a careful
review of the points raised by attorney Crosner indicates that his
arguments are factually and or legally insufficient to trigger coverage
under either policy issued to Mr. Whiteley. You will see the reasoning
for that conclusion explained in detail in the letter."

will draft letter and send to ni's atty

CLAIM SENT TO ISO

WHITELEY_CF_039

# Exhibit "30"

### DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP

ATTORNEYS AT LAW
1801 CENTURY PARK EAST
NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
-------
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807
DFIS-LAW.COM

MARK R. ISRAEL
Partner

EMAIL
Israel@dfis-law.com

November  , 2023

PASICH
ATTN: SHAUN CROSNER, ESQ.
1230 ROSECRANS AVENUE
MANHATTAN BEACH, CA 90266
VIA EMAIL: SCROSNER@PASICHLLP.COM

Re:    ***Breaking Code Silence v. Katherine McNamara, et. al.***
       Case No.:          2:22-cv-002052
       Insured:           Jeremy R Whiteley
       Claim number:      007778375–029
       Date of loss:      March 28, 2022 (F.R.O.)

Dear Mr. Crosner:

USAA Casualty Insurance Company ("USAA-CIC") has forwarded to me your letter of September 5, 2023 that responds to USAA-CIC's letter of May 17, 2022 which declined coverage for Mr. Whiteley in connection with the complaint entitled *Breaking Code Silence v. Katherine McNamara, et.al.*, U.S.D.C. Case No. 2:22-cv-002052.   The *Breaking Code Silence ("BCS")* lawsuit seeks damages, restitution, punitive damages, and injunctive relief arising out of alleged violations of the Computer Fraud & Abuse Act and the California Computer Data Access and Fraud Act as set forth at Penal Code section 502. The *BCS* complaint alleges "purposeful and unlawful conduct knowingly directed at BCS within the State of California," including "acts of cyber hacking" that violate provisions of the Computer Fraud & Abuse Act and California Penal Code section 502.

Your letter demands that USAA-CIC reverse its denial of coverage and assume the defense of Mr. Whiteley in connection with the *BCS* lawsuit.  We have carefully reviewed the issues raised by your correspondence as well as the federal court pleadings and Mr. Whiteley's USAA-CIC policies.  We find no covered allegations in the complaint pertaining to Mr. Whiteley that would trigger a duty to defend the lawsuit or to indemnify any of the damages alleged. Consequently, USAA-CIC will respectfully reaffirm its denial of coverage for this matter.  The basis for this determination is explained below.

Shaun Crosner, Esq.
November 8, 2023
Page 2

## FACTUAL BACKGROUND

USAA-CIC issued Unit-Owners Policy Number 00777 83 75 90A to Jeremy R
Whiteley. The insured location is 6721 E McDowell Rd, Unit 322C, Scottsdale, AZ 85257-3105.
The policy was in force from September 1, 2021 to September 1, 2022. Liability coverage is
provided through the Unit Owners – Homeowners Policy HO-6R (02) (07-08). The policy is
endorsed with the Sharing Economy Endorsement HO-HS (04-18) and Personal Injury Liability
HO-82 (07-08). The policy provides liability coverage with limits of $1,000,000 per occurrence.

USAA-CIC issued Personal Umbrella Policy number CIC 00777 83 75 70U, in
force from May 13, 2021 to May 13, 2022. This policy provides umbrella coverage above the Unit
Owners policy with limits of $5,000,000 per occurrence. Liability coverage is provided through
the Personal Umbrella Policy PU-2009 (07-09).

On March 28, 2022, BCS filed the complaint entitled *Breaking Code Silence v.
Katherine McNamara, et.al.*, U.S.D.C. Case No. 2:22-cv-002052. The defendants are Katherine
McNamara and Jeremy Whiteley as well as Does 1 through 50. The complaint alleges that the
federal District Court for the Central District of California has jurisdiction over Defendant
Whiteley due to "Whiteley's purposeful and unlawful conduct knowingly directed to BCS within
the State of California and in this District." (Complaint, para. 7.) The alleged conduct on the part
of Mr. Whiteley includes "acts of cyber hacking directed to BCS...." The complaint alleges that
Mr. Whiteley was a member of the BCS board for several months until June 28, 2021 at which
time he "terminated his relationship with BCS...." (Complaint, para. 11.) The complaint alleges
that on March 10, 2022, "using Defendant Whiteley's former administrative credentials, both
Defendants exercised an extreme act and maliciously accessed BCS's account with Google via the
Google Search Console.... without permission or authorization from BCS and caused the website
to be deindexed on Google. The effect of being deindexed is that no one could find BCS's Website
on the largest search engine." (Complaint, para. 36.) The complaint alleges that "Defendants
repeatedly, relentlessly, and maliciously attempted to remove and/or gain control of the BCS
Website and corresponding Google Webmaster Central permissions...." (Complaint, para. 39.)
The complaint alleges that in addition to "causing the BCS website to be deindexed, they have
attempted or succeeded in changing the content of the website." (Complaint, para. 43.) The
complaint alleges that "Defendants have acted intentionally, and with wanton and reckless
disregard for the members of the public that their conduct has and continues to harm, by
commandeering BCS's communications tools and ability to convey information across all of its
core online channels." (Complaint, para. 46.) The complaint alleges a first cause of action for
violation of the Computer Fraud & Abuse Act (18 U.S.C section 1030, et. seq.) based on Defendant
Whiteley "intentionally accessing a computer used for interstate commerce or communication
without authorization or by exceeding authorized access to such a computer, and by obtaining
information from such a computer, including but not limited to, accessing BCS's Google accounts
to cause the website to be deindexed." (Complaint, para. 56.) The complaint alleges a second cause

Shaun Crosner, Esq.
November 8, 2023
Page 3

of action for Violation of California Penal Code section 502. The complaint seeks injunctive relief
as well as treble damages, restitution, and punitive and exemplary damages.

## PERTINENT POLICY LANGUAGE

The insuring provision of the Homeowners 6R(02) Unit-Owners Form (07-08) as
modified by the Personal Injury Endorsement provides, in pertinent part, as follows:

### COVERAGE E - Personal Liability

If a claim is made or a suit is brought against any **"insured"** for
**"damages"** because of **"bodily injury"**, **"property damage"** or
**"personal injury"** caused by an **"occurrence"** to which this
coverage applies, we will:

1.  Pay up to our limit of liability for the **"damages"** for which
    the "**insured**" is legally liable; and

2.  Provide a defense at our expense by counsel of our choice,
    even if the suit is groundless, false or fraudulent. We may
    investigate and settle any claim or suit that we decide is
    appropriate. Our duty to settle or defend ends when the
    amount we pay for "**damages**" resulting from the
    "**occurrence**" equals our limit of liability. This coverage
    does not provide defense to any "**insured**" for criminal
    prosecution or proceedings.

We will not pay for punitive **"damages"** or exemplary
**"damages"**, fines or penalties.

The Unit-Owners Form and the Personal Injury Endorsement include the following
pertinent definitions:

3.  **"Bodily injury"** means physical injury, sickness or disease,
    including required care, loss of services and death that
    results.

    **"Bodily injury"** does not include mental injuries such as:
    emotional distress, mental anguish, humiliation, mental
    distress, or any similar injury unless it arises out of physical
    injury to the person claiming a mental injury.

                    * * *

USAA Classification: Confidential

USAA Confidential

**WHITELEY_CF_377**

**0901119cb9a5823f**

Shaun Crosner, Esq.
November 8, 2023
Page 4

6.    "**Damages**" means compensatory damages the "**insured**" is
legally obligated to pay as a result of "**bodily injury**" or
"**property damage**" covered by this insurance, but does not
include punitive, exemplary or multiple damages.

\* \* \*

18.    "**Property damage**" means physical damage to or
destruction of tangible property, including loss of use of this
property.

\* \* \*

"**Personal injury**" means:

a.  Wrongful eviction, wrongful entry.
b.  Libel.
c.  Slander.
d.  Defamation of character.
e.  Invasion of rights of privacy.
f.  Wrongful detention, false arrest or false imprisonment.
g.  Humiliation.
h.  Assault and battery if committed by any "insured" or at
his direction to protect persons or property. This applies
only when the conduct is not criminal.

"**Personal Injury**" only applies when the conduct is not
malicious or criminal in nature.

"**Occurrence**" means:

a.  An accident, including continuous or repeated exposure
to substantially the same generally harmful conditions,
which results, during the policy period, in "**bodily
injury**" or "**property damage**".

b.  An event or series of events, including injurious
exposure to conditions, proximately caused by an act or
omission of any "**insured**", which results, during the
policy period, in "**personal injury**", neither expected
nor intended from the standpoint of the "**insured**".

USAA Classification: Confidential

WHITELEY_CF_378

0901119cb9a5823f

USAA Confidential

Shaun Crosner, Esq.
November 8, 2023
Page 5

       The Unit-Owners Form and Personal Injury Endorsement exclude coverage, in pertinent part, as follows:

1. **Coverage E – Personal Liability** and **Coverage F – Medical Payments to Others,** with respect **to** personal injury only, paragraph a. is deleted and replace by:

   a. which is expected or intended by the **"insured"**;

2. **Coverage E – Personal Liability** does not apply to:

   g. Punitive or exemplary damages, fines, or penalties.

The Personal Injury Endorsement excludes coverage, in pertinent part, as follows:

The following exclusions are added with respect to **"personal injury"**:

    **5**. Arising out of libel, slander or defamation of character that is published by the **"insured"** on the internet.

       The Insuring Agreement of the Personal Umbrella Policy provides in relevant part as follows:

A. Damages

   1. **We** will pay for damages, in excess of the **retained limit**, that an **insured** becomes legally obligated to pay because of **bodily injury** or **property damage** resulting from an **occurrence**.

   2. **We** will pay for damages that an **insured** becomes legally obligated to pay because of **personal injury**.

B. Defense

   1. If a claim is made or a suit is brought against any insured for bodily injury or property damage arising from an occurrence to which this policy applies, or for personal injury to which this policy applies, we will provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.

USAA Classification: Confidential

**WHITELEY_CF_379**

0901119cb9a5823f

USAA Confidential

Shaun Crosner, Esq.
November 8, 2023
Page 6

However, **we** will not provide a defense:

a. To any **insured** for criminal prosecution or proceedings; or

b. If the **occurrence** or offense is covered by **underlying insurance** or any other liability insurance available to any **insured**.

\* \* \* \*

The Personal Umbrella Policy includes the following pertinent definitions:

C. **"Bodily injury."**

1. **"Bodily injury"** means bodily harm, sickness, disease or death.

2. **"Bodily injury"** does not include mental injury such as emotional distress, mental anguish, humiliation, mental distress, or any similar injury unless it arises out of physical injury to some person.

N. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in **bodily injury** or **property damage**.

O. **"Personal injury"** means injury arising out of one or more of the offenses listed below, but only if the **insured's** act occurred during the policy period. A series of similar or related acts by an **insured**, multiple publications of the same statement, and continuous or repeated injury from the same act or publication, will be considered a single offense and injury during the single policy period in which the first act or publication occurred.

USAA Classification: Confidential

**USAA Confidential**

**WHITELEY_CF_380**

0901119cb9a5823f

Shaun Crosner, Esq.
November 8, 2023
Page 7

1. Oral, written or electronic publication of a false statement that defames a person's or organization's character or reputation.

2. Oral, written or electronic publication of material that violates a person's right of privacy by disclosing private facts.

3. Malicious prosecution.

4. False arrest, false imprisonment, wrongful detention.

5. When committed by or on behalf of the owner, landlord or lessor of a room, dwelling or premises that a person occupies:

   a. Wrongful eviction;

   b. Wrongful entry; or

   c. Invasion of the right of private occupancy.

6. Assault and battery if committed by any **insured**, or at his direction, to protect persons or property. This applies only when the conduct is not criminal.

**R.** **"Property damage."**

1. **"Property damage"** means physical damage to or destruction of tangible property including loss of use of this property.

2. For purposes of this policy, electronic data is not tangible property. Electronic data means information, facts or programs:

   a. Stored as or on;

   b. Created or used on; or

   c. Transmitted to or from:

USAA Classification: Confidential

**USAA Confidential**

**WHITELEY_CF_381**

0901119cb9a5823f

Shaun Crosner, Esq.
November 8, 2023
Page 8

> computer software, including systems and
> applications software, hard or floppy disks, CD-
> ROMS, tapes, drives, cells, data processing devices
> or any other media which are used with electronically
> controlled equipment.

The Personal Umbrella Policy includes the following pertinent exclusions:

A.  This insurance does not apply to:

   3.  Punitive or exemplary damages, fines or penalties.

D.  This insurance does not apply to **personal injury** which results from a false statement if done by or at the direction of any **insured** with knowledge that the statement was false, or made with reckless disregard for the truth.

G.  This insurance does not apply to **bodily injury**, **property damage** or **personal injury**:

\* \* \* \*

   7.  Arising out of a criminal act or omission by, or with the knowledge or consent of, any **insured**.

## COVERAGE DETERMINATION

Based upon the foregoing information and policy language, USAA-CIC determined that the policies do not provide coverage for the BCS lawsuit for the following reasons:

First, the policies provide coverage for damages because of "**bodily injury**" and **"property damage"** as defined above. The *BCS* lawsuit, however, solely concerns economic damages allegedly suffered by *BCS* as a result of the conduct alleged in the complaint. Economic harm of this type does not fall within the insuring provisions of the policies for **"bodily injury"** and **"property damage"**. (See, e.g., *Giddings v. Industrial Indemnity Co.* (1980) 112 Cal.App.3d 218 ["Strictly economic losses like lost profits, loss of goodwill, loss of the anticipated benefit of a bargain, and loss of an investment do not constitute damage or injury to tangible property covered by a comprehensive general liability policy."].)  Cases interpreting the phrase "tangible property" in an insurance policy hold that such phrase does not include coverage for economic interests or property rights (such as damages for lost profits or loss of investment). (See *Fresno Economy Import Used Cars, Inc. v. United States Fid. & Guar. Co.* (1977) 76 Cal.App.3d 272; *Allstate Ins.*

USAA Classification: Confidential
0901119cb9a5823f
**USAA Confidential**

Shaun Crosner, Esq.
November 8, 2023
Page 9

*Co. v. Interbank Financial Services* (1989) 215 Cal.App.3d 825; and *Warner v. Fire Ins. Exchange* (1991) 230 Cal.App.3d 1029.) Data is not "tangible property" within the meaning of the **"property damage"** definition. "Tangible property" is limited to items that can be "touched, seen and smelled." (See *Kazi v State Farm Fire & Casualty Company* (2001) 24 Cal.4th 871; *Ward Gen. Ins. Services, Inc. v. Employers Fire Ins. Co.* (2003) 114 Cal.App.4th 548.)

Second, the policies provide coverage only for **"damages"** due to **"bodily injury"** and **"property damage"** that are caused by an **"occurrence"** which means an accident. The *BCS* complaint does not allege accidental conduct. The *BCS* complaint alleges damage due to intentional and knowing violations of the Computer Fraud & Abuse Act and the California Computer Data Access and Fraud Act. Any damages that may result from such conduct does not result from an accident. (*Chatton v. National Union Fire Ins. Co.* (1992) 10 Cal.App.4th 846, 861; *Miller v. Western Gen. Agency, Inc.* (1996) 41 Cal.App.4th 1144, 1150.)

Third, the complaint alleges that defendants committed various violations of the Computer Fraud & Abuse Act and the California Computer Data Access and Fraud Act. The complaint does not allege any of the **"personal injury"** offenses listed in the Personal Injury Endorsement and/or Personal Umbrella Policy.

Fourth, the policy excludes coverage for damages intended or reasonably expected by any insured. The Personal Injury Endorsement requires that any covered Personal Injury offense must be neither expected nor intended from the standpoint of the **"insured".** Even if the complaint could be said to allege a "personal injury" offense, which we do not believe it does, the acts alleged in the complaint were committed knowingly and intentionally according to the allegations and based upon the requirements of the respective statures, and therefore cannot be said to have been unexpected or unintended from the standpoint of the insured. We conclude that these policy provisions would preclude coverage based on the nature of the conduct alleged in the complaint.

## CHALLENGE TO COVERAGE DETERMINATION AND RESPONSE

Your letter contends that USAA-CIC has a duty to defend Mr. Whiteley because the BCS Action alleges potentially covered claims for "personal injury" allegedly caused by Mr. Whiteley. According to your letter, "the BCS Action alleges multiple 'personal injury' offenses, including libel, slander, and/or defamation of character, as well as invasion of rights of privacy."

Your correspondence points to the following allegation: "the BCS Action alleges that Ms. McNamara 'started creating tension on BCS's board and began regularly spreading gossip and slanderous lies about fellow board members among volunteers and in the survivor community.' See id. para 27."

Response: This allegation does not trigger coverage under Mr. Whiteley's policies. This allegation concerns statements made by Ms. McNamara, not Mr. Whiteley. Moreover, this

USAA Classification: Confidential

**USAA Confidential**

**WHITELEY_CF_383**

0901119cb9a5823f

Shaun Crosner, Esq.
November 8, 2023
Page 10

statement refers to statements "about fellow board members" and does not specifically refer to any
statements about the corporate plaintiff BCS. (See *Total Call International, Inc. v. Peerless Ins.*
Co. (2010) 181 Cal.App.4[th] 161, 170 [holding that a complaint that does not include a defamatory
statement that "specifically references" the underlying plaintiff does not trigger coverage for the
personal injury offense of "[o]ral or written publication, in any manner, of material that slanders
or libels a person or organization or disparages a person's or organization's goods, products or
services."].)

Your correspondence points to the following allegation: "The BCS Action further
alleges that Ms. McNamara and her colleagues at UnSilenced, including Mr. Whiteley, 'made
defamatory statements to valued partners, resulting in strained and, in some cases, terminated
valued relationships.' See id. paras 27, 45."

Response: There are multiple levels of unsupported speculation in this assertion.
First, the complaint *does not* allege that Mr. Whiteley formed UnSilenced or was ever a member
of that organization. ("Defendant McNamara and former BCS volunteers, formed UnSilenced…."
Complaint, para. 33.) Second, the complaint *does not* allege that Mr. Whiteley made any
defamatory statements about BCS. ("Defendant McNamara and her colleagues at UnSilenced
made defamatory statements to valued partners…." Complaint, para. 45.) The specific references
to Mr. Whiteley in other parts of the complaint demonstrate that if plaintiff had factual information
to support a defamation allegation against Mr. Whiteley the complaint would so allege. It does
not. The duty to defend is not triggered by mere speculation "about extraneous 'facts' regarding
potential liability or ways in which the third-party claimant might [have] amend[ed] its complaint
at some future date." (*Gunderson v. Fire Ins. Exchange* (1995) 37 Cal.App.4th 1106, 1114.)

Your correspondence points to the following allegation: The BCS Action also
alleges that Ms. McNamara and Mr. Whiteley downloaded BCS's 'files and confidential data,
including an entire Google Drive, without BCS's authority or permission.' See id. para. 30."

Response: the complaint *does not* allege that Mr. Whiteley downloaded
confidential files and information from BCS's computers. To the contrary, the complaint alleges:
"McNamara conspired with other volunteers and employees of BCS, including Mary "Meg"
Appelgate (nee Gochnauer) and Caroline (Cole) Lorson, to download BCS's files and data…."
(Complaint, para. 30.) Once again Mr. Whiteley is not mentioned and your assertion to the contrary
is speculative at best. The duty to defend is not triggered by mere speculation "about extraneous
'facts' regarding potential liability or ways in which the third-party claimant might [have]
amend[ed] its complaint at some future date." (*Gunderson v. Fire Ins. Exchange* (1995) 37
Cal.App.4th 1106, 1114.)

Your correspondence points to the following allegation: "that Mr. Whiteley
violated the Computer Fraud & Abuse Act (the "CFAA") by accessing BCS's computers "without
authorization.' See id. para. 56."

USAA Classification: Confidential

**WHITELEY_CF_384**

0901119cb9a5823f

USAA Confidential

Shaun Crosner, Esq.
November 8, 2023
Page 11

Response: There is no allegation in the complaint that Mr. Whiteley accessed BCS's *private* information. The complaint alleges that the BCS computer was used for interstate commerce and Mr. Whiteley accessed BCS's Google accounts to cause the website to be deindexed. (Complaint, para. 56.) Furthermore, the complaint does not allege a cause or action for invasion of privacy and there is no known *corporate* cause of action under California law for invasion of privacy in any event. (See *Zurich American Ins. Co. v. Superior Court* (2007) 155 Cal.App.4th 1485, 1504 ["Zurich acknowledges that corporations do not have a right to privacy under article I, section 1 of the California Constitution."]; *Ion Equipment Corp. v. Nelson* (1980) 11 Cal.App.3d 868, 878-879 ["It is generally agreed that the right to privacy is one pertaining only to individuals, and that a corporation cannot claim it as such. (Prosser, Torts, supra (4th ed.) § 117, p. 815.) This is because the tort is of a personal character "[concerning] one's feelings and one's own peace of mind." (*City of Carmel-by-the-Sea v. Young* (1970) 2 Cal.3d 259, 268 [37 A.L.R.3d 1313]; see also, *Fairfield v. American Photocopy etc. Co.* (1955) 138 Cal.App.2d 82, 86 [291 P.2d 194].) A corporation is a fictitious person and has no "feelings" which may be injured in the sense of the tort. In addition, there are no California cases recognizing that a corporation enjoys the right of privacy. Consequently, no case law exists indicating that a corporation has a viable cause of action for invasion of privacy."].)

Finally, it must be noted that your discussion regarding the "expected or intended exclusion" is inaccurate. The "expected or intended" limitation with respect to personal injury offenses in the Unit-Owners form is incorporated into the definition of "occurrence" and hence is part of the insuring provision with respect to such offenses:

> **"Occurrence"** means:
>
> a.  An accident, including continuous or repeated exposure to substantially the same generally harmful conditions, which results, during the policy period, in **"bodily injury"** or **"property damage"**.
>
> b.  An event or series of events, including injurious exposure to conditions, proximately caused by an act or omission of any **"insured"**, which results, during the policy period, in **"personal injury"**, neither expected nor intended from the standpoint of the **"insured"**.

Unlike general battery claims such as discussed in your letter, violations of the Computer Fraud & Abuse Act can *only* be committed intentionally. U.S.C. section 1030(a)(2)(c), for example, applies to "Whoever *intentionally* accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer." Similarly, Penal Code section 502 is a penal statute that applies to one who "Knowingly and without permission uses or causes to be used computer services." Consequently, any recovery

USAA Classification: Confidential

0901119cb9a5823f

**USAA Confidential**

**WHITELEY_CF_385**

Shaun Crosner, Esq.
November 8, 2023
Page 12

available to BCS under the complaint could not be based on "unintended or unexpected" conduct on the part of Mr. Whiteley that caused any of the enumerated personal injury offenses.

## CONCLUSION

We hope this letter is clear. However, if you have questions, or have any additional information you believe USAA-CIC should consider, please feel free to contact me. USAA-CIC does not by this correspondence intend to waive any coverage issue or defense not expressly set forth above.

We are required by California Insurance Regulations, Section 2695.7(b)(3), to advise you that if you believe this claim, or any part of this claim, has been wrongfully denied or rejected, you may have the matter reviewed by the California Department of Insurance, Claims Service Bureau, 300 South Spring Street, Los Angeles, California 90013, telephone 1-800-927-4357.

Very truly yours,
DANIELS, FINE, ISRAEL
SCHONBUCH & LEBOVITS, LLP

*Mark Israel*

Mark R. Israel

USAA Classification: Confidential

USAA Confidential

0901119cb9a5823f

# Exhibit "31"

**From: USAA Claims<44phd5cc2mm3@claims.usaa.com>**

**Sent: Thursday, November 09, 2023 10:54 AM**

**To: SCrosner@pasichillp.com**

**Subject: Information About Your USAA Claim**

**WHITELEY_CF_364**

**USAA Confidential**

0901119cb9a5e255

 USAA Casualty Insurance Company

# CLAIM INFORMATION

PASICH
1230 ROSECRANS AVE, STE 690
MANHATTAN BEACH CA 90266

 **Review Information About Your Claim**

November 9, 2023

Dear Shaun Crosner and Tae Andrews,

I'm writing regarding the following claim.

| | |
|---|---|
| USAA policyholder: | Jeremy R Whiteley |
| Claim number: | 007778375–029 |
| Date of loss: | March 10, 2022 |
| Loss location: | Unknown, Arizona |
| Case No: | 2:22-cv-002052 |

Below is the response from our outside counsel attorney Mark Israel regarding your letter dated September 5, 2023.

USAA Casualty Insurance Company ("USAA-CIC") has forwarded to me your letter of September 5, 2023 that responds to USAA-CIC's letter of May 17, 2022 which declined coverage for Mr. Whiteley in connection with the complaint entitled *Breaking Code Silence v. Katherine McNamara, et.al*., U.S.D.C. Case No. 2:22-cv-002052.   The *Breaking Code Silence* ("*BCS*") lawsuit seeks damages, restitution, punitive damages, and injunctive relief arising out of alleged violations of the Computer Fraud & Abuse Act and the California Computer Data Access and Fraud Act as set forth at Penal Code section 502. The *BCS* complaint alleges "purposeful and unlawful conduct knowingly directed at BCS within the State of California," including "acts of cyber hacking" that violate provisions of the Computer Fraud & Abuse Act and California Penal Code section 502.

Your letter demands that USAA-CIC reverse its denial of coverage and assume the defense of Mr. Whiteley in connection with the *BCS* lawsuit.  We have carefully reviewed the issues raised by your correspondence as well as the federal court pleadings and Mr. Whiteley's USAA-CIC policies.  We find no covered allegations in the complaint pertaining to Mr. Whiteley that would trigger a duty to defend the lawsuit or to indemnify any of the damages alleged. Consequently, USAA-CIC will respectfully reaffirm its denial of coverage for this matter.  The basis for this determination is explained below.

**FACTUAL BACKGROUND**

007778375 - 029 - 8710 - 05                                                                 54577-1121

USAA Confidential

0901119cb9a5e255

USAA-CIC issued Unit-Owners Policy Number 00777 83 75 90A to Jeremy R Whiteley. The insured location is 6721 E McDowell Rd, Unit 322C, Scottsdale, AZ 85257-3105. The policy was in force from September 1, 2021 to September 1, 2022. Liability coverage is provided through the Unit Owners – Homeowners Policy HO-6R (02) (07-08). The policy is endorsed with the Sharing Economy Endorsement HO-HS (04-18) and Personal Injury Liability HO-82 (07-08). The policy provides liability coverage with limits of $1,000,000 per occurrence.

USAA-CIC issued Personal Umbrella Policy number CIC 00777 83 75 70U, in force from May 13, 2021 to May 13, 2022. This policy provides umbrella coverage above the Unit Owners policy with limits of $5,000,000 per occurrence. Liability coverage is provided through the Personal Umbrella Policy PU-2009 (07-09).

On March 28, 2022, BCS filed the complaint entitled *Breaking Code Silence v. Katherine McNamara, et.al.*, U.S.D.C. Case No. 2:22-cv-002052. The defendants are Katherine McNamara and Jeremy Whiteley as well as Does 1 through 50. The complaint alleges that the federal District Court for the Central District of California has jurisdiction over Defendant Whiteley due to "Whiteley's purposeful and unlawful conduct knowingly directed to BCS within the State of California and in this District." (Complaint, para. 7.) The alleged conduct on the part of Mr. Whiteley includes "acts of cyber hacking directed to BCS…." The complaint alleges that Mr. Whiteley was a member of the BCS board for several months until June 28, 2021 at which time he "terminated his relationship with BCS…." (Complaint, para. 11.) The complaint alleges that on March 10, 2022, "using Defendant Whiteley's former administrative credentials, both Defendants exercised an extreme act and maliciously accessed BCS's account with Google via the Google Search Console…. without permission or authorization from BCS and caused the website to be deindexed on Google. The effect of being deindexed is that no one could find BCS's Website on the largest search engine." (Complaint, para. 36.) The complaint alleges that "Defendants repeatedly, relentlessly, and maliciously attempted to remove and/or gain control of the BCS Website and corresponding Google Webmaster Central permissions…." (Complaint, para. 39.) The complaint alleges that in addition to "causing the BCS website to be deindexed, they have attempted or succeeded in changing the content of the website." (Complaint, para. 43.) The complaint alleges that "Defendants have acted intentionally, and with wanton and reckless disregard for the members of the public that their conduct has and continues to harm, by commandeering BCS's communications tools and ability to convey information across all of its core online channels." (Complaint, para. 46.) The complaint alleges a first cause of action for violation of the Computer Fraud & Abuse Act (18 U.S.C section 1030, et. seq.) based on Defendant Whiteley "intentionally accessing a computer used for interstate commerce or communication without authorization or by exceeding authorized access to such a computer, and by obtaining information from such a computer, including but not limited to, accessing BCS's Google accounts to cause the website to be deindexed." (Complaint, para. 56.) The complaint alleges a second cause of action for Violation of California Penal Code section 502. The complaint seeks injunctive relief as well as treble damages, restitution, and punitive and exemplary damages.

## PERTINENT POLICY LANGUAGE

The insuring provision of the Homeowners 6R(02) Unit-Owners Form (07-08) as modified by the Personal Injury Endorsement provides, in pertinent part, as follows:

### COVERAGE E - Personal Liability

If a claim is made or a suit is brought against any **"insured"** for **"damages"** because of **"bodily injury"**, **"property damage"** or **"personal injury"** caused by an **"occurrence"** to which this coverage applies, we will:

1. Pay up to our limit of liability for the **"damages"** for which the "**insured**" is legally liable; and

0901119cb9a5e255                          USAA Confidential

2.  Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.  We may investigate and settle any claim or suit that we decide is appropriate.  Our duty to settle or defend ends when the amount we pay for "**damages**" resulting from the "**occurrence**" equals our limit of liability.  This coverage does not provide defense to any "**insured**" for criminal prosecution or proceedings.

We will not pay for punitive **"damages"** or exemplary **"damages"**, fines or penalties.

The Unit-Owners Form and the Personal Injury Endorsement include the following pertinent definitions:

3.  **"Bodily injury"** means physical injury, sickness or disease, including required care, loss of services and death that results.

**"Bodily injury"** does not include mental injuries such as: emotional distress, mental anguish, humiliation, mental distress, or any similar injury unless it arises out of physical injury to the person claiming a mental injury.

\* \* \*

6.  "**Damages**" means compensatory damages the "**insured**" is legally obligated to pay as a result of "**bodily injury**" or "**property damage**" covered by this insurance, but does not include punitive, exemplary or multiple damages.

\* \* \*

18.  **"Property damage"** means physical damage to or destruction of tangible property, including loss of use of this property.

\* \* \*

**"Personal injury"** means:

a.  Wrongful eviction, wrongful entry.
b.  Libel.
c.  Slander.
d.  Defamation of character.
e.  Invasion of rights of privacy.
f.  Wrongful detention, false arrest or false imprisonment.
g.  Humiliation.
h.  Assault and battery if committed by any "insured" or at his direction to protect persons or property. This applies only when the conduct is not criminal.

**"Personal Injury"** only applies when the conduct is not malicious or criminal in nature.

**"Occurrence"** means:

a.  An accident, including continuous or repeated exposure to substantially the same generally harmful conditions, which results, during the policy period, in **"bodily injury"** or **"property damage"**.

0901119cb9a5e255                        USAA Confidential

b. An event or series of events, including injurious exposure to conditions, proximately caused by an act or omission of any **"insured"**, which results, during the policy period, in **"personal injury"**, neither expected nor intended from the standpoint of the **"insured"**.

The Unit-Owners Form and Personal Injury Endorsement exclude coverage, in pertinent part, as follows:

1. **Coverage E – Personal Liability** and **Coverage F – Medical Payments to Others,** with respect **to** personal injury only, paragraph a. is deleted and replace by:

   a. which is expected or intended by the **"insured"**;

2. **Coverage E – Personal Liability** does not apply to:

   g. Punitive or exemplary damages, fines, or penalties.

The Personal Injury Endorsement excludes coverage, in pertinent part, as follows:

The following exclusions are added with respect to **"personal injury"**:

5. Arising out of libel, slander or defamation of character that is published by the **"insured"** on the internet.

The Insuring Agreement of the Personal Umbrella Policy provides in relevant part as follows:

A. <u>Damages</u>

   1. **We** will pay for damages, in excess of the **retained limit**, that an **insured** becomes legally obligated to pay because of **bodily injury** or **property damage** resulting from an **occurrence**.

   2. **We** will pay for damages that an **insured** becomes legally obligated to pay because of **personal injury**.

B. <u>Defense</u>

   1. If a claim is made or a suit is brought against any insured for bodily injury or property damage arising from an occurrence to which this policy applies, or for personal injury to which this policy applies, we will provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.

   However, **we** will not provide a defense:

   a. To any **insured** for criminal prosecution or proceedings; or

   b. If the **occurrence** or offense is covered by **underlying insurance** or any other liability insurance available to any **insured**.

\* \* \* \*

USAA Confidential

The Personal Umbrella Policy includes the following pertinent definitions:

C. **"Bodily injury."**

    1. **"Bodily injury"** means bodily harm, sickness, disease or death.

    2. **"Bodily injury"** does not include mental injury such as emotional distress, mental anguish, humiliation, mental distress, or any similar injury unless it arises out of physical injury to some person.

N. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in **bodily injury** or **property damage**.

O. **"Personal injury"** means injury arising out of one or more of the offenses listed below, but only if the **insured's** act occurred during the policy period. A series of similar or related acts by an **insured**, multiple publications of the same statement, and continuous or repeated injury from the same act or publication, will be considered a single offense and injury during the single policy period in which the first act or publication occurred.

    1. Oral, written or electronic publication of a false statement that defames a person's or organization's character or reputation.

    2. Oral, written or electronic publication of material that violates a person's right of privacy by disclosing private facts.

    3. Malicious prosecution.

    4. False arrest, false imprisonment, wrongful detention.

    5. When committed by or on behalf of the owner, landlord or lessor of a room, dwelling or premises that a person occupies:

        a. Wrongful eviction;

        b. Wrongful entry; or

        c. Invasion of the right of private occupancy.

    6. Assault and battery if committed by any **insured**, or at his direction, to protect persons or property. This applies only when the conduct is not criminal.

R. **"Property damage."**

0901119cb9a5e255

USAA Confidential

1. **"Property damage"** means physical damage to or destruction of tangible property including loss of use of this property.

2. For purposes of this policy, electronic data is not tangible property. Electronic data means information, facts or programs:

   a. Stored as or on;

   b. Created or used on; or

   c. Transmitted to or from:

   computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

The Personal Umbrella Policy includes the following pertinent exclusions:

A. This insurance does not apply to:

   3. Punitive or exemplary damages, fines or penalties.

D. This insurance does not apply to **personal injury** which results from a false statement if done by or at the direction of any **insured** with knowledge that the statement was false, or made with reckless disregard for the truth.

G. This insurance does not apply to **bodily injury**, **property damage** or **personal injury**:

   \* \* \* \*

   7. Arising out of a criminal act or omission by, or with the knowledge or consent of, any **insured**.

## COVERAGE DETERMINATION

Based upon the foregoing information and policy language, USAA-CIC determined that the policies do not provide coverage for the BCS lawsuit for the following reasons:

First, the policies provide coverage for damages because of "**bodily injury**" and "**property damage**" as defined above.  The *BCS* lawsuit, however, solely concerns economic damages allegedly suffered by *BCS* as a result of the conduct alleged in the complaint. Economic harm of this type does not fall within the insuring provisions of the policies for **"bodily injury"** and **"property damage"**. (See, e.g., *Giddings v. Industrial Indemnity Co.* (1980) 112 Cal.App.3d 218 ["Strictly economic losses like lost profits, loss of goodwill, loss of the anticipated benefit of a bargain, and loss of an investment do not constitute damage or injury to tangible property covered by a comprehensive general liability policy."].)  Cases interpreting the phrase "tangible property" in an insurance policy hold that such phrase does not include coverage for economic interests or property rights (such as damages for lost profits or loss of investment). (See *Fresno Economy Import Used Cars, Inc. v. United States Fid. & Guar. Co.* (1977) 76 Cal.App.3d 272; *Allstate Ins. Co. v. Interbank Financial Services* (1989) 215

007778375 - 029 - 8710 - 05

54577-1121

**WHITELEY_CF_370**
Page 6 of 9

0901119cb9a5e255

USAA Confidential

Cal.App.3d 825; and *Warner v. Fire Ins. Exchange* (1991) 230 Cal.App.3d 1029.) Data is not "tangible property" within the meaning of the **"property damage"** definition. "Tangible property" is limited to items that can be "touched, seen and smelled." (See *Kazi v State Farm Fire & Casualty Company* (2001) 24 Cal.4th 871; *Ward Gen. Ins. Services, Inc. v. Employers Fire Ins. Co.* (2003) 114 Cal.App.4th 548.)

Second, the policies provide coverage only for **"damages"** due to **"bodily injury"** and **"property damage"** that are caused by an **"occurrence"** which means an accident. The *BCS* complaint does not allege accidental conduct. The *BCS* complaint alleges damage due to intentional and knowing violations of the Computer Fraud & Abuse Act and the California Computer Data Access and Fraud Act. Any damages that may result from such conduct does not result from an accident. (*Chatton v. National Union Fire Ins. Co.* (1992) 10 Cal.App.4th 846, 861; *Miller v. Western Gen. Agency, Inc.* (1996) 41 Cal.App.4th 1144, 1150.)

Third, the complaint alleges that defendants committed various violations of the Computer Fraud & Abuse Act and the California Computer Data Access and Fraud Act. The complaint does not allege any of the **"personal injury"** offenses listed in the Personal Injury Endorsement and/or Personal Umbrella Policy.

Fourth, the policy excludes coverage for damages intended or reasonably expected by any insured. The Personal Injury Endorsement requires that any covered Personal Injury offense must be neither expected nor intended from the standpoint of the **"insured".** Even if the complaint could be said to allege a "personal injury" offense, which we do not believe it does, the acts alleged in the complaint were committed knowingly and intentionally according to the allegations and based upon the requirements of the respective statures, and therefore cannot be said to have been unexpected or unintended from the standpoint of the insured. We conclude that these policy provisions would preclude coverage based on the nature of the conduct alleged in the complaint.

## CHALLENGE TO COVERAGE DETERMINATION AND RESPONSE

Your letter contends that USAA-CIC has a duty to defend Mr. Whiteley because the BCS Action alleges potentially covered claims for "personal injury" allegedly caused by Mr. Whiteley. According to your letter, "the BCS Action alleges multiple 'personal injury' offenses, including libel, slander, and/or defamation of character, as well as invasion of rights of privacy."

Your correspondence points to the following allegation: "the BCS Action alleges that Ms. McNamara 'started creating tension on BCS's board and began regularly spreading gossip and slanderous lies about fellow board members among volunteers and in the survivor community.' See id. para 27."

Response: This allegation does not trigger coverage under Mr. Whiteley's policies. This allegation concerns statements made by Ms. McNamara, not Mr. Whiteley. Moreover, this statement refers to statements "about fellow board members" and does not specifically refer to any statements about the corporate plaintiff BCS. (See *Total Call International, Inc. v. Peerless Ins.* Co. (2010) 181 Cal.App.4th 161, 170 [holding that a complaint that does not include a defamatory statement that "specifically references" the underlying plaintiff does not trigger coverage for the personal injury offense of "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services."].)

Your correspondence points to the following allegation: "The BCS Action further alleges that Ms. McNamara and her colleagues at UnSilenced, including Mr. Whiteley, 'made defamatory statements to valued partners, resulting in strained and, in some cases, terminated valued relationships.' See id. paras 27, 45."

Response: There are multiple levels of unsupported speculation in this assertion. First, the complaint ***does not*** allege that Mr. Whiteley formed UnSilenced or was ever a member of that organization.

USAA Confidential

("Defendant McNamara and former BCS volunteers, formed UnSilenced…." Complaint, para. 33.) Second, the complaint ***does not*** allege that Mr. Whiteley made any defamatory statements about BCS. ("Defendant McNamara and her colleagues at UnSilenced made defamatory statements to valued partners…." Complaint, para. 45.) The specific references to Mr. Whiteley in other parts of the complaint demonstrate that if plaintiff had factual information to support a defamation allegation against Mr. Whiteley the complaint would so allege.  It does not. The duty to defend is not triggered by mere speculation "about extraneous 'facts' regarding potential liability or ways in which the third-party claimant might [have] amend[ed] its complaint at some future date." (*Gunderson v. Fire Ins. Exchange* (1995) 37 Cal.App.4th 1106, 1114.)

Your correspondence points to the following allegation: The BCS Action also alleges that Ms. McNamara and Mr. Whiteley downloaded BCS's 'files and confidential data, including an entire Google Drive, without BCS's authority or permission.' See id. para. 30."

Response: the complaint ***does not*** allege that Mr. Whiteley downloaded confidential files and information from BCS's computers. To the contrary, the complaint alleges: "McNamara conspired with other volunteers and employees of BCS, including Mary "Meg" Appelgate (nee Gochnauer) and Caroline (Cole) Lorson, to download BCS's files and data…." (Complaint, para. 30.) Once again Mr. Whiteley is not mentioned and your assertion to the contrary is speculative at best. The duty to defend is not triggered by mere speculation "about extraneous 'facts' regarding potential liability or ways in which the third-party claimant might [have] amend[ed] its complaint at some future date." (*Gunderson v. Fire Ins. Exchange* (1995) 37 Cal.App.4th 1106, 1114.)

Your correspondence points to the following allegation: "that Mr. Whiteley violated the Computer Fraud & Abuse Act (the "CFAA") by accessing BCS's computers "without authorization.' See id. para. 56."

Response: There is no allegation in the complaint that Mr. Whiteley accessed BCS's ***private*** information.  The complaint alleges that the BCS computer was used for interstate commerce and Mr. Whiteley accessed BCS's Google accounts to cause the website to be deindexed. (Complaint, para. 56.) Furthermore, the complaint does not allege a cause or action for invasion of privacy and there is no known ***corporate*** cause of action under California law for invasion of privacy in any event. (See *Zurich American Ins. Co. v. Superior Court* (2007) 155 Cal.App.4th 1485, 1504 ["Zurich acknowledges that corporations do not have a right to privacy under article I, section 1 of the California Constitution."]; *Ion Equipment Corp. v. Nelson* (1980) 11 Cal.App.3d 868, 878-879 ["It is generally agreed that the right to privacy is one pertaining only to individuals, and that a corporation cannot claim it as such. (Prosser, Torts, supra (4th ed.) § 117, p. 815.) This is because the tort is of a personal character "[concerning] one's feelings and one's own peace of mind." (*City of Carmel-by-the-Sea v. Young* (1970) 2 Cal.3d 259, 268 [37 A.L.R.3d 1313]; see also, *Fairfield v. American Photocopy etc. Co.* (1955) 138 Cal.App.2d 82, 86 [291 P.2d 194].) A corporation is a fictitious person and has no "feelings" which may be injured in the sense of the tort. In addition, there are no California cases recognizing that a corporation enjoys the right of privacy. Consequently, no case law exists indicating that a corporation has a viable cause of action for invasion of privacy."].)

Finally, it must be noted that your discussion regarding the "expected or intended exclusion" is inaccurate.  The "expected or intended" limitation with respect to personal injury offenses in the Unit-Owners form is incorporated into the definition of "occurrence" and hence is part of the insuring provision with respect to such offenses:

> **"Occurrence"** means:
>
> a.  An accident, including continuous or repeated exposure to substantially the same generally harmful conditions, which results, during the policy period, in **"bodily injury"** or **"property damage"**.

0901119cb9a5e255                                        USAA Confidential

> b. An event or series of events, including injurious exposure to conditions, proximately caused by an act or omission of any **"insured"**, which results, during the policy period, in **"personal injury"**, neither expected nor intended from the standpoint of the **"insured"**.

Unlike general battery claims such as discussed in your letter, violations of the Computer Fraud & Abuse Act can *only* be committed intentionally.  U.S.C. section 1030(a)(2)(c), for example, applies to "Whoever *intentionally* accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer."  Similarly, Penal Code section 502 is a penal statute that applies to one who "Knowingly and without permission uses or causes to be used computer services."  Consequently, any recovery available to BCS under the complaint could not be based on "unintended or unexpected" conduct on the part of Mr. Whiteley that caused any of the enumerated personal injury offenses.

## **CONCLUSION**

We hope this letter is clear.  However, if you have questions, or have any additional information you believe USAA-CIC should consider, please feel free to contact me. USAA-CIC does not by this correspondence intend to waive any coverage issue or defense not expressly set forth above.

We are required by California Insurance Regulations, Section 2695.7(b)(3), to advise you that if you believe this claim, or any part of this claim, has been wrongfully denied or rejected, you may have the matter reviewed by the California Department of Insurance, Claims Service Bureau, 300 South Spring Street, Los Angeles, California 90013, telephone 1-800-927-4357.

Very truly yours,
DANIELS, FINE, ISRAEL
SCHONBUCH & LEBOVITS, LLP

Mark Israel

Mark R. Israel
Phone: (310)556-7900
Email : Israel@dfis-law.com

You may submit correspondence or questions to me using one of the following options:

**Email:**      Email us at 44phd5cc2mm3@claims.usaa.com.
                Don't send private information via this channel.

**Address:**    USAA Claims Department
                P.O. Box 33490
                San Antonio, TX 78265

**Fax:**        800-531-8669

**Phone:**      1-210-531-8722 ext. 7-9471

Thank you,
USAA Casualty Insurance Company

007778375 - 029 - 8710 - 05                                    54577-1121

**WHITELEY_CF_373**
Page 9 of 9

USAA Confidential