JOSHUA N. KASTAN (SBN 284767)
JNK@dkmlawgroup.com
JESSICA J. ROSS (SBN 313988)
JJR@dkmlawgroup.com
**DKM LAW GROUP, LLP**
50 California St., Suite 1500
San Francisco, CA 94111
Telephone:(415) 421-1100
Facsimile: (415) 842-0095

Attorneys for Defendant,
USAA CASUALTY INSURANCE COMPANY

# IN UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY R. WHITELEY,<br><br>Plaintiff,<br><br>vs.<br><br>USAA CASUALTY INSURANCE COMPANY,<br><br>Defendant. | CASE NO.: 2:24-cv-00138-FLA-MAA<br><br>**DEFENDANT USAA CASUALTY INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF JEREMY R. WHITELEY'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**Hearing Date:** March 14, 2025<br>**Hearing Time:** TBD<br>**Crtrm.:** 6B<br>**Judge:** Hon. Aenlle-Rocha<br>**Cmplt. Filed:** Jan. 5, 2024 |

# TABLE OF CONTENTS

I.   INTRODUCTION --------------------------------------------------------------- 1

II.  THE DUTY TO DEFEND WAS NOT TRIGGERED ------------------------- 2

   A. No Allegations Within the BCS Complaint Regarding Defamation Are Attributable to Whiteley, and the Duty to Defend Was Not Triggered -- 2

   B. Extrinsic Evidence Would Not Have Impacted USAA CIC's Correct Coverage Determination ------------------------------------------------------ 5

   C. Even if the Duty to Defend Were Triggered, Coverage Was Otherwise Excluded------------------------------------------------------------------------ 6

   D. The BCS Complaint is Based Entirely on Intentional Conduct, For Which Coverage is Not Extended Under California Law ---------------------- 8

   E. Financial Damages Do Not Trigger Duty to Defend ---------------------- 8

   F. Schratz's Coverage Opinions Should be Stricken and Disregarded --- 9

III. WHITELEY'S BREACH OF THE IMPLIED COVENANT FAILS WHERE USAA CIC ACTED REASONABLY, RELIED UPON THE ADVICE OF COUNSEL, AND THERE WAS A GENUINE DISPUTE REGARDING COVERAGE -------------------------------------------------------------------------10

   A. USAA CIC's Investigation Was Reasonable as a Matter of Law-------10

   B. There Was a Genuine Dispute Between the Parties------------------------12

IV.  WHITELEY'S CLAIM FOR PUNITIVE DAMAGES FAILS--------------13

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2---------------16

# TABLE OF AUTHORITIES

CASES

*Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443 ........................................................................................ 9

*Aya Healthcare Services Inc. v. AMN Healthcare, Inc.*, 613 F.Supp.3d 1308 ........................................................................................ 9

*Benavides v. State Farm Gen. Ins. Co.*, 136 Cal. App. 4th 1241 ........................................................................................ 10

*California Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal.App.3d 1 ........................................................................................ 9

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, (1990) 222 Cal. App. 3d 1371 ........................................................................................ 10

*Chateau Chamberay Homeowners Ass'n v. Assoc'd Int'l Ins. Co.* 90 Cal.App.4th 335 ........................................................................................ 12

*Chatton v. National Union Fire Ins. Co.*, 10 Cal.App.4th 846 ........................................................................................ 9

*Hoch v. Allied-Signal, Inc.*, 24 Cal.App.4th 48 ........................................................................................ 14

*Mazik v. Geico General Ins. Co.*, 35 Cal. App.5th 455 ........................................................................................ 14

*Morris v. Paul Revere Life Ins. Co.* (2003) 109 Cal.App.4th 966 ........................................................................................ 10

*Turner v. State Farm Fire and Cas. Co.* (2001) 92 Cal.App.4th 681 ........................................................................................ 5

*Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1

*White v. Ultramar, Inc,.* 21 Cal. 4th 563

---------------------------------------------------------------------------------------- 14

*Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713

------------------------------------------------------------------------------------- 10, 12

STATUTES

Cal. Civ. Code § 3294(a)(b)

---------------------------------------------------------------------------------------- 13

Cal. Ins. Code. § 533

----------------------------------------------------------------------------------------- 8

## I. INTRODUCTION

USAA CIC has demonstrated, based on the undisputed material facts, it is entitled to judgment as a matter of law as to each of Whiteley's claims and its Motion should be granted and Whiteley's Cross-Motion denied.

At the outset, USAA CIC notes Whiteley disputes only *two* of the 62 material facts within the Separate Statement. Whiteley adds 31 additional "facts" in support of his Cross-Motion, the majority of which constitute argument, not fact, and are not material. These "facts" were added solely to draw dispute and objection from USAA CIC and create a false issue of fact where there is none.

At a minimum, the Court should summarily adjudicate the breach of contract claim. Whiteley concedes the only possible way USAA CIC's duty to defend him in the BCS Lawsuit could have been triggered was under the Umbrella Policy's personal injury term. Thereunder, USAA CIC agrees to provide a defense where the underlying suit was brought because of "injury arising out of . . . [the] oral, written or electronic publication of a false statement that defames a person's or organization's character or reputation". (S.S. 10.) As discussed below, the allegations within the BCS Complaint simply do not fall within the scope of the Umbrella Policy, there was no possibility of coverage, and USAA CIC correctly determined its duty to defend was not triggered.

As to the extracontractual claims, the undisputed facts further show USAA CIC's investigation of Whiteley's claim was reasonable and timely, a genuine dispute existed between the parties, and USAA CIC reasonably relied on the advice of counsel. Lastly, there is no evidence (clear and convincing or otherwise) a managing agent ratified USAA CIC's conduct, or that USAA CIC acted maliciously or oppressively.

For these and the foregoing reasons, USAA CIC's Motion should be granted and Whiteley's Cross-Motion denied.

## II. THE DUTY TO DEFEND WAS NOT TRIGGERED

### A. No Allegations Within the BCS Complaint Regarding Defamation Are Attributable to Whiteley, and the Duty to Defend Was Not Triggered

Whiteley concedes the only possibility for coverage to exist under the Umbrella Policy was through allegations within the BCS Complaint relating to defamation, which he argues constituted "personal injury". In their totality, these allegations state:

> 27. Beginning in the fall of 2021, Defendant McNamara started creating tension on BCS's board and began regularly spreading gossip and slanderous lies about fellow board members among volunteers and in the survivor community. The parties engaged in a conflict resolution process with a consultant. The conflict resolution process was unsuccessful in large part because Defendant McNamara would not accept the consultant's proposal that she step down from the board.

(S.S. 17.)

> 45. In some cases, the harm caused by Defendants is irreparable, e.g., the breach of the trust of the public sought to be served by BCS, the unknown extent to which they have reviewed and destroyed BCS confidential information, emails, intellectual properties, and other files, and damaged relationships after Defendant McNamara and her colleagues at UnSilenced made defamatory statements to valued partners, resulting in strained and, in some cases, terminated valued relationships. In this lawsuit, BCS seeks an injunction to regain control of its digital assets and properties, as well as to recover damages, including statutory damages and penalties, resulting from Defendants' intentional, wrongful, and unlawful conduct.

(S.S. 22.)

> 47. As a direct and proximate result of Defendants' wrongful conduct, BCS has suffered extensive damages in excess of $5,000 and in an amount to be proven at trial. Such damages include the expenses associated with investigating Defendants' wrongful conduct and engaging forensic experts, lost business opportunities and monetary donations, and disclosure of misleading information to the public.

(S.S. 23.)

> 48. BCS also seeks recovery for lost goodwill as a result of Defendant's dissemination of false information by impersonating BCS. Defendants have also greatly and unjustly enriched themselves using BCS's social media accounts and proprietary information at BCS's expense.

(S.S. 24.)

Even a cursory consideration of these paragraphs demonstrates Whiteley was excluded from any purportedly defamatory conduct.

Paragraph 27 is limited solely to conduct by McNamara. (S.S 17.)

Paragraph 45 states "Defendant McNamara and her colleagues at UnSilenced made defamatory statements". (S.S. 22.) The phrasing of this paragraph implicates the conduct of McNamara and other colleagues (i.e. strangers to the BCS Complaint). (*Id*.) Had the drafters of the BCS Complaint intended to include Whiteley in this allegation, they would have. Indeed, the BCS Complaint is rife with allegations directed solely at Whiteley or "defendants", plural.

Whiteley attempts to create coverage through this paragraph based on the use 'defendants', plural, within a heading, ***not an allegation***, stating: "Defendants Form Unsilenced and Begin Withholding Access to BCS Accounts". (RSS 66.) Whiteley

claims USAA CIC should have deduced from this heading that he was included within the term "colleagues" in paragraph 45.

This sub-heading has nothing to do with the remainder of the allegations in the BCS Complaint, operates solely as an organizational tool, and does not implicate Whiteley in anything other than the formation of UnSilenced, Whiteley's self-serving and vague statement that he considered himself "one of [McNamara's] colleagues at UnSilenced following its formation" is not relevant to the potential for coverage, and would not have changed USAA CIC's coverage determination. (RSS-67.)

Paragraph 47 references the wrongful conduct of "Defendants'", plural, but refers only to the alleged dissemination of "*misleading*", not false, information. (S.S. 23.) The dissemination of misleading information falls squarely outside the Umbrella Policy's definition of personal injury, which requires "a false statement that *defames [BCS's] character or reputation*". (S.S. 9.) Notably, none of the allegations related to defamation in the BCS Complaint invoke any damage to BCS' character or reputation. (S.S. 11-25.)

Paragraph 48 seeks recovery for the "Defendant*'s*", singular, "dissemination of false information". (S.S. 24.) Based on the prior allegations regarding specifically McNamara's "slander", this paragraph clearly relates only to her. Tellingly, paragraph 48 goes on to reference the "Defendants'", plural, unjust enrichment of themselves, impliedly joining Whiteley in the allegation of unjust enrichment and excluding him from the dissemination of false information. (*Id.*)

As Mark Israel testified, the BCS Complaint was carefully drafted. (S.S. 60-61.) The drafters knew Whiteley's name and his role in BCS, and chose *not* to identify him in these allegations while providing the names of other non-parties or references to 'colleagues'.

The allegations within the BCS Complaint are unambiguous and cannot be interpreted in any way apart from their plain meaning. As discussed at length above

and within USAA CIC's Motion, there was no potential for coverage under either of the subject policies, and USAA CIC cannot have breached the contract.

**B.    Extrinsic Evidence Would Not Have Impacted USAA CIC's Correct Coverage Determination**

Whiteley argues if USAA CIC had spoken with him, it would have learned certain facts he claims would have changed the coverage determination. (Dkt. 46 p. 13-15.) Whiteley ignores that when an insurer "assume[s] the [insured's] version of the facts to be correct, but [finds] no potential for coverage anyway", there is no obligation to investigate extrinsic evidence. (*Turner v. State Farm Fire and Cas. Co.* (2001) 92 Cal.App.4th 681, 690.)

Here, USAA CIC spoke with and corresponded with Whiteley regarding the allegations in the BCS Complaint and his disagreement with the coverage determination multiple times. (S.S. 29, 48, 51, 52.) There is no evidence before this Court indicating USAA CIC did not assume Whiteley's general denial of the wrongdoing alleged in the BCS Complaint was true. But Whiteley's denial did not and could not change the phrasing and substance of the allegations in the BCS Complaint, upon which USAA CIC's coverage determination properly relied.

Further, Whiteley could have provided USAA CIC with whatever additional information he thought could be relevant to USAA CIC's investigation during these conversations. He did not. If Kaczmarek or Gonzalez had questions regarding the meaning of the allegations within the BCS Complaint, they would have asked. They did not. If Israel had questions regarding the meaning of the allegations, he would have instructed Kaczmarek or Gonzalez to discuss them with Whiteley. He did not.

This is because the plain meaning of the allegations within the BCS Complaint was clear. No further clarification from Whiteley, or anyone else, was needed for USAA CIC to determine whether its duty to defend was triggered under the Policy.

Even in his supporting declaration, Whiteley points to no extrinsic information that would have impacted USAA CIC's coverage determination. (Dkt. 50.) Whiteley

states he "would have readily confirmed that I formed UnSilenced" and he considered himself a "colleague" of McNamara's. (RSS 67; Dkt. 50 at ¶6.) As discussed above, the phrasing of paragraph 45 within the BCS Complaint shows the use and meaning of the word "colleagues", rather than Whiteley or plural defendants, indicated Whiteley's exclusion. Whiteley's identification of himself as a colleague of McNamara's has no bearing on the allegations in the BCS Complaint.

Where extrinsic evidence would not have changed USAA CIC's coverage determination, Whiteley's argument fails.

### C. Even if the Duty to Defend Were Triggered, Coverage Was Otherwise Excluded

The Umbrella Policy unambiguously excludes from coverage any allegations related to personal injury which arise out of a "criminal act", "any contract or agreement", or a false statement made with knowledge of the falsity or "reckless disregard for the truth". (S.S. 10.)

As to the "criminal act" exclusion, Whiteley argues because "criminal liability was neither alleged nor proven" in the BCS Lawsuit, this should not apply. (Dkt. 46 at p. 17.) Yet USAA CIC's investigation and coverage determination turns on the allegations within the third-party complaint, not what is proven or unproven during ensuing litigation. Indeed, taking Whiteley's argument to its logical conclusion, an insurer would be unable to make any coverage determination until the third-party complaint was resolved. The BCS Complaint contained causes of action solely for violations of criminal statutes and based on that the "criminal act" exclusion applied to exclude coverage. (S.S. 3.)

As to the "contract or agreement" exclusion, Whiteley argues – without citation to any law – this exclusion only applies where a contract or agreement is proven, rather than alleged. (Dkt. 46 at 18.) Again, taking Whiteley's argument to its logical conclusion would render the exclusion meaningless. An insurer would never be able to demonstrate its duty to defend was excluded on these grounds if proof of a

contract or agreement was a prerequisite. Allegations regarding the existence of an agreement upon which the operable conduct was based is sufficient under the Umbrella Policy and California law for the exclusion to apply.

Here, the BCS Complaint contains multiple allegations that Whiteley and McNamara acted based upon their agreement to cause BCS harm and unjustly enrich themselves. (S.S. 13, 24.) These allegations were sufficient to indicate USAA CIC's duty to defend, if triggered (and it was not), was nevertheless excluded.

As to the "knowledge of falsity" exclusion, Whiteley again argues the exclusion is inapplicable based on a lack of evidence in discovery in the BCS Lawsuit indicating his knowledge of falsity. (Dkt. 46 at 15-16.) But the Umbrella Policy additionally excludes coverage where the false statement was made "with reckless disregard for the truth". (S.S. 10.)

As Whiteley notes, this Court previously held the allegations within the BCS Complaint "*may have reasonably given rise to the inference that any actionable defamatory statement was made with knowledge of its falsity or reckless disregard for its truth*". (Dkt. 42 at 8.) Whiteley fails to set forth any reason or argument why the Court's prior conclusion should not stand.

Further, the allegations within the BCS Complaint describe a spree of intentional conduct designed to harm BCS. (S.S. 11-25.) Whiteley cannot credibly claim the totality of the allegations do not indicate conduct engaged in with, at a minimum, reckless disregard for the truth.

Where USAA CIC has demonstrated multiple exclusions apply to the allegations within the BCS Complaint, it was under no obligation to defend Whiteley, it did not breach the contract, and its Motion should be granted.

### D. The BCS Complaint is Based Entirely on Intentional Conduct, For Which Coverage is Not Extended Under California Law

Although the Umbrella Policy does not set forth a specific exclusion for intentional conduct, in California "by statute, and as a matter of public policy, the insurer may not provide coverage for willful injuries by the insured against a third party". (Cal. Ins. Code. § 533; *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 18 (1995).)

The allegations within the BCS Complaint focus solely on willful, intentional conduct by Whiteley. (S.S. 11-25.) BCS claimed Whiteley "acted intentionally . . . to obtain and convert secret, confidential, and proprietary information", "exercised an extreme act and maliciously accessed BCS's account with Google", "maliciously attempted to remove and/or gain control of the BCS website", and "attempted or succeeded at changing the content of the [BCS] website". (S.S. 11-16.)

Where the BCS Complaint alleged only intentional conduct, and contained no indication Whiteley's acts could have been merely negligent or accidental, under California law USAA CIC's duty to defend was not triggered and it properly denied coverage for the claim.

### E. Financial Damages Do Not Trigger Duty to Defend

California law is clear where a third-party complaint alleges solely financial or economic damages, the duty to defend is not triggered – regardless of the terms within the subject policy. The Supreme Court held in *Waller* that "strictly economic losses like lost profits, loss of goodwill, loss of the anticipated benefit of a bargain, and loss of an investment, do not constitute damage or injury". (*Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 19 (1995).) Whiteley claims – without citation to any legal support whatsoever – that this long-standing concept should not apply in the context of the duty to defend based on "personal injury" allegations. (Dkt. 46 at 19-20.)

Whiteley cannot avoid the precedential holdings of multiple state and federal courts indicating economic losses are not actionable in the context of a duty to

1 defend. (Dkt. 45-1 at 23.) Here, BCS claimed it was unable to promote a
2 documentary, lost online traffic to its website, "lost business opportunities", "lost
3 goodwill", and breached "the trust of the public", that its confidential information
4 was destroyed and business relationships damaged, service it provided to the public
5 was interrupted, and claimed damages "in excess of $5,000". (S.S. 20-24.)

6       Absent from the BCS Complaint is any allegation regarding tangible damage
7 to property. As such, USAA CIC's duty to defend was not triggered and its Motion
8 should be granted.

9     **F.**    **Schratz's Coverage Opinions Should be Stricken and Disregarded**

10       The Court should strike and disregard statements within Whiteley's supporting
11 declaration of its insurance claim handling expert, Jim Schratz, related to whether
12 USAA CIC's duty to defend was triggered by the allegations within the BCS
13 Complaint. (Dkt. 49.) The interpretation of an insurance policy is a pure question of
14 law. (*Waller v. Truck Ins. Exch.* (1995) 11 Cal.4th 1, 18.)

15       Because interpretation of an insurance policy is an issue of law, it is not a
16 proper subject for expert testimony. "Unless a contract is deemed ambiguous or there
17 is a term of the contract that requires an expert's explanation, it is improper for an
18 expert to interpret or construe a contract in his opinion." (*Aya Healthcare Services*
19 *Inc. v. AMN Healthcare, Inc.*, 613 F.Supp.3d 1308, 1320 (S.D. Cal. 2020). Matters of
20 law are "inappropriate subjects for expert testimony". (*Aguilar v. Int'l*
21 *Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992).)

22       It has been held frequently in California that "opinion evidence is completely
23 irrelevant to interpret an insurance contract". (*Chatton v. National Union Fire Ins.*
24 *Co.*, 10 Cal.App.4th 846, 865 (1992); *California Shoppers, Inc. v. Royal Globe Ins.*
25 *Co.*, 175 Cal.App.3d 1, 35 (1985).)

26       It is inappropriate for Schratz to set forth these opinions, and they should not
27 be considered by the Court as providing support for Whiteley's claims regarding
28

whether USAA CIC's duty to defend was triggered by the allegations in the BCS Complaint.

Where the undisputed facts demonstrate USAA CIC's duty to defend was not triggered, Whiteley's breach of contract claim fails and USAA CIC's Motion should be granted.

### III. WHITELEY'S BREACH OF THE IMPLIED COVENANT FAILS WHERE USAA CIC ACTED REASONABLY, RELIED UPON THE ADVICE OF COUNSEL, AND THERE WAS A GENUINE DISPUTE REGARDING COVERAGE

The undisputed material facts demonstrate USAA CIC conducted a prompt and reasonable investigation, and as a matter of law summary judgment should be granted in USAA CIC's favor as to Whiteley's claim for breach of the implied covenant of good faith and fair dealing.

As discussed at length, where USAA CIC's duty to defend was not triggered and no benefits were available under the Umbrella Policy, there can be no breach of contract claim and Whiteley's attendant breach of the implied covenant of good faith and fair dealing claim likewise fails as a matter of law. (*Waller, supra,* 11 Cal. 4th 36; *Benavides v. State Farm Gen. Ins. Co.*, 136 Cal. App. 4th 1241, 1250 (2006.)

**A.** **USAA CIC's Investigation Was Reasonable as a Matter of Law**

California law dictates that an insurer's investigation be reasonable – not perfect. (*Morris v. Paul Revere Life Ins. Co.* (2003) 109 Cal.App.4th 966, 977; *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.,* (1990) 222 Cal. App. 3d 1371, 1395.).) The law further states an insurer's investigation should not be considered with the benefit of hindsight. (*Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 723 (2007) ["An insurer's good or bad faith must be evaluated in light of the totality of the circumstances surrounding its actions"].) The proper consideration is what Kaczmarek, Gonzalez, Holmes, and Israel knew at the relevant period, and whether

1  their responsive steps taken and decisions made based on that information was
2  reasonable.
3       It cannot credibly be disputed that USAA CIC promptly, reasonably, and
4  thoroughly investigated and handled Whiteley's claim. As detailed in USAA CIC's
5  Motion, Kaczmarek immediately reviewed the BCS Complaint, the subject policies,
6  and spoke with Whiteley. (S.S. 28-29.) The BCS Complaint was then reviewed
7  internally within USAA CIC by Kaczmarek's manager and a director. (S.S. 31-33;
8  35-39.) When USAA CIC determined a coverage question existed, it reasonably
9  retained outside counsel to provide recommendations regarding whether the duty to
10 defend was triggered. (S.S. 34, 40, 41, 46.) Israel reviewed the BCS Complaint and
11 relayed his opinion that the allegations therein did not fall within the scope of either
12 the Homeowners or Umbrella Policies, and accordingly that USAA CIC did not owe
13 Whiteley a legal defense. (S.S. 46-47.) Israel's opinions were well-supported by the
14 terms of the Policy and California law. (*Id.*)
15      When Whiteley retained counsel and disputed USAA CIC's coverage
16 determination, USAA CIC again sought recommendations from Israel as to whether,
17 based on Whiteley's counsel's correspondence, USAA CIC's coverage determination
18 should be revised. (S.S. 53-56.) Israel considered the new information and
19 recommended USAA CIC's coverage determination be affirmed. (S.S. 57-58.)
20      USAA CIC's coverage determination was reasonably based on its own
21 investigation of Whiteley's claim and the advice of counsel, who conducted an
22 independent review and investigation.
23      Throughout the handling of the claim, Kaczmarek and Gonzalez
24 communicated with Whiteley regularly. (S.S. 29, 42-45, 48, 49, 59.) When Whiteley
25 escalated his claim to USAA CIC's Member Advocacy Team, USAA CIC promptly
26 handled the dispute. (S.S. 50.) Whiteley, on the other hand, claimed he had never
27 spoken to Kaczmarek before and recorded at least one phone call without obtaining
28

his consent. (S.S. 51.) Whiteley's argument that USAA CIC "failed to return phone calls" is simply not supported by the record. (Dkt. 46 at 23; S.S., generally.)

At no point did anyone at USAA CIC intentionally lie to Whiteley. (S.S. 62.) USAA CIC's statements to Whiteley throughout the handling of the claim simply do not rise to the level of a breach of the implied covenant of good faith and fair dealing. This is especially true where USAA CIC's coverage determination was affirmed multiple times and explained to Whiteley repeatedly.

Lastly, Schratz's opinions regarding USAA CIC's investigation do not constitute definitive evidence of bad faith.[1] While expert opinion can be helpful to the factfinder at trial, in the context of the Court's consideration of undisputed material facts and their impact on the causes of action as a matter of law on a motion for summary judgment, they should be given little weight.

### B.    There Was a Genuine Dispute Between the Parties

As stated in USAA CIC's Motion, where there is a reasonable and genuine dispute as to the existence of coverage, under California law the insurer "is not liable in bad faith." (*Chateau Chamberay Homeowners Ass'n v. Assoc'd Int'l Ins. Co.* 90 Cal.App.4th 335, 347, (2001); *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 724 (2007).) The undisputed facts demonstrate that USAA CIC conducted a reasonable and prompt investigation, including retaining outside counsel to provide recommendations, and determined in good faith that its duty to defend Whiteley in the BCS Lawsuit simply was not triggered under the terms of the Policy.

Whiteley claims the genuine dispute doctrine is inapplicable in the context of an insurer's duty to defend. (Dkt. 46 at 21-22.) Yet Whiteley is unable to cite to a single case holding the genuine dispute doctrine cannot or should not be considered

---

[1] To the extent USAA CIC's Motion as to the breach of implied covenant claim is denied, USAA CIC notes Schratz's opinions will be rebutted by its own insurance claim handling expert, Paul Hamilton.

in a court's evaluation of a claim for breach of the implied covenant of good faith and fair dealing in a duty to defend case. (*Id*.)

Here, the genuine dispute doctrine is particularly relevant where two experienced attorneys – Israel and Whiteley's counsel – disagreed as to whether the allegations within the BCS Complaint triggered the duty to defend. This is precisely the type of scenario the genuine dispute doctrine is meant to address.

Where the undisputed material facts demonstrate USAA CIC's investigation of Whiteley's claim and coverage determination was reasonable, timely, and well-supported, as a matter of law USAA CIC did not breach the implied covenant of good faith and fair dealing, and its Motion should be granted.

### IV.   WHITELEY'S CLAIM FOR PUNITIVE DAMAGES FAILS

The undisputed material facts demonstrate USAA CIC is entitled to summary judgment of Whiteley's claim for punitive damages.

Whiteley does not dispute to be successful on his claim for punitive damages he must demonstrate by clear and convincing evidence that some conduct by USAA amounted to "oppression, fraud, or malice", **and** that "an officer, director, or managing agent" of USAA either engaged in the conduct themselves or otherwise had advance knowledge and consciously disregarded, or authorized or ratified the conduct. (Cal. Civ. Code § 3294(a)(b) (emphasis added).)

As a threshold matter, Whiteley's argument that evidentiary standards of proof are somehow ignored or lessened at summary judgment versus trial is unsupported, misleading and should be disregarded. Under clear California law, regardless of the stage of litigation, Whiteley has the burden of proving every element of the punitive damages claim to a clear and convincing evidence standard. (Cal. Civ. Code § 3294(a) ("where it is proven by clear and convincing evidence").)

At least one California court has noted, albeit in the context of a motion for nonsuit: "if plaintiff is to prevail on a claim for punitive damages, the evidence will have to be clear and convincing to the trier of fact. The claim must be evaluated in

that light, and on a motion for nonsuit, ***both the trial and appellate courts must view the evidence with that higher burden in mind***". (*Hoch v. Allied-Signal, Inc.*, 24 Cal.App.4th 48, 59 (1998) [emphasis added]; *Mazik v. Geico General Ins. Co.*, 35 Cal. App.5th 455 (2019) ("the clear and convincing evidence standard was adopted for the edification and guidance of the trial court").)

Thus, to defeat USAA CIC's Motion, Whiteley must demonstrate both malicious, oppressive, or fraudulent conduct ***and*** ratification by a managing agent to the clear and convincing standard.

Here, as demonstrated by both USAA CIC's Motion and Whiteley's Opposition, based on the undisputed material facts no reasonable jury could find Whiteley has met his burden, and the claim for punitive damages should be disposed of as a matter of law for two standalone reasons.

<u>First</u>, and fatally, Whiteley has not proffered any evidence whatsoever that a managing agent of USAA CIC engaged in or otherwise ratified any conduct in the handling of the claim pursuant to Section 3294(b). Whiteley agrees a managing agent must "exercise substantial independent authority and judgment in their corporate decision making so that their decisions ultimately determine corporate policy". (*White v. Ultramar, Inc,.* 21 Cal. 4th 563, 566-567 (1999); Motion at 27.) Instead, Whiteley ignores longstanding California jurisprudence and claims, based solely on Gonzalez's designation during this litigation as USAA CIC's Rule 30(b)(6) witness and her testimony relative to her roles and responsibilities, that a managing agent or corporate officer of USAA CIC somehow took part in or ratified conduct pursuant to Section 3294. (Dkt. 46 at 26-27.)

This is purely conjecture and legal argument. Whiteley points to no sworn testimony, corporate document, or other evidence that could possibly indicate Gonzalez's decisions impacted USAA CIC's corporate wide policy. (Dkt. 46, generally.) Indeed, Gonzalez's sworn declaration submitted in support of USAA CIC's Motion states she has no authority to create or impact corporate decisions,

policies, or procedures. (USAA CIC's Response to the Statement of Genuine Disputes of Material Fact and Additional Material Facts, No. 95.)

On these grounds, no reasonable jury could find a managing agent, officer or director of USAA CIC engaged in or ratified any of the conduct alleged to support Whiteley's punitive damages claim under California law. Absent any evidence of ratification by a managing agent, Whiteley cannot establish an essential element of the punitive damages claim and it should be summarily adjudicated.

<u>Second</u>, within his Response to USAA CIC's Separate Statement of Facts, Whiteley does not dispute the material facts themselves, and instead provides a lengthy and editorialized recitation of the underlying claim handling and USAA CIC's coverage determination in a weak attempt to inject factual issues where there are none. As discussed, even when the undisputed facts are viewed in the light most favorable to Whiteley, USAA CIC's conduct simply does not rise to the level of sufficiently egregious malice, fraud, or oppression as a matter of California law. Instead, the undisputed facts demonstrate USAA CIC investigated Whiteley's claim and determined its duty to defend was not triggered based on the terms of the Umbrella Policy and the BCS Complaint. Whiteley's general disagreement with the handling of his claim and USAA CIC's coverage determination does not hold water against his significant burden of proof on the punitive damages claim.

Accordingly, USAA CIC has demonstrated Whiteley cannot meet his burden of proof as to his claim for punitive damages, and its Motion should be granted.

Dated:  February 21, 2025        **DKM L**AW **G**ROUP**, LLP**

By: */s/Jessica J. Ross*
JOSHUA N. KASTAN (SBN 284767)
JNK@dkmlawgroup.com
JESSICA J. ROSS (SBN 313988)
JJR@dkmlawgroup.com
Attorneys for Defendant,

USAA CASUALTY INSURANCE COMPANY

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2

The undersigned, counsel of record for USAA Casualty Insurance Company, certifies that this brief contains 4,189 words, which complies with the word limit of L.R. 11-6.1.

Dated: February 21, 2025                **DKM Law Group, LLP**

By: */s/Jessica J. Ross*
JOSHUA N. KASTAN (SBN 284767)
JNK@dkmlawgroup.com
JESSICA J. ROSS (SBN 313988)
JJR@dkmlawgroup.com
Attorneys for Defendant,
USAA CASUALTY INSURANCE COMPANY