```
 1        UNITED STATES DISTRICT COURT

 2        CENTRAL DISTRICT OF CALIFORNIA

 3

 4   -----------------------------------------

 5   Jeremy R. Whiteley,

 6              Plaintiff,

 7   vs.      Case No.  2:24-cv-00138-FLA-MAA

 8   USAA Casualty Insurance Company,

 9              Defendant.

10                              (Pages 1 - 163)

11   -----------------------------------------

12

13

14           VIDEOTAPED DEPOSITION

15

16   of Barbi Gonzalez, taken pursuant to

17   notice to take oral deposition via Zoom

18   on the 22nd day of November, 2024,

19   before Nathan D. Engen, a notary public

20   in and for the State of Minnesota.

21

22

23

24

25
```

*Original Transcript*

| | | |
|---|---|---|
| 1 | is being taken via video conference on | 11:07:22 |
| 2 | behalf of plaintiff. | 11:07:27 |
| 3 |       The court reporter is Nathan | 11:07:27 |
| 4 | Engen of iDepo Reporters.  Counsel will | 11:07:30 |
| 5 | state their appearances. | 11:07:34 |
| 6 |       MR. CROSNER:  Good morning, | 11:07:37 |
| 7 | Shaun Crosner with McGuire Woods on | 11:07:37 |
| 8 | behalf of the plaintiff, Jeremy | 11:07:37 |
| 9 | Whiteley. | 11:07:37 |
| 10 |       MR. KASTAN:  Good morning, | 11:07:38 |
| 11 | Josh Kastan of DKM Law Group on behalf | 11:07:39 |
| 12 | of defendant, USAA Casualty Insurance | 11:07:45 |
| 13 | Company and presenting the witness, Ms. | 11:07:47 |
| 14 | Barbi Gonzalez. | 11:07:50 |
| 15 |       THE VIDEOGRAPHER:  Mr. Court | 11:07:54 |
| 16 | Reporter, can you please administer the | 11:09:02 |
| 17 | oath. | |
| 18 | | |
| 19 |       Barbi Gonzalez | |
| 20 | | |
| 21 | Called as a witness and having been | |
| 22 | first duly sworn, testifies as follows: | |
| 23 | | |
| 24 |       EXAMINATION | |
| 25 | | |

| | | | |
|---|---|---|---|
| 1 | Q | That's Mr. Kastan? | 11:13:45 |
| 2 | A | Yes, sir. | 11:13:48 |
| 3 | Q | Any other conversations? | 11:13:48 |
| 4 | A | No, sir. | 11:13:54 |
| 5 | Q | You didn't speak with any of the other | 11:13:54 |
| 6 | | adjustors or claims handlers that had | 11:13:58 |
| 7 | | been involved in this -- this claim? | 11:14:03 |
| 8 | A | No, sir, not in preparation for this -- | 11:14:04 |
| 9 | | for this deposition. | 11:14:06 |
| 10 | Q | And you didn't speak with Mark Israel? | 11:14:07 |
| 11 | A | I did not, not in preparation of the -- | 11:14:11 |
| 12 | | this deposition. | 11:14:13 |
| 13 | Q | Before we get into the -- to the | 11:14:15 |
| 14 | | various topics in this notice, I | 11:14:23 |
| 15 | | thought it'd be helpful to get a little | 11:14:26 |
| 16 | | bit of background on you. | 11:14:28 |
| 17 | | So what is your current | 11:14:30 |
| 18 | | position with USAA? | 11:14:31 |
| 19 | A | I am a property claims director and I | 11:14:35 |
| 20 | | oversee the specialty team within USAA. | 11:14:38 |
| 21 | Q | You oversee the what?  I'm sorry. | 11:14:39 |
| 22 | A | The specialty team. | 11:14:42 |
| 23 | Q | What is the specialty team? | 11:14:44 |
| 24 | A | My team is a group of senior -- well | 11:14:45 |
| 25 | | their called property adjustor | 11:14:50 |

| | | | |
|---|---|---|---|
| 1 | | specialists, and we -- my team reviews | 11:14:54 |
| 2 | | all of the litigation on liability and | 11:14:57 |
| 3 | | complex condominiums for USAA. | 11:15:03 |
| 4 | Q | And -- and what region are you | 11:15:08 |
| 5 | | responsible for? | 11:15:10 |
| 6 | A | All of USAA. | 11:15:12 |
| 7 | Q | All -- the -- the entire -- | 11:15:14 |
| 8 | A | -- across the -- yes, I'm sorry, yes, | 11:15:18 |
| 9 | | the entire U.S. I mean. | 11:15:20 |
| 10 | Q | The entire country?  Okay.  Do you make | 11:15:21 |
| 11 | | claims decisions or are you only asked | 11:15:25 |
| 12 | | to get involved once litigation? | 11:15:28 |
| 13 | A | I do make claims decisions, yes, sir. | 11:15:31 |
| 14 | Q | Did you make a claims decision in Mr. | 11:15:33 |
| 15 | | Whiteley's case? | 11:15:37 |
| 16 | A | Yes, I made the coverage decision on | 11:15:38 |
| 17 | | whether we would defend or not defend. | 11:15:41 |
| 18 | | Yeah. | 11:15:43 |
| 19 | Q | Okay.  How many -- how many people | 11:15:43 |
| 20 | | report to you -- I guess what's -- | 11:15:45 |
| 21 | | what's the organization of your | 11:15:46 |
| 22 | | department? | 11:15:46 |
| 23 | A | I have approximately 80 employees | 11:15:48 |
| 24 | | reporting to me and nine managers, so | 11:15:52 |
| 25 | | roughly 89 to 90 employees. | 11:15:55 |

| | | | |
|---|---|---|---|
| 1 | Q | And that's throughout the country? | 11:15:59 |
| 2 | A | Yes, sir. | 11:16:01 |
| 3 | Q | Do you report to anyone within the | 11:16:01 |
| 4 | | claims department at USAA? | 11:16:06 |
| 5 | A | Yes, sir. | 11:16:08 |
| 6 | Q | Who do you report to? | 11:16:08 |
| 7 | A | I report to Amy Miorelli. | 11:16:10 |
| 8 | Q | And what is Ms. Miorelli's title? | 11:16:16 |
| 9 | A | She is an executive director of claims | 11:16:20 |
| 10 | | operation. | 11:16:24 |
| 11 | Q | Did you report to Ms. Miorelli in | 11:16:24 |
| 12 | | connection with Mr. Whiteley's claim? | 11:16:30 |
| 13 | A | No, I believe at the time I was | 11:16:33 |
| 14 | | reporting to Kristin Herelle. | 11:16:35 |
| 15 | Q | Could you spell that last name please? | 11:16:40 |
| 16 | A | Yes -- yes, sir.  H-E-R-E-L-L-E. | 11:16:44 |
| 17 | Q | Now Mr. Herelle, did you consult with | 11:16:51 |
| 18 | | her in connection with the decision to | 11:16:57 |
| 19 | | deny Mr. Whiteley's claim? | 11:17:00 |
| 20 | A | I did not, no. | 11:17:02 |
| 21 | Q | So do you have discretion to -- to deny | 11:17:04 |
| 22 | | claims on behalf of USAA? | 11:17:08 |
| 23 | A | I do, yes, sir. | 11:17:10 |
| 24 | Q | Do your employees all have that | 11:17:12 |
| 25 | | discretion? | 11:17:17 |

| | | | |
|---|---|---|---|
| 1 | A | They, um... | 11:17:18 |
| 2 | Q | I -- um -- let me rephrase that.  So | 11:17:19 |
| 3 | | not employees, your -- your -- the | 11:17:21 |
| 4 | | reports; those who report to you, do | 11:17:21 |
| 5 | | they have discretion to deny claims? | 11:17:24 |
| 6 | A | It does depend on the dollar amount of | 11:17:27 |
| 7 | | the claim and the type of claim, | 11:17:32 |
| 8 | | whether they have sole discretion. | 11:17:32 |
| 9 | Q | Well how about this claim; Mr. | 11:17:34 |
| 10 | | Whiteley's claim? | 11:17:37 |
| 11 | A | No, my -- my direct reports do not have | 11:17:38 |
| 12 | | the discretion to deny or extend | 11:17:41 |
| 13 | | coverage. | 11:17:46 |
| 14 | Q | And what is the dollar threshold that | 11:17:46 |
| 15 | | -- that triggers I guess your | 11:17:50 |
| 16 | | discretion?  Or -- or where -- where | 11:17:52 |
| 17 | | does it rise to your level that you're | 11:17:54 |
| 18 | | the only one who can make the decision? | 11:17:56 |
| 19 | A | On all lawsuits brought against our | 11:17:59 |
| 20 | | insureds it is my responsibility.  I | 11:18:03 |
| 21 | | have the decision, the deciding factor. | 11:18:06 |
| 22 | | I rely on counsel to -- I do refer to | 11:18:10 |
| 23 | | counsel and obtain counsel information | 11:18:15 |
| 24 | | when making the decision. | 11:18:18 |
| 25 | | But I am the final decision | 11:18:20 |

| | | | |
|---|---|---|---|
| 1 | | factor. | 11:18:22 |
| 2 | Q | Oh so every claim nationwide that is | 11:18:22 |
| 3 | | filed -- any lawsuits that's filed | 11:18:26 |
| 4 | | against a USAA insured, the decision to | 11:18:29 |
| 5 | | defend or not to defend ultimately is | 11:18:32 |
| 6 | | yours? | 11:18:35 |
| 7 | A | In a -- when it's a property claim | 11:18:35 |
| 8 | | ultimately, yes. | 11:18:38 |
| 9 | Q | What do you mean by a, 'property | 11:18:39 |
| 10 | | claim'? | 11:18:41 |
| 11 | A | Distinguishing between an auto -- | 11:18:41 |
| 12 | | automobile claim and a homeowner's | 11:18:45 |
| 13 | | renter's, rental property claim for | 11:18:49 |
| 14 | | umbrella, the distinguishing there | 11:18:52 |
| 15 | | between auto and -- and -- and | 11:18:54 |
| 16 | | property. | 11:18:58 |
| 17 | | I don't know how else to | 11:18:59 |
| 18 | | describe that -- but no auto.  I don't | 11:19:01 |
| 19 | | handle automobile claims -- the | 11:19:03 |
| 20 | | automobile policies. | 11:19:05 |
| 21 | Q | You're referring to the type of | 11:19:05 |
| 22 | | insurance; right? | 11:19:08 |
| 23 | A | Yes, I am.  Yes, sir.  I'm sorry. | 11:19:09 |
| 24 | Q | Okay.  So any -- any insured that seeks | 11:19:09 |
| 25 | | a defense against a lawsuit or a claim | 11:19:11 |

| | | | |
|---|---|---|---|
| 1 | A | Yes, sir. | 11:27:50 |
| 2 | Q | **When did you first become involved in** | 11:27:50 |
| 3 | | **Mr. Whiteley's claim?** | 11:27:57 |
| 4 | A | I first became involved in Mr. | 11:28:00 |
| 5 | | Whiteley's claim when the lawsuit had | 11:28:04 |
| 6 | | been filed against Mr. Whiteley, and my | 11:28:07 |
| 7 | | adjustor had reviewed the file, my | 11:28:11 |
| 8 | | manager had reviewed the file, and then | 11:28:14 |
| 9 | | it came to me as is our process for | 11:28:16 |
| 10 | | review. | 11:28:19 |
| 11 | | So it was for the purpose of | 11:28:20 |
| 12 | | reviewing the lawsuit and determining | 11:28:26 |
| 13 | | whether there was a duty to defend or | 11:28:29 |
| 14 | | indemnify. | 11:28:32 |
| 15 | Q | **Now can you give me the names of** | 11:28:33 |
| 16 | | **individuals who you just alluded to?  I** | 11:28:36 |
| 17 | | **think you said there was a manager who** | 11:28:39 |
| 18 | | **was involved and then a supervisor?** | 11:28:40 |
| 19 | A | Yes.  The adjustor that handled the | 11:28:43 |
| 20 | | claim I believe his name was John | 11:28:47 |
| 21 | | Kaczmarek.  He would have been the | 11:28:52 |
| 22 | | adjustor receiving the claim and having | 11:28:55 |
| 23 | | the claim assigned to him. | 11:28:58 |
| 24 | | And there were two managers | 11:29:00 |
| 25 | | that reviewed, I can't recall whether | 11:29:01 |

| | | | |
|---|---|---|---|
| 1 | A | Correct. | 13:51:14 |
| 2 | Q | **Did you see Mr. Israel's proposed** | 13:51:14 |
| 3 | | **response before he sent it?** | 13:51:20 |
| 4 | A | I don't recall that I -- whether I did | 13:51:23 |
| 5 | | or I did not. | 13:51:26 |
| 6 | Q | **Would you have approved his response or** | 13:51:27 |
| 7 | | **would it have been necessary for you to** | 13:51:30 |
| 8 | | **approve his response before he sent it?** | 13:51:33 |
| 9 | A | It would not have -- I mean because it | 13:51:35 |
| 10 | | didn't change an opinion, change the | 13:51:37 |
| 11 | | opinion, he's restating it would not | 13:51:40 |
| 12 | | require me to re-review. | 13:51:45 |
| 13 | Q | **So you don't know for sure that you saw** | 13:51:47 |
| 14 | | **this letter?** | 13:51:51 |
| 15 | A | I assume that I do -- I did when | 13:51:55 |
| 16 | | Counsel sends stuff back in I review -- | 13:52:00 |
| 17 | | I do review them.  But I -- I can't say | 13:52:02 |
| 18 | | for sure.  I don't recall. | 13:52:04 |
| 19 | Q | **Normal practice would have been that** | 13:52:08 |
| 20 | | **you would've received a draft of this** | 13:52:10 |
| 21 | | **letter and reviewed it before it was** | 13:52:11 |
| 22 | | **sent?** | 13:52:14 |
| 23 | A | Correct. | 13:52:14 |
| 24 | Q | ==And I take it you approved of the== | 13:52:14 |
| 25 | | ==letter because it went, so I assume...== | 13:52:21 |

| | | | |
|---|---|---|---|
| 1 | A | Yes, I -- I agreed with the letter that | 13:52:24 |
| 2 | | went out. | 13:52:26 |
| 3 | Q | Had you reviewed this letter in | 13:52:28 |
| 4 | | preparation for your deposition today? | 13:52:33 |
| 5 | A | I did review it, yes. | 13:52:36 |
| 6 | Q | Was there anything in the letter that | 13:52:38 |
| 7 | | you disagreed with? | 13:52:40 |
| 8 | A | No. | 13:52:41 |
| 9 | | MR. CROSNER: We're probably | 13:52:59 |
| 10 | | at a good breaking point. Since we're | 13:53:01 |
| 11 | | coming up on the lunch hour, do we want | 13:53:03 |
| 12 | | to make this a slightly longer break? | 13:53:04 |
| 13 | | THE WITNESS: I'm good with | 13:53:08 |
| 14 | | that. | 13:53:09 |
| 15 | | MR. CROSNER: Okay. Lunch | 13:53:09 |
| 16 | | hour I'd agree, I know you're back | 13:53:11 |
| 17 | | east, Ms. Gonzalez. | 13:53:16 |
| 18 | | MR. KASTAN: Let's go off | 13:53:17 |
| 19 | | the record. | 13:53:17 |
| 20 | | MR. CROSNER: Off the | 13:53:17 |
| 21 | | record. | 13:53:19 |
| 22 | | THE VIDEOGRAPHER: Okay. | 13:53:19 |
| 23 | | The time is 11:53 a.m. Pacific time and | 13:53:19 |
| 24 | | we're off the record. This marks the | 13:53:21 |
| 25 | | end of Media 3. | 13:53:23 |

| | | |
|---|---|---|
| 1 | black and white. | 14:57:43 |
| 2 | The -- McNamara is | 14:57:45 |
| 3 | specifically named with associates but | 14:57:48 |
| 4 | she -- McNamara is the one that they're | 14:57:50 |
| 5 | targeting with this. | 14:57:53 |
| 6 | Whether he was an associate | 14:57:55 |
| 7 | or not he is not named where he is in | 14:57:57 |
| 8 | other portions of this lawsuit.  So I | 14:58:01 |
| 9 | would think that they would stay | 14:58:04 |
| 10 | consistent with the meaning or their | 14:58:06 |
| 11 | intention of their allegations | 14:58:09 |
| 12 | throughout their suit. | 14:58:11 |
| 13 | | 14:58:14 |
| 14 | By Mr. Crosner: | 14:58:14 |
| 15 Q | **Now -- now you would agree that BCS is** | 14:58:16 |
| 16 | **alleging that others at UnSilenced made** | 14:58:18 |
| 17 | **defamatory statements; right?** | 14:58:22 |
| 18 A | **Yes.** | 14:58:25 |
| 19 Q | **So the real question is whether those** | 14:58:25 |
| 20 | **others at UnSilenced -- whether that** | 14:58:27 |
| 21 | **encompasses Mr. Whiteley?** | 14:58:31 |
| 22 A | **Yes.** | 14:58:33 |
| 23 Q | **And you couldn't say with -- with** | 14:58:34 |
| 24 | **certainty that BCS did not intend that** | 14:58:37 |
| 25 | **allegations to encompass Mr. Whiteley;** | 14:58:40 |

| | | | |
|---|---|---|---|
| 1 | | could you? | 14:58:40 |
| 2 | A | No, probably not. | 14:58:44 |
| 3 | | MR. CROSNER:  Ms. Gonzalez, | 14:58:59 |
| 4 | | can I just get a short break?  And then | 14:59:00 |
| 5 | | I don't think I'm gonna have too many | 14:59:03 |
| 6 | | more questions for you. | 14:59:04 |
| 7 | | THE WITNESS:  Okay. | 14:59:06 |
| 8 | | MR. CROSNER:  We off the | 14:59:08 |
| 9 | | record? | 14:59:09 |
| 10 | | THE VIDEOGRAPHER:  Okay. | 14:59:10 |
| 11 | | The time is 12:59 Pacific time, excuse | 14:59:12 |
| 12 | | me, and we're off the record.  This | 14:59:17 |
| 13 | | marks of the end of Media 5. | 14:59:19 |
| 14 | | REPORTER'S NOTE:  Whereupon, a short recess is taken. | |
| 15 | | | |
| 16 | | THE VIDEOGRAPHER:  The time | 15:07:00 |
| 17 | | is 1:07 p.m. Pacific time and we're | 15:07:05 |
| 18 | | back on the record.  This marks the | 15:07:08 |
| 19 | | beginning of Media 6. | 15:07:11 |
| 20 | | | 15:07:14 |
| 21 | | By Mr. Crosner: | 15:07:14 |
| 22 | Q | **Ms. Gonzalez, we've looked at a lot of** | 15:07:14 |
| 23 | | **documents today, I know you spent a lot** | 15:07:16 |
| 24 | | **of time preparing for your deposition,** | 15:07:19 |
| 25 | | **based on everything you've seen today** | 15:07:21 |

```
 1      ACKNOWLEDGEMENT OF DEPONENT

 2

 3        I, the undersigned, Barbi Gonzalez

 4   do hereby certify under oath that I have

 5   read the foregoing pages and that the

 6   same is a correct transcription of the

 7   answers given by me to the questions

 8   therein propounded, except for the

 9   corrections or changes in form or

10   substance, if any, noted in the attached

11   Errata Sheet.

12

13

14

15

16

17

18

19   Date ___November 26, 2024___

20   Signature

21   ____Barbara Gonzalez_____

22

23   Subscribed and sworn to before me

24   this __26th__ day of_November_____2024

25   _____
```