1  Shaun H. Crosner (SBN 259065)
   SCrosner@McGuireWoods.com
2  Daria Clecicov (SBN 340760)
   DClecicov@McGuireWoods.com
3  McGuireWoods LLP
   1800 Century Park East, 8th Floor
4  Los Angeles, CA 90067
   Telephone: (310) 315-8200
5  Facsimile: (310) 315-8210
6
7  Attorneys for Plaintiff

8

9               UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11

12  JEREMY R. WHITELEY,                  Case No. 2:24-cv-00138- FLA-MAA

13          Plaintiff,                   Assigned to the Honorable Fernando
                                         L. Aenlle-Rocha
14      vs.

15  USAA CASUALTY INSURANCE              **JEREMY WHITELEY'S SUR-
    COMPANY,                             REPLY IN SUPPORT OF HIS
16                                       CROSS-MOTION FOR PARTIAL
            Defendant.                   SUMMARY JUDGMENT**
17

18

19                                       Date:    March 14, 2025
                                         Time:    1:30 p.m.
20                                       Ctrm:    6B

21                                       Complaint Filed on January 5, 2024

22

23

24

25

26

27

28

---

**SUR-REPLY IN SUPPORT OF MR. WHITELEY'S CROSS-MOTION RE DUTY TO DEFEND**

# <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

I.   INTRODUCTION ...................................................................................... 5

II.  USAA HAD A DUTY TO DEFEND THE *BCS* LAWSUIT. ........................ 7

    A.   The *BCS* Complaint Includes Potentially Covered "Personal Injury" Allegations Sufficient to Trigger USAA's Broad Duty to Defend. ................................................................................................... 7

    B.   USAA Fails to Establish That Any Exclusions in the Umbrella Policy Excuse Its Duty to Defend. .......................................................... 12

       1.   The Criminal Acts Exclusion Has No Bearing on USAA's Duty to Defend. ............................................................................ 12

       2.   The Contract Exclusion Also Is Inapplicable. ......................... 13

       3.   USAA's Reliance on the Knowledge of Falsity Exclusion Is Misplaced. ............................................................................... 14

    C.   California Insurance Code Section 533 Is Irrelevant to USAA's Duty to Defend. .............................................................................. 15

    D.   USAA Also Misses the Mark When It Argues That the *BCS* Complaint Seeks "Financial and Economic Damages." ......................... 16

III. USAA'S OBJECTION TO THE DECLARATION OF JIM SCHRATZ IS UNFOUNDED ................................................................................... 17

IV.  CONCLUSION ..................................................................................... 18

CERTIFICATE OF COMPLIANCE ................................................................. 19

**SUR-REPLY IN SUPPORT OF MR. WHITELEY'S CROSS-MOTION RE DUTY TO DEFEND**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*20th Century Ins. Co. v. Stewart*,
  63 Cal. App. 4th 1333 (1998) ........................................................................ 13

*American Int'l Bank v. Fid. & Deposit Co.*,
  49 Cal. App. 4th 1558 (1996) .......................................................................... 9

*Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*,
  100 Cal. App. 4th 1017 (2002) ........................................................... 12, 13, 15

*B & E Convalescent Ctr. v. State Comp. Ins. Fund*,
  8 Cal. App. 4th 78 (1992) ............................................................................. 16

*Century-Nat'l Ins. Co. v. Glenn*,
  86 Cal. App. 4th 1392 (2001) ........................................................................ 13

*CNA Cas. v. Seaboard Sur. Co.*,
  176 Cal. App. 3d 598 (1986) ........................................................................... 7

*Downey Venture v. LMI Ins. Co.*,
  66 Cal. App. 4th 478 (1998) .......................................................................... 16

*Egan v. Mut. of Omaha Ins. Co.*,
  24 Cal. 3d 809 (1979) .................................................................................... 12

*Gray v. Zurich Ins. Co.*,
  65 Cal. 2d 263 (1966) ......................................................................... 7, 15, 16

*Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*,
  59 Cal. 4th 277 (2014) .................................................................................... 8

*Horace Mann Ins. Co. v. Barbara B.*,
  4 Cal. 4th 1076 (1993) .................................................................................... 9

*Jordan v. Allstate Ins. Co.*,
  148 Cal. App. 4th 1062 (2007) ...................................................................... 17

*KM Strategic Mgmt., LLC v. Am. Cas. Co.*,
  156 F. Supp. 3d 1154 (C.D. Cal. 2015) .................................................... 14, 15

3

*LensCrafters, Inc. v. Liberty Mut. Fire Ins. Co.*,
    2005 WL 146896 (N.D. Cal. Jan. 20, 2005) ........................................ 13

*MacKinnon v. Truck Ins. Exch.*,
    31 Cal. 4th 635 (2003) ........................................................................ 13

*Montrose Chem. Corp. v. Superior Ct.*,
    6 Cal. 4th 287 (1993) ........................................................ 10, 11, 12, 14

*Neal v. Farmers Ins. Exch.*,
    21 Cal. 3d 910 (1978) ......................................................................... 17

*Netscape Commn's Corp. v. Fed. Ins. Co.*,
    2007 WL 2972924 (N.D. Cal. Oct. 10, 2007) ..................................... 13

*Raghavan v. Boeing Co.*,
    133 Cal. App. 4th 1120 (2005) ........................................................... 11

*Republic Indem. Co. v. Superior Ct.*,
    224 Cal. App. 3d 492 (1990) .......................................................... 7, 16

*Snapp v. United Transp. Union*,
    889 F.3d 1088 (9th Cir. 2018) ............................................................ 10

**Statutes**

California Insurance Code Section 533 ..................................... 6, 7, 15, 16

**Court Rules**

Fed. R. Civ. P. 56(a) .............................................................................. 14

**SUR-REPLY IN SUPPORT OF MR. WHITELEY'S CROSS-MOTION RE DUTY TO DEFEND**

# I.    **INTRODUCTION**[1]

As explained below and in Mr. Whiteley's moving papers, the allegations in the underlying *BCS* Complaint plainly trigger Defendant USAA Casualty Insurance Company's ("USAA") duty to defend under well-established principles of California insurance law.  Indeed, the *BCS* Complaint includes allegations falling squarely within the coverage afforded by the Umbrella Policy—including allegations that Mr. Whiteley made defamatory statements about Breaking Code Silence ("BCS") and damaged BCS's reputation.  Given these potentially covered allegations, and the absence of any policy exclusion negating coverage as a matter of law, USAA cannot avoid the conclusion that its duty to defend has been triggered.  Consequently, the Court should issue a ruling confirming USAA's duty to defend and granting Mr. Whiteley's motion for partial summary judgment.

In an attempt to confuse matters, USAA misconstrues the allegations and attempts to cast doubt on what BCS meant to convey with the words used in the *BCS* Complaint.  However, as USAA's corporate representative acknowledged in her 30(b)(6) deposition, it is impossible to conclusively negate the possibility that BCS was accusing Mr. Whiteley of making defamatory statements—a concession that, under binding California law, compels the conclusion that the *BCS* Lawsuit triggered USAA's duty to defend.  Notably, USAA makes no attempt to explain or address this ***binding corporate testimony***, which dooms its position.

Instead, USAA attempts to seize on a purported ambiguity in the allegations in the *BCS* Complaint, suggesting it is unclear whether the allegations of defamatory

---

[1] Pursuant to the Court's order allowing the parties to file cross-motions (ECF No. 44), Mr. Whiteley limits the scope of his Sur-Reply to the question raised in his cross-motion for partial summary judgment—namely, whether USAA had a duty to defend Mr. Whiteley in the underlying *BCS* Lawsuit.  Accordingly, Mr. Whiteley does not herein further address USAA's arguments regarding Mr. Whiteley's bad faith claim or his claim for punitive damages, which were addressed in Mr. Whiteley's Opposition (ECF No. 46).

**SUR-REPLY IN SUPPORT OF MR. WHITELEY'S CROSS-MOTION RE DUTY TO DEFEND**

1   statements were directed at Mr. Whiteley.  However, far from justifying its wrongful

2   denial of coverage, USAA's "unclear allegations" argument merely underscores

3   why the *BCS* Lawsuit triggered its duty to defend.  Indeed, binding California

4   authority makes clear that any ambiguity in an underlying lawsuit's allegations must

5   be resolved in favor of imposing a duty to defend.

6        Furthermore, although USAA disputes that extrinsic evidence would have

7   impacted its duty to defend, it fails to explain why that is the case.  After all, USAA

8   denied coverage because it purportedly could not tell whether the *BCS* Complaint's

9   allegations regarding defamatory statements by Ms. McNamara's "colleagues" were

10  directed at Mr. Whiteley.  However, the law is clear that USAA had a duty to

11  thoroughly investigate Mr. Whiteley's claim before it denied coverage, and the

12  evidence is undisputed that a proper investigation would have revealed that Mr.

13  Whiteley formed UnSilenced with his co-defendant, Ms. McNamara, and worked at

14  UnSilenced with her following the entity's formation.  USAA cannot credibly

15  contend that this undisputed evidence, which undercuts one of the primary grounds

16  for USAA's denial, should have no bearing on its duty to defend.

17       USAA also half-heartedly argues that a trio of exclusions in the Umbrella

18  Policy bar coverage for the *BCS* Lawsuit as a matter of law.  USAA badly

19  overreaches.  USAA contends that mere allegations potentially implicating policy

20  exclusions suffice to excuse its duty to defend—even when such allegations are not

21  proven, even when such allegations have no bearing on the potentially covered

22  allegations that triggered coverage in the first place, and even when liability does

23  not turn on such allegations.  USAA's argument conflicts with decades of California

24  case law governing an insurer's duty to defend.  It is not surprising that USAA cites

25  no authority for its novel (and incorrect) position, as there is none.

26       Grasping at straws, USAA also incorrectly invokes California Insurance Code

27  Section 533 to argue it does not have a duty to defend Mr. Whiteley.  USAA is

28  mistaken.  Under California law, "section 533 precludes only *indemnification* of

**SUR-REPLY IN SUPPORT OF MR. WHITELEY'S CROSS-MOTION RE DUTY TO DEFEND**

1  wilful conduct and not the *defense* of an action in which such conduct is alleged."

2  *Republic Indem. Co. v. Superior Ct.*, 224 Cal. App. 3d 492, 497 (1990).  As such,

3  Section 533 has no bearing on USAA's duty to defend the *BCS* Lawsuit and,

4  consequently, is entirely irrelevant to Mr. Whiteley's motion.

5      Lastly, USAA is flat wrong when it argues that California law excuses an

6  insurer's duty to defend when an underlying plaintiff seeks so-called "financial and

7  economic damages."  USAA only cites to inapposite and distinguishable decisions

8  analyzing coverage policies affording coverage for bodily injury and property

9  damage—not policies like the Umbrella Policy that extend coverage for "personal

10 injury" resulting from alleged defamatory statements.

11     Thus, USAA fails to advance any valid argument negating its broad duty to

12 defend under California law.  Mr. Whiteley's cross-motion for partial summary

13 judgment regarding USAA's duty to defend should be granted.

14 **II.    USAA HAD A DUTY TO DEFEND THE *BCS* LAWSUIT.**

15     **A.    The *BCS* Complaint Includes Potentially Covered "Personal**

16         **Injury" Allegations Sufficient to Trigger USAA's Broad Duty to**

17         **Defend.**

18     In its Opposition, USAA argues that Mr. Whiteley was "excluded" from any

19 alleged defamatory conduct in the *BCS* Complaint and asks the Court to speculate

20 on what "the drafters of the *BCS* Complaint intended to [allege]."  ECF No. 57,

21 Opp. at 3.  But the duty to defend does not depend on inartful drafting by the

22 underlying claimant; rather, the Court must find a duty to defend if there is any

23 "potential liability suggested by the facts alleged or otherwise available to the

24 insurer."  *CNA Cas. v. Seaboard Sur. Co.*, 176 Cal. App. 3d 598, 609 (1986).  In

25 other words, USAA cannot evade its duty to defend unless it can show that the *BCS*

26 Complaint "can by no conceivable theory raise a single issue which could bring it

27 within the policy coverage."  *See Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275 n.15

28 (1966).  This, USAA cannot do.

7

1   As an initial matter, USAA altogether ignores some of the most pertinent

2  potentially covered allegations in the *BCS* Complaint.  Specifically, USAA fails to

3  address paragraph 76 of the *BCS* Complaint, which alleges that both defendants' acts

4  were "aimed at harming BCS and permanently damaging BCS's reputation . . . ."

5  ECF No. 47, RSS-71.  Despite the *BCS* Complaint clearly alleging that "defendants"

6  harmed and damaged BCS's reputation, USAA maintains that "none of the

7  allegations related to defamation in the BCS Complaint invoke any damage to BCS'

8  character or reputation."  Opp. at 4.  This is simply not the case, as demonstrated by

9  paragraph 76 and other allegations in the *BCS* Complaint.

10   In addition to the allegations in paragraph 76, the *BCS* Complaint contains a

11  heading stating that the "Defendants Form[ed] UnSilenced . . . ."  RSS-66.  BCS

12  goes on to allege that Ms. "McNamara and her colleagues at UnSilenced" made

13  "defamatory statements" about BCS "to valued partners, resulting in strained and, in

14  some cases, terminated valued relationships."  RSS-69.  USAA argues that the

15  heading alone is insufficient to show that Mr. Whiteley was Ms. McNamara's

16  colleague.  USAA then asks the Court to ignore the heading and interpret this

17  allegation as merely "implicat[ing] the conduct of McNamara and other colleagues

18  (i.e. strangers to the BCS Complaint)."  Opp. at 3.  But USAA fails to explain why

19  the Court should ignore pertinent information contained in an underlying complaint,

20  such as a heading, and it fails to explain why the Court should take the leap of

21  assuming to know what "colleagues" BCS was referencing.  In any event, under

22  binding California case law, USAA was obligated to consider all facts explicitly

23  alleged or otherwise reasonably inferable.  *See Hartford Cas. Ins. Co. v. Swift*

24  *Distrib., Inc.*, 59 Cal. 4th 277, 287 (2014) (duty to defend was triggered "where,

25  under the facts alleged, reasonably inferable, or otherwise known, the complaint

26  could fairly be amended to state a covered liability").

27   Moreover, USAA cannot and does not argue that Mr. Whiteley was not one of

28  Ms. McNamara's colleagues at UnSilenced, or that this information was not

1  reasonably available to it.  The heading in the *BSC* Complaint, stating that the

2  Defendants formed UnSilenced, sufficiently notified USAA that Mr. Whiteley was

3  Ms. McNamara's colleague, and USAA provides no evidence to the contrary.

4  Furthermore, as emphasized in Mr. Whiteley's prior brief, USAA was charged with

5  knowledge of the extrinsic evidence available to it.  *See Horace Mann Ins. Co. v.*

6  *Barbara B.*, 4 Cal. 4th 1076, 1081 (1993) ("Facts extrinsic to the complaint also

7  give rise to a duty to defend when they reveal a possibility that the claim may be

8  covered by the policy."); *American Int'l Bank v. Fid. & Deposit Co.*, 49 Cal. App.

9  4th 1558, 1571 (1996) ("The risk that an insurer takes when it denies coverage

10  without investigation is that the insured may later be able to prove that a reasonable

11  investigation would have uncovered evidence to establish . . . a potential for

12  coverage.").  It is undisputed that Mr. Whiteley formed UnSilenced with Ms.

13  McNamara and was one of her colleagues there.  RSS-75.  Therefore, USAA is

14  charged with knowledge of these key facts—which would and should have

15  solidified its determination that it owed Mr. Whiteley a duty to defend the *BCS*

16  Lawsuit.  *See Horace Mann*, 4 Cal. 4th at 1081.

17       The *BCS* Complaint also contains several other potentially covered

18  allegations, including those claiming BCS suffered "extensive damages" from the

19  "defendants'" (plural) alleged "wrongful conduct," including with respect to their

20  alleged "disclos[ure of] 'misleading information to the public'" and "disseminat[ion

21  of] 'false information by impersonating BCS.'"  RSS-70.  In other words, it is not

22  just the heading in the *BCS* Complaint that implicates Mr. Whiteley; several other

23  allegations and headings directed at both "defendants" clearly allege that

24  "defendants" (which, again, included Mr. Whiteley) disseminated "false" and

25  "misleading" information, and damaged BCS's reputation.[2]  RSS-70, RSS-71.

26  _____

27  [2] USAA notes that paragraph 48 of the *BCS* Complaint accuses a singular unnamed

28

**SUR-REPLY IN SUPPORT OF MR. WHITELEY'S CROSS-MOTION RE DUTY TO DEFEND**

Additionally, USAA conveniently omits any discussion of the testimony of its corporate representative showing that USAA could not conclusively negate the possibility that BCS was accusing Mr. Whiteley of making defamatory statements:

> Q:    Now – now you would agree that BCS is alleging that others at UnSilenced made defamatory statements; right?
>
> A:    Yes.
>
> Q:    So the real question is whether those others at UnSilenced – whether that encompasses Mr. Whiteley?
>
> A:    Yes.
>
> Q:    And you couldn't say with – with certainty that BCS did not intend that allegations to encompass Mr. Whiteley; could you?
>
> A:    No, probably not.

ECF No. 60, Ex. 1 at 154:15-155:2.  Despite this undisputed testimony, USAA continues to maintain that the defamation allegations in the *BCS* Complaint do not implicate Mr. Whiteley.  The law is clear that this 30(b)(6) testimony is binding on USAA.  *See Snapp v. United Transp. Union*, 889 F.3d 1088, 1104 (9th Cir. 2018) (Rule 30(b)(6) testimony is binding on entity in sense that whatever its deponent says can be used against entity).  The law is equally clear that if there is any doubt as to whether the allegations in the *BCS* Complaint establish the existence of USAA's defense duty, such doubt must be resolved in Mr. Whiteley's favor.  *See Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 299-300 (1993).

---

"Defendant" of defamatory statements rather than directing the allegation at plural "Defendants.'"  While it is certainly possible BCS's reference to a singular "Defendant" was a typo, the Court should reject USAA's invitation to speculate as to what BCS meant.  This is because, either way, there is nothing in paragraph 48 compelling the conclusion that Mr. Whiteley is not the "Defendant" referenced in the allegation.  "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor."  *Montrose*, 6 Cal. 4th at 299-300).

1    There is also no merit to USAA's argument that BCS's allegations claiming

2  defendants disseminated "misleading" rather than "false" information cannot trigger

3  USAA's duty to defend.  Opp. at 3-4.  Dissemination of "misleading" statements

4  that damage an organization's reputation may constitute defamation, if those

5  statements can be also proven as false.  *See  Raghavan v. Boeing Co.*, 133 Cal. App.

6  4th 1120, 1132 (2005) ("'Defamation is an invasion of the interest in reputation.

7  The tort involves the intentional publication of a statement of fact that is false,

8  unprivileged, and has a natural tendency to injure or which causes special damage . .

9  . .'" (citation omitted)).  Regardless, the only question for the Court to answer is

10  whether the allegations in the *BCS* Complaint could be read to demonstrate "a bare

11  'potential' or 'possibility' of coverage," which is all that is required to trigger

12  USAA's duty to defend.  *See Montrose*, 6 Cal. 4th at 300.  As admitted by USAA's

13  corporate representative, USAA could not conclusively negate the possibility that

14  BCS was accusing Mr. Whiteley of making defamatory statements, and USAA

15  offers no good reason for the Court to hold otherwise.

16    Finally, USAA suggests that Mr. Whiteley should have proactively informed

17  USAA that he was a colleague of Ms. McNamara at UnSilenced.  Opp. at 5.

18  However, this information is discernible from the *BCS* Complaint, and it was also

19  available through publicly-available websites.  RSS-68.  And, if USAA was unsure

20  whether Mr. Whiteley was a colleague of Ms. McNamara at UnSilenced, it could

21  and should have simply asked its insured.  Mr. Whiteley has confirmed that, had

22  USAA done so, he would have verified that he formed UnSilenced with Ms.

23  McNamara and worked there with her—making him a "colleague at UnSilenced" as

24  described in the *BCS* Complaint.  RSS-75.  Instead of taking any of the simple steps

25  that would have led it to the right conclusion, USAA disregarded the defamation

26  allegations in the *BSC* Complaint and ignored Mr. Whiteley's requests for calls and

27  communication.  *See* RSS-84-91.  Thus, USAA had every opportunity to perform an

28

**SUR-REPLY IN SUPPORT OF MR. WHITELEY'S CROSS-MOTION RE DUTY TO DEFEND**

1  appropriate investigation—and, indeed, it was obligated under California law to do

2  so.  *See Egan v. Mut. of Omaha Ins. Co.,* 24 Cal. 3d 809, 819 (1979).

3      Accordingly, whether by virtue of the *BCS* Complaint's allegations or facts

4  that would have been learned through an appropriate investigation, USAA's duty to

5  defend Mr. Whiteley was triggered and USAA was obligated to defend Mr.

6  Whiteley unless it could show, through conclusive evidence, that an exclusion

7  barred coverage.  *See Montrose*, 6 Cal. 4th at 300.  As explained below, no

8  exclusion excuses USAA's duty to defend.

9      **B.      USAA Fails to Establish That Any Exclusions in the Umbrella**

10          **Policy Excuse Its Duty to Defend.**

11      In its opposition, USAA argues that certain exclusions in the Umbrella Policy

12  bar coverage for the entirety of the *BCS* Lawsuit.  USAA overreaches.  "An insurer

13  may rely on an exclusion to deny coverage only if it provides *conclusive evidence*

14  demonstrating that the exclusion applies.  Thus, an insurer that wishes to rely on an

15  exclusion has the burden of proving, *through conclusive evidence*, that the exclusion

16  applies in all possible worlds."  *Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal.

17  App. 4th 1017, 1039 (2002) (citations omitted; 2nd italics added). USAA does not,

18  and cannot, show that any exclusion applies to bar coverage for any—let alone all—

19  of the potentially covered allegations in the *BCS* Complaint.

20      **1.      The Criminal Acts Exclusion Has No Bearing on USAA's**

21          **Duty to Defend.**

22      As explained above, USAA's duty to defend was triggered by potentially

23  covered allegations of "personal injury" in the form of alleged defamatory

24  statements regarding BCS.  The potential liability created by those allegations is

25  civil, not criminal.  BCS also sought civil damages based on alleged violations of

26  the federal Computer Fraud and Abuse Act and California's Computer Data Access

27  and Fraud Act.  It is irrelevant that these statutes also allow for criminal liability, as

28  criminal liability was neither alleged nor proven by BCS.  RSS-79.

12

**SUR-REPLY IN SUPPORT OF MR. WHITELEY'S CROSS-MOTION RE DUTY TO DEFEND**

1    USAA cites no authority for the proposition that mere allegations could
2    suffice to make the criminal acts exclusion applicable.  And, contrary to that false
3    proposition, California courts applying the exclusion have done so in the face of an
4    insured's guilty plea or conviction.  *See e.g., Century-Nat'l Ins. Co. v. Glenn,*
5    86 Cal. App. 4th 1392, 1397 (2001) (exclusion applied where insured pleaded guilty
6    to committing felony); *20th Century Ins. Co. v. Stewart,* 63 Cal. App. 4th 1333,
7    1338 (1998) (same).  California's federal district courts take the same view.  *See,*
8    *e.g.*, *Netscape Commn's Corp. v. Fed. Ins. Co.*, 2007 WL 2972924, at *6 (N.D. Cal.
9    Oct. 10, 2007) (finding exclusion inapplicable where insurer was relying on mere
10   allegations, and where underlying actions were civil in nature and resolved without
11   finding of insured's liability or guilt); *LensCrafters, Inc. v. Liberty Mut. Fire Ins.*
12   *Co*., 2005 WL 146896, at *13 (N.D. Cal. Jan. 20, 2005) (exclusion inapplicable
13   where insurer "failed to provide any authority to suggest that the criminal act
14   exclusion applies where an insured is alleged to have violated a statute that provides
15   for both civil and criminal penalties, but where the insured has not been charged
16   with any criminal violation.").
17   Thus, USAA falls well short of establishing that the Criminal Acts Exclusion
18   bars coverage for the *BCS* Lawsuit.

19   ## 2.    The Contract Exclusion Also Is Inapplicable.

20   USAA says very little about the Contract Exclusion in its Opposition, falling
21   well short of proving that it applies "in all possible worlds."  *Atlantic*, 100 Cal. App.
22   4th at 1039.  As explained in Mr. Whiteley's motion, the exclusion bars coverage
23   for claims "[a]rising out of any contract or agreement," not for claims arising from
24   any "alleged" contract or agreement.  Such interpretation is most consistent with the
25   California courts' view that exclusionary clauses must be interpreted narrowly
26   against the insurer.  *See MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648
27   (2003).
28

1    More to the point, however, the potentially covered defamation allegations in
2    the *BCS* Complaint did not turn on proof of any purported "agreement," and it was
3    certainly possible that Mr. Whiteley could face liability for alleged defamatory
4    statements without BCS proving any "agreement" between him and his co-
5    defendant. This possibility was all that was required to make the exclusion
6    inapplicable. *See Montrose*, 6 Cal. 4th at 300. And, for good measure, it bears
7    repeating that the allegation of a supposed "agreement" between Mr. Whiteley and
8    his co-defendant was never proven and was sharply disputed. RSS-81-82.

9               **3.    USAA's Reliance on the Knowledge of Falsity Exclusion Is**
10                      **Misplaced.**

11    USAA likewise falls well short of carrying its burden of proof with respect to
12    the Knowledge of Falsity Exclusion.

13    As a preliminary matter, USAA never points to any alleged defamatory
14    statement that Mr. Whiteley knew was false. USAA also never points to any alleged
15    defamatory statement that Mr. Whiteley made with reckless disregard for the truth.
16    And, USAA never grapples with the fact that Mr. Whiteley was vindicated of any
17    liability to BCS, without ever being found to have made any false statements about
18    BCS. *See* RSS-78. It is unclear why USAA thinks it can carry its burden without
19    pointing to a single false statement, given that the Knowledge of Falsity Exclusion
20    narrowly bars coverage for knowingly false statements or false statements made
21    with a reckless disregard for the truth. *See* Fed. R. Civ. P. 56(a).

22    Moreover, California law is clear that USAA cannot avoid its duty to defend
23    "by pointing to unproven and disputed allegations in the very complaint it is called
24    upon to defend." *KM Strategic Mgmt.*, *LLC v. Am. Cas. Co.*, 156 F. Supp. 3d 1154,
25    1170 (C.D. Cal. 2015) (citation omitted). As the California Supreme Court has
26    stated:

27                      Obviously, . . . the [underlying plaintiff] drafts his
28                      complaint in the broadest terms; he may very well stretch

14

1    the action which lies in only nonintentional conduct to the

2    dramatic complaint that alleges intentional misconduct. In

3    light of the likely overstatement of the complaint and the

4    plasticity of modern pleading, we should hardly designate

5    the third party as the arbiter of the policy's coverage.

6    *See Gray*, 65 Cal. 2d at 276.  Thus, an exclusion barring coverage for intentional

7    acts cannot excuse an insurer's duty to defend because the insured "might have been

8    able to show . . .  he did not commit wilful and intended injury, but [instead]

9    engaged only in nonintentional tortious conduct."  *Id.* at 277.  For this reason,

10    "'courts usually find a duty to defend despite the knowing falsehoods exclusion,' as

11    '[t]here is usually at least a possibility of coverage because, despite the allegations

12    of intentional acts, the insured's conduct may be shown to have been merely

13    reckless or negligent.'"  *KM*, 156 F. Supp. 3d at 1170-71.

14    In an effort to avoid grappling with this controlling authority, USAA falls

15    back on the Court's prior conclusion that "[t]he allegations in the BCS Complaint

16    may have reasonably given rise to the inference that any actionable defamatory

17    statement was made with knowledge of its falsity of reckless disregard for its truth"

18    (ECF No. 42 at 8).  However, as explained in Mr. Whiteley's initial brief, any

19    potential applicability of this exclusion would turn on evidence developed in the

20    underlying litigation.  Accordingly, because USAA's duty to defend turns on the

21    mere potential for coverage, the Knowledge of Falsity Exclusion cannot and does

22    not excuse USAA's duty to defend.  *See Atlantic*, 100 Cal. App. 4th at 1040.

23    **C.    California Insurance Code Section 533 Is Irrelevant to USAA's**

24    **Duty to Defend.**

25    USAA next argues that it had no duty to defend Mr. Whiteley because such a

26    duty is barred by California Insurance Code section 533, which states: "An insurer is

27    not liable for a loss caused by the wilful act of the insured; but he is not exonerated

28    by the negligence of the insured, or of the insured's agents or others."  As USAA

15

1    presumably knows, its position is in direct conflict with decades of California case

2    law.

3         Under California law, "section 533 precludes only *indemnification* of wilful

4    conduct and not the *defense* of an action in which such conduct is alleged."

5    *Republic*, 224 Cal. App. 3d at 497; *accord Gray*, 65 Cal. 2d at 277 (section 533

6    "forbid[s] only contracts which indemnify for '*loss*' or '*responsibility*' resulting

7    from wilful wrongdoing"); *B & E Convalescent Ctr. v. State Comp. Ins. Fund*,

8    8 Cal. App. 4th 78, 93 (1992) ("'if the reasonable expectations of an insured are that

9    a defense will be provided for a claim, then the insurer cannot escape that obligation

10   merely because public policy precludes it from indemnifying that claim'") (citation

11   omitted).  Although section 533 bars indemnification for claims of willful

12   misconduct, it does not allow an insurer to evade a "specific and distinct

13   commitment" under the policy to defend the insured where the insured has a

14   reasonable expectation regarding that commitment.  *Downey Venture v. LMI Ins.*

15   *Co.*, 66 Cal. App. 4th 478, 507-08 (1998).

16        Here, the Umbrella Policy explicitly covers defamation claims and also

17   provides an express promise to "provide a defense at [USAA's] expense . . . , even if

18   the suit is groundless, false or fraudulent."  SS-4.  These express promises are more

19   than sufficient to create a reasonable expectation on the part of Mr. Whiteley that

20   USAA would provide a defense for these types of claims.  Therefore, section 533

21   does not preclude the defense of the claims made against Mr. Whiteley in the *BSC*

22   Complaint.

23        **D.    USAA Also Misses the Mark When It Argues That the *BCS***

24             **Complaint Seeks "Financial and Economic Damages."**

25        In its Opposition, USAA falsely contends that the Umbrella Policy does not

26   provide coverage where an underlying complaint "alleges solely financial or

27   economic damages."  Opp. at 8-9.  This is simply not true.

28

**SUR-REPLY IN SUPPORT OF MR. WHITELEY'S CROSS-MOTION RE DUTY TO DEFEND**

1    First, there is no express limitation on the Umbrella Policy's suggesting that

2  "financial and economic damages" resulting from potentially covered "personal

3  injury" allegations are uncovered.

4    Second, as explained in Mr. Whiteley's prior brief, all of the cases USAA

5  cites are inapplicable because they concern the recovery of economic losses in the

6  context of the "bodily injury" or "property damage" coverage, not coverage for

7  "personal injury."  USAA fails to explain why the Court should create new

8  precedent and extend the reasoning in these cases to claims for financial or

9  economic damages resulting from potentially covered allegations of "personal

10  injury."  It would be counterintuitive that a policy expressly covering an insured's

11  alleged defamatory statements about a business could not cover resulting financial

12  or economic damages.

## III.  USAA'S OBJECTION TO THE DECLARATION OF JIM SCHRATZ IS UNFOUNDED.

15    USAA asks the Court to "strike" the opinions of expert Jim Schratz, asserting

16  that they should not be considered in connection with the Court's evaluation of

17  USAA's duty to defend.  USAA misses the point. Mr. Schratz submitted a

18  declaration in support of Mr. Whiteley's opposition to USAA's motion for summary

19  judgment on Mr. Whiteley's bad faith claim, offering the opinion that USAA acted

20  in bad faith throughout its purported investigation and handling of the claim.  *See*

21  *generally* Declaration of Jim Schratz, ECF No. 49.  Although Mr. Schratz's opinions

22  are admissible and properly considered in assessing USAA's bad faith conduct,[3]

23  Mr. Whiteley does not contend that Mr. Schratz's opinions bear on the Court's

24  evaluation of USAA's duty to defend.

---

[3] *See Neal v. Farmers Ins. Exch.*, 21 Cal. 3d 910, 924 (1978); *Jordan v. Allstate Ins. Co.*, 148 Cal. App. 4th 1062, 1078 (2007).

SUR-REPLY IN SUPPORT OF MR. WHITELEY'S CROSS-MOTION RE DUTY TO DEFEND

IV.  **<u>CONCLUSION</u>**

For the above reasons, as well as those articulated in Mr. Whiteley's moving papers, the *BCS* Lawsuit triggered USAA's broad duty to defend.  Accordingly, Mr. Whiteley's motion for partial summary judgment should be granted, and USAA's motion on this issue should be denied.


DATED: February 28, 2025          McGuireWoods LLP

                                  By:  */s/ Shaun H. Crosner*
                                      Shaun H. Crosner
                                      Daria Clecicov
                                      Attorneys for Plaintiff

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiff Jeremy R. Whiteley, certifies that this brief contains 4,196 words, which complies with the word limit of L.R. 11-6.1, excluding the parts of the document exempted by L.R. 11-6.1.

DATED: February 28, 2025          McGuireWoods LLP

By: _/s/ Shaun H. Crosner_
Shaun H. Crosner
Daria Clecicov
Attorneys for Plaintiff

SUR-REPLY IN SUPPORT OF MR. WHITELEY'S CROSS-MOTION RE DUTY TO DEFEND